POMERANTZ LLP
Gustavo F. Bruckner
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
gfbruckner@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZEQIU WU, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GSX TECHEDU INC., LARRY XIANGDONG CHEN, and NAN SHEN, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION COMPLAINT</u> <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Zeqiu Wu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GSX Techedu Inc. ("GSX" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired GSX securities between June 6, 2019, and April 13, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      GSX was founded in 2014 and is headquartered in Beijing, the People's Republic of China ("PRC" or "China"). The Company was formerly known as BaiJiaHuLian Group Holdings Limited and changed its name to GSX Techedu Inc. in January 2019. GSX conducted its initial public offering on June 6, 2019 (the

2

"IPO"), after which its American Depositary Shares ("ADSs") began publicly trading on the New York Stock Exchange ("NYSE") under the ticker symbol "GSX."

3.     GSX is a technology-driven education company that provides online K-12 after-school tutoring services in China.  The Company also provides a variety of other tutoring courses and services, such as English courses for children in kindergarten, foreign language courses, English test preparation courses for students taking post-graduate entrance exams, professional courses for working adults preparing for professional qualification exams, personal interest courses, and offline business consulting courses.  Additionally, the Company operates Weishi, an interactive learning platform on the popular Chinese digital application ("app") WeChat.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) GSX overstated its profitability, revenue, student enrollment figures, teacher qualifications, and teacher selection process; (ii) the foregoing, once revealed, was foreseeably likely to have a material negative impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On February 25, 2020, Grizzly Research LLC ("Grizzly") published a report highlighting multiple alleged issues with GSX's business and financial operations (the "Grizzly Report").  Specifically, the Grizzly Report alleged, among other issues, that the Company "has been drastically overstating its profitability in its US public filings, especially for 2018"; Grizzly "found multiple strong indications of past and current order 'brushing,'" which are "essentially fake student enrollments to boost student count"; "many of GSX's reported students do not actually exist"; and "[w]hile [GSX] touts its high-quality teacher recruitment mechanism, [Grizzly] found a sign-up website that was not functional, multiple allegations of GSX hiring teachers right out of college with no prior experience, and fabricated teachers profiles."

6.     Following publication of the Grizzly Report, GSX's ADS price fell $1.33 per share, or 2.93%, to close at $44.09 per share on February 25, 2020.

7.     Then, on April 14, 2020, Citron Research ("Citron") published a report highlighting additional alleged issues with GSX's business and financial operations (the "Citron Report"), including, among other issues, that the Company's "2019 revenue was overstated by 70%," that "sales revenues are largely exaggerated," and that the Company's "filings are riddled with suspicious transactions."

8.     Following publication of the Citron Report, GSX's ADS price fell $0.20 per share, or 0.64%, to close at $31.20 per share on April 14, 2020—a total decline of 31.31% since the truth concerning GSX's alleged fraud began to emerge.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to GSX's most recent annual report on Form 20-F, as of December 31, 2019, there were 85,791,762 Class A ordinary shares of the Company's stock outstanding.  Every three of the Company's ADSs, which trade on the NYSE, represent two Class A ordinary shares of GSX stock.  Accordingly, there are

presumably hundreds, if not thousands, of investors in GSX's ADSs located within the United States, some of whom undoubtedly reside in New Jersey.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired GSX securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant GSX is a Cayman Islands corporation, with principal executive offices located at Tower C, Beyondsoft Building, 7 East Zone, 10 Xibeiwang East Road, Haidian District, Beijing 100193, China.  The Company's securities trade in an efficient market on the NYSE under the ticker symbol "GSX."

16.     Defendant Larry Xiangdong Chen ("Chen") has served as GSX's Chief Executive Officer at all relevant times.

17.     Defendant Nan Shen ("Shen") has served as GSX's Chief Financial Officer at all relevant times.

18.     Defendants Chen and Shen are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of GSX's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of GSX's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with GSX, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     GSX and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     GSX was founded in 2014 and is headquartered in Beijing, China.   The Company was formerly known as BaiJiaHuLian Group Holdings Limited and changed its name to GSX Techedu Inc. in January 2019.   GSX conducted the IPO on June 6, 2019, after which its securities began publicly trading on the NYSE under the ticker symbol "GSX."

22.     GSX is a technology-driven education company that provides online K-12 after-school tutoring services in China.  The Company also provides a variety of other tutoring courses and services, such as English courses for children in kindergarten, foreign language courses, English test preparation courses for students taking post-graduate entrance exams, professional courses for working adults preparing for professional qualification exams, personal interest courses, and offline business consulting courses.  Additionally, the Company operates Weishi, an interactive learning platform on the popular Chinese app WeChat.

23.     On May 8, 2019, GSX filed a registration statement (Registration No. 333-231275) on Form F-1 with the SEC in connection with the IPO, which, after amendment, was declared effective by the SEC on June 5, 2019 (the "Registration Statement").

24.     Then, on June 6, 2019, GSX filed a prospectus on Form 424B4 with the SEC, which incorporated and formed part of the Registration Statement (the "Offering Documents").  That same day, GSX conducted the IPO pursuant to the Offering Documents, issuing 19.8 million ADSs to the public at the Offering price of $10.50 per share, for total proceeds of approximately $193.35 million, after underwriting discounts and commissions.

**Materially False and Misleading Statements Issued During the Class Period**

25.     The Class Period begins on June 6, 2019, when GSX's securities began publicly trading on the NYSE pursuant to materially false or misleading statements or omissions contained in the Offering Documents.  For example, the Offering Documents reported a net loss of RMB[1]86.96 million and net income of RMB19.65 million for the years ended December 31, 2017 and 2018, respectively, and a net loss of RMB3.60 million and net income of RMB33.89 million for the three months ended March 31, 2018 and 2019, respectively.  The Offering Documents also reported a net revenue of RMB97.58 million and RMB397.31 million for the years ended December 31, 2017 and 2018, respectively, and a net revenue of RMB46.91 million and RMB269.16 million for the three months ended March 31, 2018 and 2019, respectively.

26.     With respect to student enrollment, the Offering Documents represented that "total enrollments increased from 79,632 in 2017 to 767,102 in 2018 and from 70,845 for the three months ended March 31, 2018 to 211,002 for the three months ended March 31, 2019"; and "[t]he average enrollments of [Defendants'] online K-12 courses increased from approximately 400 per course in 2017 to approximately 600 per course in 2018, and from approximately 440 per course for

---

[1] All references to "RMB" herein are to China's official currency, renminbi.

9

the three months ended March 31, 2018 to approximately 980 per course for the same period in 2019."

27.    In correlation with rapid growth in student enrollment, the Offering Documents also touted rapid growth in profitability, representing that GSX's "net revenues increased by 307.1% to RMB397.3 million (US$59.2 million) in 2018 from RMB97.6 million in 2017 and by 474.0% to RMB269.2 million (US$40.1 million) in the three months ended March 31, 2019 from RMB46.9 million in the same period in 2018"; "gross billings increased by 437.8% to RMB655.1 million (US$97.6 million) in 2018 from RMB121.8 million in 2017 and by 392.0% to RMB300.1 million (US$44.7 million) for the three months ended March 31, 2019 from RMB61.0 million for the same period in 2018"; and GSX "generated a net income of RMB19.7 million (US$2.9 million) in 2018, compared with a net loss of RMB87.0 million in 2017, and generated a net income of RMB33.9 million (US$5.1 million) for the three months ended March 31, 2019, compared with a net loss of RMB3.6 million for the same period in 2018."

28.    Finally, with respect to teacher qualifications, the Offering Documents advised investors that Defendants "relentlessly pursue the highest quality in [their] course offerings"; their "education excellence is backed by [their, *inter alia*,] high quality teachers"; Defendants "pride [them]selves of [their] rigorous and systematic teacher selection and coaching process"; and, "[f]rom the pool of prospective

instructors [Defendants] identified in 2018 and during the three months ended March 31, 2019, [they] meticulously evaluated and employed less than 2% of the candidates."

29. On August 22, 2019, GSX issued a press release announcing its financial and operating results for the second quarter of 2019—GSX's first earnings release following the IPO (the "2Q19 Earnings Release"). For the quarter, Defendants, among other results, highlighted that "[n]et revenues increased 413.4% year-over-year to RMB353.7 million from RMB68.9 million in the same period of 2018"; "[g]ross billings[] increased 462.4% year-over-year to RMB599.4 million from RMB106.6 million in the same period of 2018"; "[g]ross profit margin[] increased to 71.4% from 61.4% in the same period of 2018"; "[n]on-GAAP [Generally Accepted Accounting Principles] gross profit margin increased to 72.6% from 61.5% in the same period of 2018"; "[i]ncome from operations increased to RMB16.2 million from loss from operations of RMB0.5 million in the same period of 2018"; "[n]on-GAAP income from operations increased to RMB31.1 million from RMB0.2 million in the same period of 2018"; and that "[t]otal enrollments increased 250.3% to 592,000 from 169,000 in the same period of 2018."

30. Additionally, the 2Q19 Earnings Release quoted Defendant Chen, who touted, in relevant part, Defendants' "extremely high teaching quality" and that Defendants "focus on hiring only the very best teachers in China," which, "combined

with [GSX's] cutting edge technology, effectively ensures the best learning results for students."

31.     Finally, the 2Q19 Earnings Release quoted Defendant Shen, who stated that Defendants "entered 2019 with robust growth in the first quarter"; "strong momentum across all of [GSX's] key operating metrics helped drive the strong financial performance during the second quarter"; "gross billings in the second quarter increased 462.4% year-over-year to RMB599.4 million"; GSX's "net revenue increased 413.4% year-over-year to RMB353.7 million"; and all of the foregoing "demonstrate[ed] that [Defendants] have been effectively executing [their] strategy, and that [their] unique education model is resonating with parents and supporting their kids in China's highly competitive education environment."

32.     On November 5, 2019, GSX issued a press release announcing its financial and operating results for the third quarter of 2019 (the "3Q19 Earnings Release").  For the quarter, Defendants, among other results, highlighted that "[n]et revenues increased 461.5% year-over-year to RMB557.0 million"; "[g]ross billings[] increased 419.5% year-over-year to RMB880.0 million"; "[g]ross profit margin[] increased to 71.9% from 62.2% in the same period of 2018"; "[n]on-GAAP gross profit margin increased to 72.8% from 62.2% in the same period of 2018"; "[n]on-GAAP income from operations increased to RMB7.4 million from RMB0.4 million in the same period of 2018"; "[n]et income increased to RMB1.9 million

from RMB0.7 million in the third quarter of 2018"; "[n]on-GAAP net income increased to RMB20.1 million from RMB1.0 million in the same period of 2018"; and "[t]otal enrollments increased 240.2% year-over-year to 820,000."

33.     Additionally, the 3Q19 Earnings Release quoted Defendant Chen, who touted, in relevant part, GSX's "exponential growth," which "demonstrate[d] [GSX's] superior teaching quality and excellent customer experience."

34.     Finally, the 3Q19 Earnings Release quoted Defendant Shen, who represented that Defendants "saw third quarter net revenues surpass[] the high end of our guidance and strongly beat the street consensus, rising 461.5% YoY to RMB557 million"; "[r]evenue from [Defendants'] core business, the K12 after school tutoring, grew even faster, by 525.5%"; "[g]ross billings, an important leading indicator that provides significant visibility on our next quarter's revenue, increased 419.5% [year-over-year] to RMB880 million"; "[t]hanks to the continuous upgrading of [Defendants'] corporate and organizational capabilities, as well as effective execution of [their] marketing strategy, [Defendnats] observed the remarkable growth in paid course enrollments"; and Defendants "also managed to post [their] sixth consecutive quarter of non-GAAP profitability, in a fiercely competitive landscape."

35.     On February 18, 2020, GSX issued a press release announcing its financial and operating results for the fourth quarter and full year 2019 (the

"4Q/FY19 Earnings Release").  For the quarter, Defendants, among other results, highlighted that "[n]et revenues increased 412.9% year-over-year to RMB935.0 million"; "[g]ross billings[] increased 396.3% year-over-year to RMB1,578.6 million"; "[i]ncome from operations increased 604.2% year-over-year to RMB167.6 million, from RMB23.8 million in the same period of 2018"; "[n]on-GAAP income from operations increased 572.2% year-over-year to RMB190.9 million, from RMB28.4 million in the same period of 2018"; "[n]et income increased 658.7% year-over-year to RMB174.5 million, from RMB23.0 million in the same period of 2018"; "[n]on-GAAP net income increased 616.7% year-over-year to RMB197.8 million, from RMB27.6 million in the same period of 2018"; "[c]ash and cash equivalents, short-term investments and long-term investments totaled RMB2,735.7 million as of December 31,2019, compared to RMB236.5 million as of December 31, 2018"; and "[t]otal enrollments increased 290.2% year-over-year to 1,120,000."

36.    For the fiscal year, Defendants, among other results, highlighted that "[n]et revenues increased 432.3% year-over-year to RMB2,114.9 million"; "[g]ross billings[] increased 412.6% year-over-year to RMB3,358.2 million"; "[i]ncome from operations increased 1,023.4% year-over-year to RMB215.7 million, from RMB19.2 million in the fiscal year of 2018"; "[n]on-GAAP income from operations increased 999.6% year-over-year to RMB276.0 million, from RMB25.1 million in the fiscal year of 2018"; "[n]et income increased 1,050.3% year-over-year to

RMB226.6 million, from RMB19.7 million in the fiscal year of 2018"; "[n]on-GAAP net income increased 1,020.7% year-over-year to RMB286.9 million, from RMB25.6 million in the fiscal year of 2018"; and "[t]otal enrollments increased 257.6% year-over-year to 2,743,000."

37.     Additionally, the 4Q/FY19 Earnings Release quoted Defendant Chen, who stated, in relevant part, that, "[a]s you can see from the [Company's] stellar performance, GSX came a long way in the fourth quarter of 2019 by many measures"; GSX's "revenues and gross billings growth occup[ied] [a] leading position in the online education industry"; Defendants "extremely focus on delivering teaching quality, strengthening organizational capability, improving operational efficiency, as well as attracting intelligent, education-loved and dedicated talents"; "[a]s 2020 unfolds, [Defendants] continue to be committed to hiring and retaining top-notch teachers and talented professionals"; and Defendants "will continue [their] growth with emphasis on effectiveness and profitability strategy as [they] have been doing over the past three years."

38.     Finally, the 4Q/FY19 Earnings Release quoted Defendant Shen, who touted that "[n]et revenue, gross billings and net income all hit record highs during the quarter"; "[n]et revenue surged 412.9% year-over-year to RMB935.0 million during the quarter which propelled full year net revenue to RMB2.11 billion"; "[g]ross billings for the year reached RMB3.36 billion while net income was

RMB226.6 million and non-GAAP net income was amounted to RMB286.9 million"; "[r]evenues from [GSX's] core K-12 large online live classes maintained lightspeed growth, increasing 468% year-over-year during the quarter driven by paid enrollments which increased 410% year-over-year"; and "[t]hese phenomenal results during the quarter are a direct result of [Defendants'] augmented organizational capabilities, effective execution of [their] corporate strategy, and improving operational efficiency."

39.   The statements referenced in ¶¶ 25-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) GSX overstated its profitability, revenue, student enrollment figures, teacher qualifications, and teacher selection process; (ii) the foregoing, once revealed, was foreseeably likely to have a material negative impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

40.   On February 25, 2020, Grizzly published a report highlighting multiple alleged issues with GSX's business and financial operations.   Specifically, the Grizzly Report alleged, among other issues, that the Company "has been drastically

16

overstating its profitability in its US public filings, especially for 2018"; Grizzly "found multiple strong indications of past and current order 'brushing,'" which are "essentially fake student enrollments to boost student count"; "many of GSX's reported students do not actually exist"; and "[w]hile [GSX] touts its high-quality teacher recruitment mechanism, [Grizzly] found a sign-up website that was not functional, multiple allegations of GSX hiring teachers right out of college with no prior experience, and fabricated teachers profiles."

41. With respect to Grizzly's allegation that GSX's profitability was overstated, the Grizzly Report cited "[t]he [PRC] credit reports [Grizzly] obtained for GSX's 7 main operating entities," which "show[ed] that GSX has apparently been overstating its net profit by an astounding 74.6% in 2018." Specifically, Grizzly cited the fact that GSX's "consolidated net loss for 2017 [based on PRC credit reports] was RMB 86.1 million, which is almost a perfect match with the SEC reported loss of 87.0 million in 2017," but that "consolidated net profit was RMB 11.25 million based on [PRC] Credit Reports, which is 42.7% less than the SEC reported net profit of RMB 19.7 million in 2018," and that "[t]he slight difference of the consolidated revenues between [PRC] credit reports and SEC reported numbers, as well as the small difference of the consolidated net loss between credit reports and SEC reported numbers in 2017," indicated that GSX "has been mainly manipulating its profits in 2018."

42.     The Grizzly Report further posited that GSX used unconsolidated related parties to manipulate financials, noting that Grizzly "found multiple parties that [its] suspect[s] of effectively acting as an alter ego of GSX," and that, "[s]ince these parties are not consolidated, expenses do not appear on GSX's financials," with "[t]hese 'alter-ego' entities effectively allow[ing] GSX to shift expenses off the books as it pleases."

43.     Additionally, with respect to Grizzly's allegation that GSX's student enrollment figures were fabricated, the Grizzly Report cited "a report published in June 2015, [wherein] GSX asked companies to brush orders (which means using fake accounts to purchase online classes offered by GSX and create inflated demand for those classes) for them"; "evidence that the company is currently actively recruiting people to brush orders"; that Grizzly "signed up for a free account on GSX's mobile portal and found a suspicious profile of another user that blatantly advertised jobs to brush orders for the company"; and "a recent report published by 'Moses English' on December 15, 2019," a "thought leader in China on online education" who found "multiple great identical reviews to teachers," including "at least 6 incidences where 'students' in different groups gave out exactly identical reviews" and "as many as 25 comments that were identical and repeated by different users in different . . . groups."

44.     Finally, with respect to Grizzly's allegation that GSX fabricated the quality and selection of GSX's teachers, the Grizzly Report cited a former alleged GSX employee, who stated that "GSX actually hires cheap teachers that just graduated and also allows applicants to make up their profile," and who was concerned about "[o]rder brushing firms [that] give 5-star reviews and create fake student profiles."  According to the Grizzly Report, these concerns were reaffirmed by several other ex-employees, and Grizzly "attempted to validate these concerns by trying to construct a fake profile online and submitting [its] application through the GSX teacher application portal," but found that, "to [Grizzly's] surprise, the portal does not even work."

45.     Following publication of the Grizzly Report, GSX's ADS price fell $1.33 per share, or 2.93%, to close at $44.09 per share on February 25, 2020. However, GSX's securities continued to trade at artificially inflated prices throughout the rest of the Class Period as a result of Defendants' continued misstatements concerning the Company's business results.

46.     For example, on April 3, 2020, GSX filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2019 (the "2019 20-F").  The 2019 20-F affirmed the results announced in the 4Q/FY19 Earnings Release with respect to the

Company's net revenues, income from operations, net income, and total enrollments for the full year on a GAAP basis.

47.    Additionally, the 2019 20-F contained substantively the same statements as referenced in ¶¶ 25-28, *supra*, concerning GSX's net income/loss and net revenues for fiscal years 2017 and 2018, management's discussion and analysis in comparing the foregoing, student enrollment figures for fiscal years 2017 and 2018, teacher qualifications, and rigorous selection process for hiring teachers.

48.    Appended as exhibits to the 2019 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "[t]he [2019 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2019 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

49.    The statements referenced in ¶¶ 46-48 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) GSX overstated its profitability, revenue, student enrollment figures, teacher qualifications, and teacher selection process; (ii) the foregoing, once revealed, was foreseeably likely to have a material negative

impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Fully Emerges

50.    On April 14, 2020, Citron published a report highlighting additional alleged issues with GSX's business and financial operations, including, among other issues, that the Company's "2019 revenue was overstated by 70%," that "sales revenues are largely exaggerated," and that the Company's "filings are riddled with suspicious transactions."

51.    Specifically, with respect to GSX's revenues, the Citron Report alleged that "[a]fter tracking >20% of available GSX classes, Citron estimates that 2019 revenue was overstated by 70%"; that Citron's "data indicates that most students are not from lower-tier cities, as GSX claims, when trying to explain how the company can grow so quickly when most Chinese parents in Tier 1 and 2 cities have never heard of them"; that "Wuhan and the surrounding area make up almost 50% of the student composition in [the first quarter of GSX's fiscal year] 2020," which further supported Citron's thesis that "a large % of revenues are fudged given the large number of free classes offered to students of Wuhan during the Covid-19 crisis and . . . implies that GSX couldn't have a strong diversified student base to begin with, and that the previous sales revenues are largely exaggerated"; and that "[d]uplicated classes (i.e., counted more than once) could be one way that revenues are inflated."

52.     Additionally, with respect to suspicious transactions in GSX's SEC filings, the Citron Report noted that "[i]n response to criticism of their PRC credit reports and SEC filings showing a 75% discrepancy in net profits," Defendants asserted that "[t]he gap between the company's credit report and S-1 filing was actually GAAP difference between China and U.S. after the group's restructured to spin-off 2B business in 2017." However, according to the Citron Report, "Citron along with accounting experts dug through [GSX's] F-1 and 20-F filings for any disclosures around a spin-off or divestiture," and found that Defendants' representations were false. Specifically, the Citron Report cited "[p]age F-27 of [GSX's] F-1 filing," which noted that relevant disposed entities "were insignificant and thus, did not have a major effect on [GSX's] operation." Thus, Citron questioned "[h]ow . . . an 'insignificant' transaction drive[s] a 75% difference in net profit between [Defendants'] SEC filings and PRC credit reports?"

53.     Following publication of the Citron Report, GSX's ADS price fell $0.20 per share, or 0.64%, to close at $31.20 per share on April 14, 2020—a total decline of 31.31% since the truth concerning GSX's alleged fraud began to emerge.

54.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired GSX securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

56.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, GSX securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by GSX or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of GSX;

- whether the Individual Defendants caused GSX to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of GSX securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

61.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- GSX securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold GSX securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

62.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

63.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of GSX securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire GSX securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

67. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for GSX securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about GSX's finances and business prospects.

68. By virtue of their positions at GSX, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that

they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

69. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of GSX, the Individual Defendants had knowledge of the details of GSX's internal affairs.

70. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of GSX. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to GSX's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of GSX securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning GSX's business and financial condition

which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired GSX securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

71.     During the Class Period, GSX securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of GSX securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of GSX securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of GSX securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

72.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

73.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

74.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.    During the Class Period, the Individual Defendants participated in the operation and management of GSX, and conducted and participated, directly and indirectly, in the conduct of GSX's business affairs.  Because of their senior positions, they knew the adverse non-public information about GSX's misstatement of income and expenses and false financial statements.

76.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to GSX's financial condition and results of operations, and to correct promptly any public statements issued by GSX which had become materially false or misleading.

77.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which GSX disseminated in the marketplace during the Class Period concerning GSX's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause GSX to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of GSX within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of GSX securities.

78.     Each of the Individual Defendants, therefore, acted as a controlling person of GSX.  By reason of their senior management positions and/or being directors of GSX, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, GSX to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of GSX and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

79.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by GSX.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  April 17, 2020                              Respectfully submitted,

POMERANTZ LLP

*/s/ Gustavo F. Bruckner*
Gustavo F. Bruckner
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II

(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
gfbruckner@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*