**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                      :

| | |
|---|---|
| YANG RENBIN, ROBERT ANGELINE, COREY HAYS, AND ALEXANDRE TAZI, Individually and On Behalf of All Others Similarly Situated, | :    2:20-cv-04457 (MEF) (JRA) <br> : <br> :    **ECF Case** <br> :    **Electronically Filed** <br> : |
|            Plaintiffs, | : |
| v. | : |
| | : |
| GSX TECHEDU INC., LARRY XIANGDONG CHEN, NAN SHEN, XIN FAN, YIMING HU, MING LIAO, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES, INC., BARCLAYS CAPITAL, INC., BOFA SECURITIES, INC., CLSA LIMITED, AND GOLDMAN SACHS (ASIA) L.L.C., | : <br> : <br> : <br> : <br> : <br> : <br> : |
|            Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## REPLY MEMORANDUM OF LAW OF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

| | |
|---|---|
| Justin T. Quinn <br> **ROBINSON MILLER LLC** <br> Ironside Newark <br> 110 Edison Place, Suite 302 <br> Newark, New Jersey 07102 <br> Telephone: (973) 690-5400 | Scott D. Musoff <br> Robert A. Fumerton (*pro hac vice*) <br> Michael C. Griffin (*pro hac vice*) <br> Judith A. Flumenbaum (*pro hac vice*) <br> **SKADDEN, ARPS, SLATE,** <br>    **MEAGHER & FLOM LLP** <br> One Manhattan West <br> New York, New York 10001 <br> Telephone: (212) 735-3000 <br><br> *Counsel for Defendants GSX* <br> *Techedu Inc., Larry Xiangdong Chen,* <br> *and Nan Shen* |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 2

    I.    PLAINTIFFS AGAIN FAIL TO PLEAD SCIENTER ........................ 2

    II.    PLAINTIFFS AGAIN FAIL TO PLEAD LOSS CAUSATION ......... 5

    III.    PLAINTIFFS AGAIN FAIL TO PLEAD A
    MISREPRESENTATION ................................................................... 6

        A.    The Opposition Confirms Plaintiffs' Failure to Plead
        Falsity .................................................................................. 6

        B.    Plaintiffs Fail to Plead the Existence of Widespread
        Misconduct .......................................................................... 9

CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Amarin Corp. PLC Securities Litigation*,
No. 3:19-cv-06601 (BRM) (TJB), 2021 WL 1171669 (D.N.J. Mar. 29, 2021), *aff'd*, No. 21-2071, 2022 WL 2128560 (3d Cir. June 14, 2022) ..........2

*California Public Employees' Retirement System v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) .......................................................................7, 8

*In re Campbell Soup Co. Securities Litigation*,
No. 1:18-cv-14385-NLH-MJS, 2022 WL 6961796 (D.N.J. Oct. 11, 2022) ......................................................................................................5

*In re Campbell Soup Co. Securities Litigation*,
No. 18-14385 (NLH/JS), 2020 WL 7022655 (D.N.J. Nov. 30, 2020) ........8, 9

*In re Chicago Bridge & Iron Co. N.V. Securities Litigation*,
No. 17 Civ. 1580 (LGS), 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) .....................................................................................................6

*City of Sunrise General Employees' Retirement Plan v. Fleetcor Technologies, Inc.*,
No. 1:17-CV-2207-LMM, 2018 WL 4293143 (N.D. Ga. May 15, 2018) .....................................................................................................6

*Fain v. USA Technologies, Inc.*,
707 F. App'x 91 (3d Cir. 2017) .....................................................................3

*Fila v. Pingtan Marine Enterprise Ltd.*,
195 F. Supp. 3d 489 (S.D.N.Y. 2016) ...........................................................6

*Hall v. Johnson & Johnson*,
No. 18-1833 (FLW), 2019 WL 7207491 (D.N.J. Dec. 27, 2019) ...................4

*Hershewe v. JOYY Inc.*,
No. 22-55377, 2023 WL 3316328 (9th Cir. May 9, 2023) .........................14

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995) ........................................................................13

*Institutional Investors Group. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ..............................................................4

*In re Lehman Bros. Securities & Erisa Litig.*,
    Nos. 10 Civ. 6637 (LAK), 09 MD 2017 (LAK), 2013 WL 3989066
    (S.D.N.Y. July 31, 2013) ..............................................................12

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ..............................................................5

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ..............................................................6

*Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) ..............................................12, 15

*In re Mylan N.V. Securities Litigation.*,
    No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) .........9

*National Junior Baseball League v. Pharmanet Development Group Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ..............................................10, 11

*In re Nice Systems, Ltd. Securities Litigation.*,
    135 F. Supp. 2d 551 (D.N.J. 2001) ..............................................13

*Takata v. Riot Blockchain, Inc.*,
    No. 18-02293 (FLW), 2020 WL 2079375 (D.N.J. Apr. 30, 2020) .................9

*In re Tellium, Inc. Securities Litigation*,
    No. Civ.A. 02CV5878FLW, 2005 WL 2090254 (D.N.J. Aug. 26,
    2005) ..............................................................5

*Turnofsky v. electroCore, Inc.*,
    No. 19-18400 (ZNQ) (TJB), 2023 WL 4527553 (D.N.J. July 13,
    2023) ..............................................................3, 4

*In re Winstar Communications*,
    Nos. 01 CV 3014 (GBD), 01 CV 11522, 2006 WL 473885 (S.D.N.Y.
    Feb. 27, 2006) ..............................................................6

## PRELIMINARY STATEMENT

The Opposition confirms that dismissal of the SAC is warranted, not only because Plaintiffs' superficial amendments cannot cure the deficiencies identified by Judge Salas, but also because their conclusory and speculative assertions demonstrate their inability to plead the other elements necessary to state an Exchange Act claim.

First, Plaintiffs again fail to plead a strong inference of scienter. Their generic allegations describing Defendants' familiarity with routine business reports and budgets cannot salvage their claims, as the SAC still fails to explain how any of this information "would alert [Defendants] to the fraudulent scheme." (Op. at 28.) Plaintiffs' new CWs do not cure this deficiency—tellingly, they do not mention the alleged fraud at all. Absent any new allegations sufficient to plead recklessness, Plaintiffs' attempt to rehash arguments already rejected by Judge Salas fails.

Second, Plaintiffs again fail to plead loss causation. The Opposition's attempt to rewrite purported corrective disclosures that do not mention, let alone reveal, the alleged fraud should be rejected. Nor does the SAC's further detailing of the short-seller reports show that those reports revealed any "new" information to the market.

Third, Plaintiffs again fail to plead falsity. Plaintiffs concede the alleged "bot" activity at the heart of their claim may not have "involv[ed] GSX's sales channels" or impacted any challenged statement at all, confirming their inability to plead

falsity.  (Opp. at 32.)  Plaintiffs also fail to plead any underlying alleged scheme. Their regurgitation of unparticularized CW allegations, or the baseless assertions contained in the Muddy Waters Report, does not resolve the reliability concerns identified by Judge Salas.  Several other allegations are undermined by the SAC itself.  Contrary to their assertion that Judge Salas "implicitly" held their allegations sufficient (*id.* at 3)—another demonstrably false claim (*see* Op. at 22 n.6 (declining to assess sufficiency))—Plaintiffs' failure to plead falsity also warrants dismissal.

## ARGUMENT[1]

## I.    PLAINTIFFS AGAIN FAIL TO PLEAD SCIENTER

Plaintiffs still fail to plead a strong inference of scienter.  As Plaintiffs again abandon their allegations of motive or opportunity (*see* Opp. 14, n.3), "the strength of plaintiffs' circumstantial allegations [of recklessness] must be even greater."  *In re Amarin Corp. PLC Sec. Litig.*, No. 3:19-cv-06601 (BRM) (TJB), 2021 WL 1171669, at *19 (D.N.J. Mar. 29, 2021), *aff'd*, No. 21-2071, 2022 WL 2128560 (3d Cir. June 14, 2022).  The Opposition confirms Plaintiffs cannot meet that high bar.

First, contrary to Plaintiffs' claim that "the Complaint supplies exactly what Judge Salas found wanting in Plaintiffs' original scienter allegations" (Opp. at 10), the SAC does no such thing.  Plaintiffs continue to conflate Defendants' knowledge

---

[1]   All citations are omitted and all emphasis in quotations is added, unless otherwise indicated.

or awareness of "marketing budgets, monthly revenue reports, and . . . financial management reports" (*id.*) with specific knowledge that the data in those reports was driven by an alleged brushing scheme.  There are still "no particularized facts showing how the Individual Defendants knew or should have known that these financial results . . . were false," a fatal deficiency.  (Op. at 28.)  Plaintiffs' conclusory assertions that Defendants Chen and Shen "unquestionably knew of GSX's massive expenditures on brushing firms" by reviewing "gross billings," marketing budgets, and revenue reports (Opp. at 12, 15) amount to nothing more than "they-must-have-known" inferences repeatedly rejected by the Third Circuit. *See, e.g.*, *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 96 (3d Cir. 2017).  Tellingly, the SAC's new CW allegations generally describing Defendants' "personal access to material contracts" and understanding of "sources of revenues" and "individual line items" of the marketing budget ***do not even mention*** the alleged fraud (Opp. at 11-12)—a glaring omission given that CW-10 was allegedly "personally involved in preparing GSX's marketing budget" (*id.* at 16).[2]  Such generic allegations of Defendants' "intimate knowledge of the business" and access to routine "updates" or "present[ations]" "without more, do[] not prove scienter."  *Turnofsky v.*

---

[2]  Plaintiffs claim the CWs were not "low-level," (Opp. at 16; *see* Br. at 16), but the local "Financial Managers" were among "50 individuals" on GSX's finance team.  (SAC ¶¶ 299, 308.)  Judge Salas has already held that CWs not employed during or who left a month into the Class Period are "unreliable as a source of information for GSX's practices during the entire Class Period."  (Op. at 15, 17.)

*electroCore, Inc.*, No. 19-18400 (ZNQ) (TJB), 2023 WL 4527553, at \*14 (D.N.J. July 13, 2023).

Second, because the SAC still fails to plead "particularized facts to show how the Individual Defendants would have been made aware of the alleged fraudulent scheme" (Op. at 28), *Institutional Investors Group. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009) remains distinguishable. The Opposition's bootstrapping claim that "Defendant's statements giving reasons why GSX was not engaged in fraud are more indicative of recklessness, not less" (Opp. at 17 n.4) is circular and contrary to law.[3] As Judge Salas correctly held, Defendants' denials were based on clear deficiencies in the short-seller reports—many of which the SAC reproduced (*see* Br. at 29-30, 38 n.20, 40 n.22)—and an independent investigation assisted by third-party advisors (Op. at 25-26). Hence, Defendants' denials (which have yet to be proven false) are distinguishable from the "unqualified" denials found actionable in *Avaya*.[4]  (*Id.*)

Third, "absent some additional allegation of specific information conveyed to

---

[3]  *Hall v. Johnson & Johnson* is inapposite. 2019 WL 7207491, at \*22 (D.N.J. Dec. 27, 2019) (CEO professed safety despite "internal audit report [which] allegedly discovered quality assurance issues"). If anything, *Hall* supports dismissal:  the court rejected similar allegations that the CFO's "general awareness of  [] day-to-day workings" and review of reported financials guaranteed knowledge. *Id.* Plaintiffs also ignore that *Avaya*'s holding was supported by strong allegations of motive, which they abandon. *See Avaya*, 564 F.3d at 277-78.

[4]  Contrary to the Opposition (Opp. at 17 n.4), Defendant Chen's April 14, 2020, denial gave many "specific reason[s]," including that short sellers ignored the Gaotu Ketang app—a key source of revenue. (Ex. G at 1; *see* Ex. H at 1.)

4

management and related to the fraud," which Plaintiffs fail to provide, the core operations doctrine "does not support a finding of scienter." *In re Campbell Soup Co. Sec. Litig.*, No. 1:18-cv-14385-NLH-MJS, 2022 WL 6961796, at *11 (D.N.J. Oct. 11, 2022).

Finally, Plaintiffs still allege no particularized facts to support their proposed inference that GSX engaged in a "fake it 'til you make it" scheme to inflate its valuation and gain fame. (Opp. at 17.) The far more compelling inference is that Defendants were unaware of any alleged brushing scheme and believed increased marketing expenses and revenue were due to legitimate enrollment growth.

## II. PLAINTIFFS AGAIN FAIL TO PLEAD LOSS CAUSATION

The Opposition also confirms that Plaintiffs still cannot plead loss causation. Four of the alleged corrective disclosures reveal nothing about brushing or the alleged fraudulent scheme. (*See* SAC ¶¶ 281, 289, 293, 295.) Plaintiffs' claim that *the SAC* "provides additional facts" (Opp. at 23) is irrelevant in light of Judge Salas' holding that "*disclosures* that reveal only negative financial information . . . without connecting those negative financials to the alleged fraud, cannot serve as corrective disclosures." (Op. at 32 (collecting cases)); *see also In re Tellium, Inc. Sec. Litig.*, No. Civ.A. 02CV5878FLW, 2005 WL 2090254, at *4 (D.N.J. Aug. 26, 2005); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005). Plaintiffs cannot simply rewrite disclosures that say ***nothing at all*** about brushing.

5

Plaintiffs' three remaining alleged corrective disclosures—all short-seller reports (SAC ¶¶ 284-88, 291)—similarly fail because they revealed nothing new to the market, and merely repackage allegations of bots and brushing from the earlier February 25, 2020 Grizzly Report, (*see id.* ¶ 193), which is "simply insufficient to constitute a corrective disclosure."[5] *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) (collecting cases); *see also Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 498 (S.D.N.Y. 2016).

## III. PLAINTIFFS AGAIN FAIL TO PLEAD A MISREPRESENTATION

### A. The Opposition Confirms Plaintiffs' Failure to Plead Falsity

Finally, the Opposition confirms that the SAC fails to plead any challenged financial or operational statement was false. The SAC alleges two fraudulent schemes: (i) that GSX "us[ed] software bots" to "falsify logins to [its] online courses;" and (ii) that it "engag[ed] third parties as well as instructors and tutors to assume the identities of students to purchase and enroll in GSX courses." (*See, e.g.*,

---

[5] Unlike here, the short-seller reports in Plaintiffs' cases included "new" claims or information difficult to ascertain by a "reasonable" investor. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, No. 17 Civ. 1580 (LGS), 2020 WL 1329354, at *7-8 (S.D.N.Y. Mar. 23, 2020) (new claims and "complex economic data understandable only through expert analysis"); *In re Winstar Commc'ns*, Nos. 01 CV 3014(GBD), 01 CV 11522, 2006 WL 473885, at *15 (S.D.N.Y. Feb. 27, 2006) (reports revealed "questionable accounting practices, of which the public had not previously been made aware."); *City of Sunrise Gen. Emps.' Ret. Plan v. Fleetcor Techs., Inc.*, No. 1:17-CV-2207-LMM, 2018 WL 4293143, at *14 (N.D. Ga. May 15, 2018) (same).

SAC ¶ 207.)

The SAC alleges no facts to show that the first alleged scheme to "falsify logins" using "software bots" (*id.*) impacted any challenged enrollment or financial statement, and thus fails to allege "how [the alleged conduct] distorted the disclosed data," as required to plead falsity. *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 153-54 (3d Cir. 2004); (*see* Br. at 35-39). Indeed, the Opposition ***admits*** that "GSX could simply have falsified student activity in its classrooms directly through software ***without exchanging money or involving GSX's sales channels***." (Opp. at 32; *see id.* at 32 n.10.) This concession is fatal, because Plaintiffs' core falsity claims—that GSX falsified 70% of enrollments and more than half of its revenues—are premised solely on Plaintiffs' assertion that, according to Muddy Waters, more than 70% of users in GSX's classes "are best explained as bots rather than human users." (SAC ¶ 37; *see id.* ¶¶ 31-32; Opp. at 33 & n.12.) Plaintiffs' concession that internally controlled software "bots" may not have impacted the challenged statements ***at all*** necessarily defeats their claims of falsity.

Plaintiffs also fail to plead falsity under their second alleged scheme. The Opposition argues the CWs show how the *individualized* brushing activities of third parties, instructors, or tutors impacted the challenged statements. (*See* Opp. at 31-33.) This scheme is implausible, as the Opposition concedes it would cause GSX "to ***lose money*** paying third-party brushers to actually purchase such courses" in

7

exchange for commissions.    (Opp. at 32; *see* SAC ¶ 72.)    In any event, the

unparticularized CW allegations cannot be credited (*see infra* § III.B), and the SAC

fails to plead "the *amount by which* [data] was distorted" through such individualized

brushing—another particularized allegation necessary to plead the falsity of such

statements under Third Circuit precedent.[6]  *See Chubb*, 394 F.3d at 153.    Hence,

under either theory of fraud, Plaintiffs fail to plead falsity.

Plaintiffs argue that even if none of the alleged conduct was reflected in the

challenged data, GSX's disclosures were still misleading as they failed to disclose

that GSX's success was due to "illegal marketing practices." (Opp. at 33 n.11.)  This

argument fails, as the Opposition also implicitly concedes those statements are

inactionable puffery (*see* Br. at 39).  *In re Campbell Soup Co. Sec. Litig.*, No. 18-

14385 (NLH/JS), 2020 WL 7022655, at *5 n.2 (D.N.J. Nov. 30, 2020) ("Plaintiff

has waived its opposition to this argument by failing to respond to it.").[7]  In any

---

[6]   The SAC does not allege software bots were used in this scheme.  It only alleges
third-party brushers "assumed the identities of and conducted activities as if
[they] were real students," and instructors "purchase[d] fake enrollments" on
their own.  (SAC ¶¶ 73, 76.)  Plaintiffs do not dispute CW-2 and CW-3 were not
in a position to know of GSX's financial reporting specifically.  (*See* Br. at 37.)

[7]   To the extent the Opposition now argues the *financial statements* omitted alleged
illegal marketing practices (Opp. at 33 n.11), the SAC alleges only that "GSX's
*stated reasons for its success*" omitted that alleged fact (*see, e.g.*, SAC ¶¶ 196-
99), and "the complaint may not be amended by the briefs in opposition to a
motion to dismiss." *Takata v. Riot Blockchain, Inc.*, No. 18-02293 (FLW), 2020
WL 2079375, at *16 (D.N.J. Apr. 30, 2020).  Regardless, their own case confirms

8

event, GSX *did* disclose the risk that it may fail to detect rogue employees engaging in "unauthorized" "marketing activities." (Ex. A at 25; Br. at 22.) Plaintiffs' claim that GSX should have warned that fraudulent activities had been "sanctioned by its top executives" fails because the SAC does not plead the existence of widespread misconduct (*infra* § III.B), let alone management's knowledge of it (*supra* § I).

Finally, because, as shown below and in the Opening Brief (Br. at 21-34), the short-seller reports are based on flawed assumptions and speculation, Plaintiffs fail to plead that Defendants' denials of those reports were false.[8]

### B.  Plaintiffs Fail to Plead the Existence of Widespread Misconduct

#### 1.  CW Allegations Do Not Support Widespread Misconduct

Contrary to Plaintiffs' assertions (Opp. at 28), Judge Salas's holding that CW-2, CW-6, and CW-7 are unreliable applies with equal force to the SAC's theories of falsity. As the Court held, the fact that all of these CWs were low-level and/or locally sited employees who left prior to, or a month into, the Class Period (Op. at 13, 15, 17) means they are "unreliable as a source of information *for GSX's practices*

---

that "the mere statement of historical financial information does not give rise to a duty to disclose illegal conduct." *In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 WL 1595985, at *5 (S.D.N.Y. Mar. 28, 2018).

[8]  Plaintiffs also implicitly concede lack of falsity with respect to: (i) statements after February 25, 2020, (ii) statements of legal compliance; and (iii) the number of GSX teachers. (Br. at 35 n.18, 40 n.22.) *See Campbell*, 2020 WL 7022655, at *5. They also abandon their claim that revenues were "overstated by at least 70%." (SAC ¶ 203; *see* Br. at 38 & n.20.)

***during the entire Class Period***" (*id.* at 17)—a holding that necessarily applies to all of Plaintiffs' allegations of widespread misconduct. Indeed, in criticizing Plaintiffs' attempt to "misconstrue CW-2's statements" as implying firsthand knowledge, the Court found that Plaintiffs' failed to explain "why, as an engineering manager, CW-2 was in a position to have been entering contracts on behalf of GSX" with third-party brushing firms (*id.* at 13). It also held that "CW-6 is [] not in a position to know whether all of GSX's instructors and tutors across all of GSX's brands were required to harvest user data from social media sites and use that data to enroll and sign-in to GSX courses." (Op. at 15.) These holdings bear directly on the theories of fraud alleged in the SAC. (*See* SAC ¶¶ 72, 90-93.) Without these particulars, including "the basis for the source's personal knowledge," the Court "must ignore the insufficiently described witness' statements for purposes of evaluating the plaintiff's allegations." *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 538-39 (D.N.J. 2010).

Similar pleading defects defeat the remaining CW allegations. The SAC does not plead that CW-1's claims are based on firsthand knowledge (Br. at 25), and the Opposition's reiteration that she was a "mobile phone engineer . . . at the Beijing headquarters" (Opp. at 29) does not show her personal knowledge of any "mobile phone rooms" or how "[m]ost devices" were programmed, particularly if there were "hundreds of engineers at the Beijing headquarters." (SAC ¶¶ 64-65.) Nor does a

10

description of her job title excuse Plaintiffs' failure to plead "the dates on which the relevant information was acquired" and "specific details regarding the basis for [her] personal knowledge." *Pharmanet*, 720 F. Supp. 2d at 553-54. Plaintiffs also do not plead CW-3's "job title [or] job description." *Id.* at 554. The allegation that she bought classes and wrote positive reviews (Opp. at 29) does not explain the basis of her knowledge of GSX's alleged contracts, the GSX personnel involved, or the total GSX enrollments brushed by her employer (SAC ¶¶ 75-78). Once again, this leaves the Court to "speculate whether the anonymous sources obtained the information they purport to possess by firsthand knowledge or rumor." (Op. at 10.)

Moreover, the reliability of **all** the CW allegations must be assessed in light of Plaintiffs' repeated attempts to "misconstrue" the CWs' statements, despite the Court's earlier disapproval of this tactic. (*See* Op. at 13.) Indeed, the Opposition implicitly concedes (as it must) Defendants' argument (Br. at 26-27) that many of the SAC's characterizations are belied by their sources.[9] In response to Defendants' argument that other allegations are not supported by their sources—for example, that GSX sent CW-3's employer brushing plans "each quarter" (SAC ¶ 78; *see* Br. at 26-27)—Plaintiffs claim this was due to their "independent interview[s]" of the CWs

---

[9] Despite the allegation that machine rooms covered "more than half of the office space" (SAC ¶ 70), the Opposition refers to a *single* room (Opp. at 6). Further, the Opposition confirms that CW-3 never stated her employer "accounted for about 40% of GSX's student enrollments," but that she was speaking "*generally*" of the amount "brushed for *one teacher*." (Opp. at 30 & n.9; *see* Br. at 27.)

11

(Opp. at 30). But the SAC does not identify any specific fact or quote from these purported interviews. Plaintiffs' unsupported assertions cannot be explained away by alleged "independent interview" statements that appear nowhere in the SAC.

Nor do Plaintiffs' alleged "independent interview[s]" alleviate concerns about the reliability of the short-seller reports they cite. (Opp. at 30; *see* Br. at 26.) If anything, Plaintiffs' tactics *compound* these concerns, since, far from evincing any effort to "engage with the dubious reliability of the short-seller reports," *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020), their attempts to "misuse or mischaracterize [CW] statements" "provide the Court little assurance that the factual contentions have any evidentiary support." *In re Lehman Bros. Sec. & Erisa Litig.*, No. 10 Civ. 6637 (LAK), 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013).

Viewed through this lens, the CW allegations do not support Plaintiffs' theory of widespread misconduct. (Br. at 27-28.) The alleged facts Plaintiffs cite in response (Opp. at 30) are unsupported by allegations of firsthand knowledge, or are flatly contradicted by Plaintiffs' sources.

### 2. Muddy Waters' Claims Do Not Support Widespread Fraud

The Opposition does not dispute (and their expert confirms (SAC ¶ 54)) that the vast majority of alleged "bot" behaviors observed by Muddy Waters are not related to fraud, but are caused either when tutors switch students from smaller sessions to the large class early, or when the system automatically switches students

12

around the start of class.  (*See* Br. at 29-31 & n.14; Ex. K at 1.)  Unable to deny these facts, Plaintiffs focus solely on Burst Joiners who join after the start of class, and argue that, contrary to their expert's opinion that "only a very poorly designed automated bot would transition students . . . after the class has begun" (SAC ¶ 53), it is somehow "likely" that GSX designed such a bot to "mimic the tardiness of some students" in order to perpetuate fraud.  (Opp. at 25.)  This is rank speculation belied by the SAC's allegations, and "need not be credited."  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).  It also makes no sense, as Plaintiffs' theory is that burst joining is suspicious because it "defies the experience of anyone familiar with student life."  (SAC ¶ 36.)  It would thus be irrational to *conceal* fraud with such conspicuous bursts that occur after most students have joined.  Regardless, Plaintiffs overstate the frequency of late switching.  Muddy Waters found only "96 stragglers" who joined class four minutes late—just *0.17%* of the 54,065 users in its sample. (Ex. J at 3, 9.)  Plaintiffs fail to explain how this suggests widespread fraud.

The Opposition also fails to grapple with Muddy Waters' reliability issues, as it points to no place in the Report to support the conclusory claim that its sample was "randomly chosen."  (Opp. at 25; SAC ¶ 40.)  Nor can they base a claim of widespread fraud on a fraction of GSX's courses over the Class Period.  (*See* Br. at 29 n.13); *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577-78 (D.N.J. 2001).

Defendants' observation that the short seller added tens of thousands of

13

"linked" users who did not exhibit any bot behavior at all (Br. at 32 & n.15) does not raise a question of fact or *Daubert* challenge (Opp. at 26).  Dr. Knoblock ***did not even opine*** on "linked" users, and the SAC also does not allege any basis to include them.  The Same-Second, Different-Week Joiners illustrate why inclusion of "linked" users is improper.  GSX explained, and the Opposition does not dispute, that this behavior is due to automatic switching at the start of class. (Ex. K at 1; Br. at 30.)  But there is no basis to infer that students who also join class on time—and, thus, are "linked" to these Joiners—are bots.  Yet this is what Muddy Waters did, nearly ***quadrupling*** the number of alleged "bots" purportedly exhibiting this behavior.  (SAC ¶¶ 43-45.)

Finally, despite Plaintiffs' protestations (Opp. at 26-27), the SAC alleges "Dr. Knoblock took the facts and data *as stated in [Muddy Waters'] reports* as true," including the short seller's conclusions regarding the number of "bots" and "linked" users and that it removed "duplicates" from sets.  (SAC ¶¶ 35, 44-59.)  As Muddy Waters did not include its raw data (*see* Ex. J; Ex. R), Dr. Knoblock's "independent analysis" simply rubber-stamped the biased Reports.  *See Hershewe v. JOYY Inc.*, No. 22-55377, 2023 WL 3316328 (9th Cir. May 9, 2023) ("[W]e agree with the district court that Dr. Knoblock's statistical evidence failed to validate the [Muddy Waters] Report's conclusions or establish that any of Defendants' statements were false when made.").

14

### 3.   Other Allegations Do Not Support Widespread Misconduct

Plaintiffs' other allegations cast further doubt on the reliability of the SAC or are simply irrelevant.  The job posts contain translation errors that are at odds with Plaintiffs' own definitions.  (SAC ¶ 106 n.71; *see* Br. at 33-34.)  And as already shown (ECF No. 70 at 12 n.12), public sources cited in the SAC show that TaiChi software has many nonculpable uses, including WeChat support, which the SAC admits GSX used regularly.[10]  (*See* SAC ¶¶ 26, 80.)  Plaintiffs' reproduction of these "demonstrable errors" *again* in the SAC confirms their "lack of [] reasonable inquiry."  *Miao*, 442 F. Supp. 3d at 804.  Moreover, Plaintiffs' own sources confirm that GSX's competitors operated physical schools,[11] explaining GSX's competitive advantage as a 100% online platform, both before and after the pandemic.  Plaintiffs' purported "independent investigation" adds nothing because they allege no specific facts from the investigation or identify what specific information was corroborated.

### CONCLUSION

For these reasons, the Court should dismiss the SAC, this time with prejudice.

---

[10]   A search of TaiChi's website cited in the SAC (https://taichi.cool/) reveals the phrase "fake device" quoted in the SAC (SAC ¶ 105) appears in a list of "module downloads" that also lists Chinese messaging apps like WeChat and QQ.

[11]   As previously shown, this fact is confirmed by public SEC filings and documents quoted in FAC and SAC.  (*See* ECF No. 70 at 12-13 & n.15; SAC ¶ 150; TAL SEC Form F-1 at 1, https://bit.ly/3apGnMG.)  Plaintiffs' claim that revenue grew 4,290% in 2019 is an arithmetic error (Opp. at 35); properly calculated, the revenue figures in the SAC show revenue grew 432% (SAC ¶ 134).

DATED:    August 23, 2023

Respectfully submitted,

*/s/ Justin T. Quinn*
Justin T. Quinn
**ROBINSON MILLER LLC**
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
(973) 690-5400
jquinn@rwmlegal.com

Scott D. Musoff
Robert A. Fumerton (*pro hac vice*)
Michael C. Griffin (*pro hac vice*)
Judith A. Flumenbaum (*pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (917) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com
judy.flumenbaum@skadden.com

*Counsel for Defendants GSX
Techedu Inc., Larry Xiangdong Chen
and Nan Shen*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the accompanying Reply Memorandum of Law

was served on all parties via the Court's electronic filing system on August 23, 2023.


Dated:  August 23, 2023

/s/ *Justin T. Quinn*
Justin T. Quinn

2