```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY

WU,                                      .
                                         .
          Plaintiff,                     .
                                         .  Case No. 20-cv-04457
vs.                                      .
                                         .  Newark, New Jersey
GSX TECHEDU INC., et al.,                .  February 4, 2025
                                         .
          Defendants.                    .
                                         .
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (the parties appeared in person):

For the Plaintiff:     AUSTIN P. VAN, ESQ.
                       Pomerantz
                       600 Third Avenue, Suite 20th Floor
                       New York, NY 10016
                       (212) 661-1100
                       Avan@pomlaw.com

Audio Operator:

Transcription Service:     KING TRANSCRIPTION SERVICES, LLC
                           3 South Corporate Drive, Suite 203
                           Riverdale, NJ  07457
                           (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

(APPEARANCES continued)

For the Defendants:    KEITH J. MILLER, ESQ.
                       Robinson Miller LLC
                       Ironside Newark
                       110 Edison Place
                       Suite 302
                       Newark, NJ 07102
                       (973) 690-5400
                       Kmiller@rwmlegal.com

                       JUDITH (JUDY) A. FLUMENBAUM, ESQ.
                       Skadden, Arps, Slate, Meagher & Flom
                       LLP
                       One Manhattan West
                       New York, NY 10001
                       (212) 735-2764
                       judy.flumenbaum@skadden.com

                       ROBERT A. FUMERTON, ESQ.
                       Skadden, Arps, Slate, Meagher & Flom
                       LLP
                       One Manhattan West
                       New York, NY 10001
                       (212) 735-3902
                       robert.fumerton@skadden.com

(Commencement of proceedings)

THE COURT: Good afternoon. We're on the record in the matter of Wu versus GSX Techedu, Docket Number 20-4457.

May I have the appearance starting with plaintiff, please.

MR. VAN: Good afternoon, Your Honor. Austin Van from Pomerantz on behalf of lead plaintiffs.

THE COURT: Okay.

MALE SPEAKER: Good afternoon. Thomas -- on behalf of plaintiffs as well.

THE COURT: Good afternoon.

And defendants?

MR. MILLER: Good afternoon, Your Honor. For defendants, Keith Miller, Robinson Miller, Newark, New Jersey. Also with me are my co-counsel from Skadden Arps, Rob Fumerton and Judy Flumenbaum.

THE COURT: Good afternoon.

So I received a discovery dispute letter. And the first issue that we need to address is whether defendants should be required to produce organizational charts now in response to requests to -- Document Request Number 26 and without waiting for the Chinese government to approve that production.

So let me hear from plaintiff on this.

|Hearing
|20-cv-04457, February 4, 2025

MR. VAN:  Thank you, Your Honor.

So the relief that we were seeking in the discovery dispute -- really in all these discovery disputes -- has effectively been denied just by the passage of time.

We raised this first with defendants in October, and the point of raising it was to get information about custodians -- who at GSX knows what? -- so that we could get then go and collect the documents from those people.  That's the first step in the discovery process in every case I've ever worked on or know about -- is to figure out who knew what and then to go collect their documents and then apply search terms to the documents and then have defendants review and produce them.

That first step was denied to us.  We didn't get the information that we needed to assess who knew what, who the appropriate custodians were.

And so now here we are two and a half weeks before the end of document discovery.  The substantial completion deadline that Your Honor has set, we still don't have these documents necessary to start the discovery process.

Instead, what we have from defendants are 10 custodians -- or 11 custodians of their choosing, an additional two, the two individual defendants.  They should -- we think that they should still produce documents from those individuals within the next two weeks in

accordance with the Court's order.

But I think today what we need to come up is some plan forward for their getting us the custodian information we need immediately.  Immediately.

THE COURT:  You're talking about the organizational chart?  Or are you referring to something else?

MR. VAN:  So --

THE COURT:  Because I was focusing on the organizational chart.

MR. VAN:  So absolutely the organizational chart. The chart showing, you know, structure of the employees of GSX is very basic information.  We ask that it be prioritized.  It's usually the first things that are produced.  It has yet to be produced.

THE COURT:  So let's take one issue at a time --

MR. VAN:  Okay.

THE COURT:  -- before you move on to anything else.

Is that -- what's your argument with respect to the organizational chart?

MR. VAN:  Defendants have agreed to produce these charts.  They admit that they --

THE COURT:  Oh, they have.

MR. VAN:  -- yes, they have them.

THE COURT:  Okay.  I thought that that was --

MR. VAN:  They've agreed to produce them.

The issue is timing.  We need them immediately.  And defendants are saying that they want to delay.

But the period to delay is over.

THE COURT:  I guess that's what I'm trying to get at.

The question is whether the -- we should all wait for the Chinese government to review the chart and then determine whatever they're going to determine.

MR. VAN:  Absolutely not, Your Honor.  So we went over this in the first hearing that we had with you.  And every court that we have looked at where defendants have raised exactly these types of arguments saying let's point to Chinese law to delay U.S. discovery, the courts have said no.  U.S. law controls in U.S. courts.  Foreign law cannot interrupt the U.S. discovery process or be a barrier to it.  And we cited a number of cases that held exactly that.

And we understood Your Honor to appreciate that principle in setting the discovery deadline that you did.  Defendants asked for enough time back when we were setting the discovery schedule just to wait until the Chinese government had finished their approval process.  That will take years.  We can't wait until -- we can't wait years for this to get going.  It's already been five years, Your Honor, since this case began.

So I think Your Honor was absolutely right in

setting the substantial completion deadline for document discovery two and a half weeks from now.  We should hold to that deadline as best as possible and allow for additional custodians that we will have to agree upon in short order after they give us custodian information, the documents of those individuals be produced -- need to be produced in short order as well.

THE COURT:  Okay.  Let me hear from defendants, just on this point concerning the organizational chart and what is the true necessity here to wait for the People's Republic of China to review the information and make an assessment and determination.

MS. FLUMENBAUM:  Sure, Your Honor.  I mean, as plaintiff's counsel notes, you know, we are not refusing to produce these documents.  We're prepared to produce them.

And plaintiff's counsel has provided no authority that we have to produce them at any certain point within the discovery window.

You know, as plaintiff's counsel knows, as we've represented here, our client, a Chinese issuer, all the documents are in China, and the company is seeking to go through the PRC regulations in producing those documents as well as comply with its U.S. obligations, which we've done in numerous other cases with plaintiff's counsel.

Additionally, our client is working towards this

goal.  They've, you know, communicated with four different agencies and PRC counsel, and we've offered for plaintiff's counsel -- plaintiff's PRC counsel to review the documents in China to, you know, sort of expedite some of this process that we know is taking a little long here.

Additionally, I just want to note that we have offered 13 custodians as, you know, a starting point, which is not insignificant.  We have debated search terms, and our last email with plaintiffs was almost two months ago, to which they haven't responded, regarding a hit report.

So it seems to me that these disputes seem slightly manufactured when we could have moved discovery along in a variety of other ways and instead we brought this org chart issue to Your Honor, which there is, you know, a fair amount of discovery that could have been moving forward, otherwise.

THE COURT:  But with respect to the organizational chart, which is so, I guess, unique about it that it requires review by the People's Republic of China before its production?  I mean, if it's a typical organizational chart, as we all know, it's probably benign.  It has perhaps a photograph of someone, the name and title, and who reports to whom.

MS. FLUMENBAUM:  Sure, Your Honor.

I think the issue here is, one, that's a determination for the PRC government to make.  And also there

|Hearing
|20-cv-04457, February 4, 2025

are issues with exporting personal information outside of that PRC, which could be on those organizational charts as well.

And so just getting sort of the coverage from the PRC regulators, that's sort of the path that the company wants to take.

THE COURT:  And from your experience, what's the timeline from inception of when document is submitted for review to when it's released, particularly in a case like this?

MS. FLUMENBAUM:  Sure.  And it does vary and especially since PRC rules have been sort of changing regarding this process.

But, you know, in two other cases in which we've gotten a significant, you know, amount of discovery out, it probably takes about a year.  But, I mean, we would seek a few months' extension of the discovery deadline and, you know, especially we haven't agreed to search terms yet.  I don't think that seems so outrageous of a request.

THE COURT:  But could they even agree to search terms when they don't know which custodians they're going to, I guess, search?

MS. FLUMENBAUM:  I think the search terms themselves, you know, we could be running them on the 13 custodians that we've already agreed upon.

I think when we were debating search terms, there were approximately 900,000 documents that would have hit on the 13 search terms.  That is not insignificant.

Instead, they're continuing to seek more and more custodians and not sort of looking at the discovery that we could be working towards producing now.

THE COURT:  But wouldn't the organizational chart dictate which custodians are searched?  I guess that's what I'm trying to get at.

MS. FLUMENBAUM:  So I think we could end up adding custodians, which we always can as discovery goes on.

But, you know, 13 is pretty good starting point to get them sort of information, and then we can work from there to add additional custodians as the discovery is produced and, you know, we've all assessed.

THE COURT:  Okay.  Well, look, with respect to the organizational chart -- thank you.  I appreciate your argument.

Is there anything else I should be considering from plaintiff?

MR. VAN:  I'm happy to respond to some of the points that were raised, but I am not sure that they affect the production of the organizational charts.  I hope that Your Honor appreciates that they be produced immediately.

We agree with Your Honor that there's nothing

|Hearing
|20-cv-04457, February 4, 2025

sensitive at all about org charts.

THE COURT: Okay. Thank you.

So, I mean, neither party really disputes that the organizational charts are relevant in this case, and plaintiffs do cite to a case, Chevron Corporation v. Donziger -- the cite is 296 F.R.D. 168 at page 198 -- to support their position that district courts may impose discovery under the federal rules of civil procedure when it has foreign jurisdiction over the foreign party notwithstanding provisions of foreign law that would prohibit production. And, indeed, this case went on to confirm that "a district court has wide discretion to determine whether and to what extent it should compel discovery by a party over which it has jurisdiction when that party contends that foreign law prohibits production." And that's from the same case at page 204.

The Southern District of New York in that case absolutely ordered the production of documents at issue in the case. They were coming from the country of Ecuador. But before doing so, the Court found the following: One, that defendants have at least private control over the documents at issue; two, the court has jurisdiction over the defendants; three, Ecuadorian prohibits or is assumed to prohibit production of the requested documents; four, there is a true conflict between Ecuadorian law. And the Southern

District then went on to determine whether an order compelling defendants to produce the documents would be in accord with the principles of international comity and considered the following factors:  The importance of the discovery to the litigation; the degree of specificity of the request; whether the information originated in the United States and the availability of alternative means of securing the information; and, five, the extent to which noncompliance with the request would undermine the importance -- excuse me -- the important interests of the United States or compliance with the request would undermine important interests of the state where the information is located.

And I did consider defendant's case, which was In re Didi Global Securities Litigation.  The case citation is 21-cv-05807.  That case is still pending.  And it sounds like in that case, the discovery there was extended, but it's unclear for the reason for the extension was.

Is there anything that I should know about that case?

MS. FLUMENBAUM:  Sure, Your Honor.  It's a similar case as to here.  It's a Chinese issuer, and, you know, Kaplan [phonetic] recognized that there was -- it was difficult to get documents out and provided, you know, defendants with a certain amount of time to make sure its discovery was, you know, more fulsome.

And that's really all we're asking for here.  We're not saying we're not going to produce the organizational charts.  We're just --

THE COURT:  You're just asking for time.

MS. FLUMENBAUM:  Exactly.

THE COURT:  But the question is how long do we wait?

MS. FLUMENBAUM:  We would ask for three to four months if Your Honor would allow us that time to, you know, work with the PRC regulators to try and get these documents out.

THE COURT:  When did you submit the request?

MS. FLUMENBAUM:  We haven't yet.  The deadline isn't until the end of the month.  So we haven't submitted an extension request yet.  We can do it --

MR. VAN:  I think he meant the request to the PRC.

MS. FLUMENBAUM:  Oh, the request to PRC?

THE COURT:  Yes.

MS. FLUMENBAUM:  Oh.  Oh.

So they've been communicating to the PRC since September.  They've talked to a variety of different organizations there to try and figure out the best path forward.  And they're still working towards that goal.

MR. FUMERTON:  And, Your Honor, may I be heard briefly?

|Hearing
|20-cv-04457, February 4, 2025

THE COURT:  Sure.  Absolutely.

MR. MILLER:  You know, the other proposal would be to have -- you know, we can't even see the documents until PRC regulator gives the green light.  So Skadden Arps doesn't have these documents.

But what we can do is have our PRC counsel produce them to plaintiff's PRC counsel in the meantime; right?  And then hopefully we'll have this resolved in the next few months.

So we would suggest that as a path forward, but, obviously, defer to Your Honor.

THE COURT:  Any objection to that, Mr. Van?

MR. VAN:  Yes, Your Honor.  It's an empty offer. We don't have PRC counsel.  We have liaison counsel that represents one of the individuals in a liaison capacity.

No one in China has been appointed by the Court as lead plaintiffs.  We are the lead plaintiffs appointed by the Court.  We need the documents in order to make the strategic calls, the analyses that are necessary in order to move the case forward.  It would be of no use for them to produce to this liaison counsel in China.

THE COURT:  Explain to me the concept of liaison counsel.

MR. VAN:  Well -- so -- Mr. Hao [phonetic] assists with translation between us and our client, the lead

|Hearing
|20-cv-04457, February 4, 2025

plaintiff, Mr. Renbin.

THE COURT:  Is there anything that would prevent liaison counsel from sharing information with you?

MR. VAN:  I don't think that if -- yes.  I think that -- for all the reasons that they can't produce it to us, our liaison counsel couldn't produce it to us.  It's not as if there's some back channel here that makes it legal.

MR. FUMERTON:  And, Your Honor, we have, like, litigated over 2,000 of these cases involving Chinese issuers, and in each one, there's PRC counsel that deals with these discovery issues, cases that proceed from discovery phase.

So I am not sure -- plaintiffs are suggesting that because they're not court-appointed, they can't have PRC counsel.

In the DD case, plaintiffs have PRC counsel.  In the Needo [phonetic] case, virtually every other counsel, plaintiffs have PRC counsel.  We would suggest that these local PRC counsel work together while we're getting these approvals to streamline things and make things go as quickly as possible.

THE COURT:  I guess my question -- thank you.

I guess my question, Mr. Van, is, you know, if the information is produced to an attorney, liaison, whoever the title is in the people's republic of China, could that

counsel tell you who's on the org chart?

MR. VAN:  My understanding is no.  So it will be of new use --

THE COURT:  They would be violating --

MR. VAN:  No utility.  For all the same reasons that they have issues with the PRC, we would have the same issues.  They would just be, you know, shifting the burden to us, which would make it even more improper, I think.

THE COURT:  All right.

Anything else, Counsel?

MR. FUMERTON:  I don't believe so, Your Honor.

THE COURT:  Okay.  Very well.

Well, look, I have to consider the factors that I laid out before, one of which is the importance of the document to the litigation.  And no one seems to dispute that the organizational chart is relevant and important to this litigation.  I also have to consider the degree of specificity of the request.  No one disputes that this request is specific as it relates to just an organizational chart.  I have to consider whether the information originated in the United States.  It is unclear to me whether the chart was create- -- where the chart was created and no counsel has made any representations one way or the other.

But it is clear to me that defendants do have control or at least are not arguing that they don't.  And I

have to consider the availability of alternative means of securing the information, and we just covered that through the conversation about liaison counsel.  Another alternative would be to wait depositions.

But the chart itself is the best form of evidence and is the most efficient way to obtain the most accurate information.

And next I have to consider the extent to which noncompliance with the request would undermine the importance -- the important interests of the United States or compliance with requests would undermine important interests of the state where the information is located.

And no one has really argued this fact, and so I will consider it neutral.

I will say, however, as I pointed out at the outset, I cannot imagine a circumstance under which the People's Republic of China would deny the production of the chart, given that it doesn't really implicate sensitive information.  It's not as if we're talking about trade secrets where there's a possibility where this information is not going to be produced.

So considering all of these factors and the totality of the circumstances, I do think it's appropriate for defendants to produce the chart.

I guess the question that I have is how long do you

need that is not three months?

MR. FUMERTON:  Yeah, understood, Your Honor.  And I guess what we would request is the ability to be able take Your Honor's order to the regulator and show the regulator, "Look, the U.S. Court has ordered this" to see if that could move it along.  That does take some time; so if we can't have three months, if we could have, you know, two months or at least a month to go back to the regulator and say, look, this is what a U.S. court has ordered.  Please let us proceed.

THE COURT:  Okay.  All right.  So I will give you 30 days.  If for whatever reason there is true delay, then you can let me know.

MR. FUMERTON:  Understood, Your Honor.

THE COURT:  All right.

Next I have to consider Dispute Number 2, which is the parties are disputing responses to plaintiff's Interrogatories 1 through 7, but I will be honest with you: I was a little confused about this particular argument.

So, Mr. Van, can you articulate what the real concern is here in.

MR. VAN:  Sure thing, Your Honor.

So this is exactly in the same vein as the prior discussion.  What we need here is information about who at GSX did what.  These interrogatories are the same sorts of interrogatories we ask at the outset of every major

litigation. And the reason is so that we can know who did what so we can go and get their documents and have them searched. Defendants gave us only 11 names in addition to the two individual custodians -- defendants.

And litigations of this size, that is woefully insufficient. Typically, you have between 50 and 70 or even 80 custodians and productions of 12, 35, 40, 50 million documents are typical.

So they're nowhere near meeting what is expected here.

All they've given us so far are people with, quote, general oversight over the activities.

It is certain that there are a number of people who do not have duplicative documents, who have relevant documents who are actually in the weeds doing these activities that we specified, who weren't just the general oversight folks.

And --

THE COURT: Do you have specific concrete information that you feel is missing? Because if I understood their response, they're not saying this is everything. But they're conducting an investigation themselves -- I'll hear from them, but it sounds like they're running into some roadblocks themselves, and they will respond more fulsome when they have the information.

|Hearing
|20-cv-04457, February 4, 2025                                                    20

MR. VAN:  Well, time is up for them to provide more fulsome information.  Your Honor set a deadline for two and a half weeks from now for this to be done.  This was supposed to be at the start so we'd have this information to get the ball rolling so that the ball could wind up crossing the finish line in two and a half weeks.  But specifics, Number 7, our rog Number 7, asks for everyone who's interviewed in the internal investigation over exactly this subject matter.

They haven't even given us that list.  They have that list.  They've given us 13 names that are on that list.  They have no argument that that list is somehow -- you know, shouldn't be -- should undergo approval of the Chinese government.  They've already given 13 names on the list.  They should just give the rest of the names on the list.  That should be done tomorrow.  They have that information.  It's ready to go.  We need --

THE COURT:  So let's take this in piecemeal.  And I'd like to focus on the specifics.

So can you respond to that and tell me about the specific list of individuals who have been interviewed?

MS. FLUMENBAUM:  So, Your Honor, I do not have that them.  Skadden does not have that information.

And --

THE COURT:  But does your client?

|Hearing
|20-cv-04457, February 4, 2025

MS. FLUMENBAUM:  My client has that information. But it similarly has go through the same processes that any document in China has to go through before we produce it.

THE COURT:  But we're not talking about a document. We're talking about a list.  This is a response to an interrogatory.

Is that correct, Mr. Van?

MR. VAN:  Yes.

THE COURT:  Okay.  So you know you don't have to produce a document but a response to the interrogatory.

MS. FLUMENBAUM:  Sure.  But that information, you know, it might be privileged for a variety of reasons.  And to --

THE COURT:  But have you raised privilege issues in response?

MS. FLUMENBAUM:  Well, that's what the PRC review is supposed to figure out is whether, you know, producing some of this information would cause any issues with PRC government or the regulators there.

The names we did provide are, you know -- plaintiffs don't purport that these individuals don't have -- aren't appropriate custodians in this case.  You know, it's the head of technology.  It's the head student enrollment. It's people directly relevant to their claims.

There might be more.  I am not saying that.  And

the company is doing investigation.  But, you know, I think where we are right now, particularly if we are going to produce the organizational charts, this seems to be a little, you know -- it seems like we're looking for the same information as we are on the organizational charts.

THE COURT:  Not necessarily because the organizational chart may have individuals who were not interviewed.  Right?  In other words, you may have individuals who were -- if I understand correctly, Interrogatory Number 7 asks for a list of the folks who were interviewed; is that correct?

MR. VAN:  Yes, Your Honor.

THE COURT:  Okay.  So there may be people who were interviewed who are not on the organizational chart.

MS. FLUMENBAUM:  There might be but, I don't know that standing here today.  And, you know, we would submit that, you know, we have also another 30 days to go to the regulator and ask to get that information out.

THE COURT:  But why wasn't that done already?

MS. FLUMENBAUM:  Well, it was done, but with a court order we could try to move it along a little faster.

THE COURT:  Okay.  I mean, it seems to me that this information is relevant and for the same reasons I articulated before, I'm going to give you 30 days to respond to that interrogatory.

MS. FLUMENBAUM:  Okay, Your Honor.

THE COURT:  Okay.

MR. VAN:  Your Honor, may I ask a question for clarification?

THE COURT:  Yes.

MR. VAN:  So is that just -- I guess I'd renew our request that all our interrogatories be answered in whole. Interrogatory Number 7 is very important.  That is the individuals that they interviewed as part of their own internal investigation about exactly the subject matter here.

But we also asked about who at the company was involved in specific roles; things like cell phone maintenance.

THE COURT:  But that part would be answered by the chart.  No?

MR. VAN:  We are allowed to come at this in two different ways.  It's possible the chart will show that. It's also possible the organizational chart won't show it. We haven't seen those charts yet.

And it's more than just the chart.  We're asking for descriptions of who did what, who was primarily --

THE COURT:  So let's do this because you did not in your letter break down the issue with respect to each interrogatory.

So tell me about Interrogatory Number 1.

|Hearing
|20-cv-04457, February 4, 2025

MR. VAN:  So for 1, we're looking for the individuals who were -- whose job responsibilities included student enrollment operational figures; student account creators --

THE COURT:  I'm sorry.  Slow it down.

Individual whose job ...

MR. VAN:  Job responsibilities relate to monitoring, calculating, analyzing, or reporting student enrollment operational figures.  So student enrollment; student account creation; student log-in activity and/or student chats.

And so there are these, you know, responsibilities that are at the heart of this case, and we want to know who was working on those -- had those responsibilities, whose job is directly related to them.

It's a very fair interrogatory of the sort that we typically ask.  Defendants aren't trying to say that it's an improper interrogatory.  It's just that they've given an inadequate response.  They've just given 10 names or 11 names.  And there should be at least a hundred.  This organization has 10,000 people in it.

THE COURT:  So with respect to Interrogatory Number 1, what's the response?

MS. FLUMENBAUM:  The response is that we provided individual that are responsive to Interrogatory 1.  And for

anyone additional, we don't have the documents.  We would still need to review those to answer the -- to supplement the interrogatory to provide additional names.  And we don't have ability right now since we don't have the documents in the U.S.

THE COURT:  But you have counsel in the People's Republic of China; right?

MS. FLUMENBAUM:  Sure.  But providing that information --

THE COURT:  Creates the same issue?

MS. FLUMENBAUM:  Exactly.

THE COURT:  Okay.

So 30 days.

MR. FUMERTON:  I mean, Your Honor, if I could just briefly, it's not like a list that can just be turned over. I mean, we have provided the response.  We're obviously under an ongoing cute to supplement, which we will in discovery.

THE COURT:  Right.

MR. FUMERTON:  But the idea that we can -- these additional names will need to be gleaned from documents. It's not a readily accessible list.

So we would ask more time for this type of interrogatory.

THE COURT:  Mr. Van?

MR. VAN:  Yeah, I think Your Honor's giving them 30

|Hearing
|20-cv-04457, February 4, 2025

days is more sufficient.  This is -- they've already had six months to do this.  It should have been done a long time ago, in the first month.

Now it sounds like only now they're going to really start doing this.  We need to light a fire under defendants here.  I think it's clear that they need handholding.

So I appreciate the Court's 30-day --

MR. FUMERTON:  And, Your Honor, respectfully -- sorry.  We went -- as soon as we got these requests, we went to the PRC regulator with their local counsel.  We haven't dragged our feet at all.  We're trying to make this go as quickly as possible.

What's holding it up is plaintiff's refusal to get their own PRC counsel where these lawyers could work together.

So we have not dragged our feet one bit on this.

THE COURT:  And, look, I don't want to sort of dive into personal attacks or assumptions about what one party may or may not be doing.  I want to focus on resolving these issues.

Let's do this.  I'll give you 30 days.  Please take that order to the regulators, and if, for whatever reason, you need more time and you can substantiate my you need more time, then you can let me know.

MR. FUMERTON:  Understood, Your Honor.

THE COURT: So what's the issue with Interrogatory Number 2?

MR. VAN: So Interrogatory Number 2 just asks for a description of what the individuals in Interrogatory Number 1 were doing. And I don't think the defendants have an issue with that. They're just interested in getting the names. That's the hurdle.

So I think maybe 3 would be the next interesting interrogatory.

THE COURT: So any issues with Number 2 falling under the same order?

MS. FLUMENBAUM: No, Your Honor. Once we've identified the names, we can provide their job descriptions.

THE COURT: Okay.

MR. VAN: So in Interrogatory Number 3, we're asking for individuals whose job responsibilities included the maintenance or management of or installation of software on cell phones, including without limitation individuals whose job responsibilities include recruitment of employees with job responsibilities that include the maintenance or management or installation of software on cell phones, people who were working on cell phones, which is at the heart of the bot activity in this case.

And, again, they've given us --

THE COURT: I'm sorry. Say that again. So people

who are working on cellular phones?

MR. VAN:  On cell phones.  And, you know, we use more legalese in --

THE COURT:  And these individuals would be, based on your theory of liability, individuals who were responsible for manipulating the sort of number of enrollments?

MR. VAN:  Yes.  Yes.  So our theory is that they had large rooms with thousands of cell phones in them and they were using those to simulate student log-in activity and student account enrollments, various activity that was making -- creating a fraudulent front to the company.

THE COURT:  All right.

So any -- I mean, does this category fall into any different category than the one we've already spoken about?

MS. FLUMENBAUM:  I mean, I would just say, Your Honor, that we have numerous individuals on here are involved with the technology department, which, I think, should cover what plaintiffs are seeking here.

But to the extent it doesn't, as discussed, we just don't have the information they're looking for right now.  So it's impossible for us to get names for such a specific question related to cell phones, which, you know -- I don't even know if there's someone in charge of cell phone -- or mobile technology in particular at GSX.

So what they might be seeking might not exist in

the way that, you know, they are writing it here.  We have provided numerous people involved in the technology department which, you know, should have a better sense, and we're willing to, you know, run their search terms over those individuals to figure out if those people even, you know, have relevant information here or exist all.

THE COURT:  Okay.  So see what you can do within 30 days.

MS. FLUMENBAUM:  Okay.

THE COURT:  And Number 4?

MR. VAN:  So Number 4 is the job responsibilities of the individuals in Number 3 -- job descriptions.  And so Number 5 are individuals --

THE COURT:  So before we move on, I assume there are no issues with Number 4, then?

MS. FLUMENBAUM:  No, Your Honor.

THE COURT:  Okay.

MR. VAN:  So Number 5 addresses people whose job responsibilities included financial reporting and/or analyzing and responding to short tellers and/or drafting review or dissemination of the statements allegedly false and/or misleading in the complaint.

So individuals with knowledge of the financial reporting, which we allege was false, and the dissemination of the statements --

THE COURT:  Now, quick question, are you referring to financial reporting in --

MR. VAN:  SEC.

THE COURT:  I'm sorry.  With the SEC.  But that would be here in the U.S.

MR. VAN:  Yes.

THE COURT:  So what would be the objection to that?

MS. FLUMENBAUM:  So, Your Honor, we provided the name of the chief financial officer and the financial director.

But just as before, you know, once we get these documents, if there are people that fall under this category, we're happy to, you know, supplement our interrogatory.

And I think the rest of the responses are similar.  You know, we've provided the people that we have that covers areas that they're interested in.  And if there are more, we will supplement as discovery continues.

THE COURT:  So, I mean, this seems to me like a nonissue at this point because any financial reporting would have to be done by folks in the U.S.  So this is not implicated, as I understand it, the PRC's review of documents, does it?

MS. FLUMENBAUM:  It does, Your Honor, because our financial team is in the PRC as well.  So the CFO, the financial director are all in the PRC.

THE COURT:  Oh, okay.  So they're not in the U.S.?

MS. FLUMENBAUM:  No.  No.

THE COURT:  Okay.  So 30 days.

Number 5?

MR. VAN:  I think we just covered Number 5.

Number 6 --

THE COURT:  Oh, so Number 6.

MR. VAN:  As for the details about the job responsibilities of the individuals in Number 5.

And, then, Number 7 I think is where we started with the individuals who were questioned in the internal investigation.

THE COURT:  Okay.

So I think that takes care of Dispute Number 2.

In future, if you are going to raise discovery disputes, I would like you to break it down by individual interrogatories so I know what you're seeking and what the objections are.

MR. VAN:  Understood.

THE COURT:  Okay.  So Dispute Number 3, this is concerning students' log-in information, and the issue is whether defendants should be required to produce the student log-in data in response to Request Number 3 of plaintiffs' first set of requests for production of documents without waiting for the Chinese government to approve that

production.

So walk me through this issue, Mr. Van.

MR. VAN:  So under the Court's order, defendants are required to produce this in two and a half weeks, and we would appreciate the Court's sticking to that order.  There's nothing sensitive about student log-in data.  This is not something proprietary.  It's just a record of when students were logging in for some online, you know, classes in China.

So there's no reason --

THE COURT:  So that was my question because I was wondering whether this was different than the organizational chart in terms of sensitivity.

The data that you're looking for, is it personal identifying information?  Or is it data of when students were purportedly logging into the system?

MR. VAN:  It's just -- our understanding -- so we don't know how they store their data.  But it should just be information about when students were logging on.

If there is, you know, personal identifying information that they feel is sensitive, that can be redacted.  We're not really interested in -- I know -- the personal equivalent of a social security number or something, if that's -- like, appears in the data.  I doubt it does.

It's mostly -- my belief is that it just shows when students were logging in -- and -- you know, a log-in that

was used for -- to identify the student.  There's nothing sensitive in that.  I can't imagine why it would be held up.

And we need this early.  We need it yesterday because our expert has to go and do complex analyses of this data to figure out whether or not -- and we have strong reason to believe that this will be the case -- the data shows that the log-in activity was primarily being done through bots -- if it shows certain patterns that suggest that, you know, nonhuman actors were accounting for these log-ins.

THE COURT:  Okay.  Ms. Flumenbaum.

MS. FLUMENBAUM:  Your Honor, this dispute is significantly different than organizational charts.  They're asking for significant amount of information.  They're suggesting you have to redact it within a certain amount of time.  I mean, this will take a lot of time for the company to get together to work with PRC on and to come to U.S. counsel before production.  You know, this is extremely voluminous.  If they're asking for student log-in data, you know, for years, period.  This is not an easy get.

So I would just submit that this is entirely different than producing a chart and has real concerns, I think, for the PRC government because there is a fair amount -- from my understanding, could be a fair amount of personal information in this data.

And I too don't know how it's kept.

So I mean all of these issues, you know, make this a difficult thing to produce in short order.

And I would also note that, you know, they're worried about their expert.  Expert discovery isn't due until the end of May.  That's not a reason for us to sort of have to jump-start the process here.  They will have ample time for their expert to review the data, but this is not an easy thing to produce in a matter of days.

THE COURT:  So I understand the need to proceed with care.  And it seems to me that what they're asking for is not personal identifying information but rather just log-in -- I guess the metadata of when students are logging in and off -- on and off.  Excuse me.

MS. FLUMENBAUM:  Sure.  But that's what that IP information might be, personal.  And also they're asking us to redact a ton of information that likely appears in this dataset.  That would take a significant amount of time --

THE COURT:  But you don't know what information is on the dataset.

MS. FLUMENBAUM:  I don't know.  I don't know.

THE COURT:  How much time do you think you need to get your arms around what type of data exists and how easy would it be to just produce what they're asking for, which is just the log-in information?  Which, by the way, for the

record, no one disputes is relevant.  It's just that you're trying to figure out -- you're trying to comply with the People's Republic of China's regulations, and I get that; I understand that.

But at the same time we can't hold this case in abeyance for what could be a year-long review.

MS. FLUMENBAUM:  Understood.

Sitting here today I am not exactly sure how much -- how that review would take.  We could check in with you in 30 days to give you an assessment of how it's going, if that works for Your Honor.

THE COURT:  Okay.  Here's what I'll do -- because I do think this is somewhat different and I don't think I can say, you know, 30 days produce everything.  But I also don't want to wait for the Chinese government to decide, okay, now we're ready to release this information.

So I'm going to give you 90 days to produce the information.  That's an order that you can take back.  If for whatever reason there's an issue either with the redaction or with the type of information or there's something else you want to bring to my attention, bring it to me as soon as you find out.

MS. FLUMENBAUM:  Understood, Your Honor.

THE COURT:  Okay.

Then, next we are now having to deal with

disclosure of plaintiff's confidential witness.

So you raised that issue.

MR. FUMERTON:  We did, Your Honor.  Thank you.

Your Honor, plaintiff's survived a motion to dismiss on the strength of these confidential witnesses. They don't dispute that.

Judge Salas originally dismissed this case.  And the amended complaint, Judge Farbiarz sustained it and the -- quote, "the newly added confidential witness allegations decidedly strengthen the inference here of scienter well beyond what was before the Court in the plaintiff's previous complaint."

Your Honor, plaintiffs don't dispute in every case you have to disclose the identity of your confidential witnesses after the pleading state.  We need to litigate a case here.  We need to know who to interview, who to depose, who's substantiating these allegations.

The PSLRA, Rule 11, require counsel to do this good faith investigation before they bring the pleading.

We found out in discovery, after several meet-and-confers, plaintiffs don't even know who these witnesses are.  Not only did they never talk to them, which standing alone, violates the PSLRA Rule 11, they don't even know their identities.

Plaintiffs first told us we need time to convince

these confidential witnesses to reveal their identities. Then they said, actually, we don't know who they are. At one point -- and they're still asserting work product privilege over their identities.

You know, the identity of somebody can't be privileged. That's required to be disclosed on a privilege log under Rule 26.

This is both a discovery and procedural issue, and it's a substantive issue. If they don't know who these witnesses are, we submit this case can't go forward; these allegations need to be stricken. And if these allegations are stricken, we're back in the exact same place we were before Judge Salas, which is they can't state a claim much less a claim particularity as required by the PSLRA.

So what we ask Your Honor for is an order compelling them to disclose this information, which they say they don't have and can't get. And if they can't comply with that order, we intend to move the Court to strike the allegations and to renew the motion to motion to dismiss.

THE COURT: Mr. Van?

MR. VAN: So it's not totally clear to us what defendants are asking. We have provided them all the facts about these confidential witnesses that are in our possession, custody, and control.

THE COURT: But the identity is what they're asking

for.  Am I correct?

MR. VAN:  Right.  We don't have their identity.  We used investigators in China.  And this is typical for Chinese investigations.  And those investigators are legitimately afraid of repercussions both for themselves and for the people from whom they were gathering these facts.  And for that reason, they have been unwilling to close to us the identities of these confidential witnesses.

And that's -- so we don't have any more information to give defendants.  That seems to be the only dispute before Your Honor.  They seem to be, you know, throwing swords around in the air about, you know, bringing some motion for -- to strike -- I am not sure.  But that's not before this Court.

I think the only issue is whether or not it would be productive at all for you to order us to provide additional information about these confidential witnesses.  But we can't.  It would be a useless order.

THE COURT:  When you said there's a difference between we can't and we won't.

So the investigators, I assume these are people that you hired; right?

MR. VAN:  Yes.

THE COURT:  Not you specifically --

MR. VAN:  Our firm absolutely did.  But we don't

own them.  We don't control them.

THE COURT:  But they're your agents.  No?

MR. VAN:  Well, they -- we don't control them.  We can't force them to do any --

THE COURT:  I'll get to it in a second.

MR. VAN:  We can't -- there's no way we have of compelling them to give us this information.  So we don't control that information.  It's not in our possession, custody, or control.

We -- by the way, we would really like to know these --

THE COURT:  But I think that you're --

MR. VAN:  -- the names of these folks.

THE COURT:  But aren't you using them as a sword and a shield?  You're using them to get the information you want but then the shield to prevent defendants from getting the information need so that they can provide -- you know, do their own investigation and perhaps even depose these witnesses.

MR. VAN:  No.  In discovery, if we can't depose them, we will not be able to use them.  What they say will not be facts in this case.

So we --

THE COURT:  Should that be stricken from the complaint?

MR. VAN: Well, the complaint is a different matter, and that, again, should not be something that we've discussed at this hearing. All that's required for a complaint is that you provide sufficient information about confidential witnesses to make it likely that those individuals possess the information being ascribed to them.

Confidential witnesses are routinely used in complaints. And it's perfectly proper. There's nothing wrong with it.

Then once you're past the complaint, a motion to dismiss phase and in discovery, the question becomes, you know, whether or not they can be relied on to prove the case. And if we can't rely on them and that becomes -- you know, then I guess our proof will be that much less, but it doesn't suggest somehow that we were acting wrongly in drafting the complaint.

And, again, that's not before this Court.

I think the question that they have raised in their papers and that we've briefed is just whether we should be compelled to provide something that we cannot provide.

THE COURT: But I am not convinced that you cannot provide -- right? -- because these investigators are your agent; so they were acting at your direction when they went and got the information that you were seeking that was beneficial to you.

MR. VAN:  That's correct, Your Honor.  But what tools we have to compel them to get this to us?  We've tried.  We've called them up repeatedly.  We've begged them to give us the names.  We want them too.

But we have no legal process by which to get these names.

THE COURT:  Have you provided the names of the investigators to them?

MR. VAN:  I am not sure that that's been requested formally from us.

THE COURT:  Okay.

MR. FUMERTON:  Your Honor, if I could make two brief points.

On this question of whether the names are in their possession, custody, or control, as Your Honor pointed out, of course, they are the agents.  Plaintiffs are paying these investigators -- they've asserted work product privilege to this day over their notes.  It's a black-letter law, you cannot assert work product over a non-agent.  They're telling Your Honor by asserting work product, this is an agent.  This is within our possession, custody, or control.

Second, on Your Honor's sword-and-shield point, you're exactly right.  Counsel's saying they're not going to use these allegations.  They already have.  It was their only ticket to survive the motion to dismiss.  They survived the

motion to dismiss solely on the backs of these confidential witnesses.

Now they're telling you, "Sorry.  We don't know who they are.  We can't get them for you."

If that's the only case, the only remedy is to strike the allegations and we renew the motion to dismiss.

THE COURT:  Can you repeat the quote that you said from Judge Farbiarz's opinion?

MR. FUMERTON:  Absolutely.

"The newly added confidential witness allegations decidedly strengthen the inference here of scienter well beyond what was before the Court in the plaintiff's previous complaint."

Your Honor, we would submit that if these allegations are stricken, which is the only appropriate remedy once they can't comply with Your Honor's order, we're in the exact same place we were before Judge Salas and the case should be dismissed.  And we'd like to brief that.

THE COURT:  Okay.

Mr. Van, I am struggling here because, you know, I think defendants are right in the sense that if it's in the complaint, they should be entitled to explore that information.

But you're saying that you didn't have the ability to compel the investigator to produce this information.  I am

just not convinced by that, given that it was your firm that hired them.  So presumably, you have the ability to tell them, "Here's what I want."

MR. VAN:  Your Honor, we have told them that. We've told them that repeatedly.

We have promised in the future, you know, we won't do business with them if this continues.  One of them is already basically a defunct entity.

It's -- we have no way of getting this information. We want it.  We would like to go to these individuals and have them be deposed so we can use as proof what they've said, their damning statements.

THE COURT:  So would you consent then to strike the allegations in the complaint that makes reference to the information that you cannot provide them?

MR. VAN:  No, Your Honor.  Absolutely not.  And we haven't briefed that.  That is a -- that's a case-changing points that we should brief thoroughly if Your Honor is interested in it.

But respectfully, that's just -- we've never seen that before.  I've never seen that in any case where you go retroactively and strike allegations in a complaint because of problems in discovery.  All that's supposed to be alleged to survive a motion to dismiss are sufficient facts that make it likely the discovery will produce proof of a claim.

THE COURT:  Those allegations in the complaint have to be grounded on due diligence and facts --

MR. VAN:  They are.

THE COURT:  -- and presumably on information --

MR. VAN:  They absolutely are.

THE COURT:  -- that is going to be available to your adversary.

MR. VAN:  Your Honor, we spent tens of thousands of dollars and had these two investigative firms conduct extensive investigations in China.  This -- there should be no serious dispute that we conducted a thorough investigation here.

The only concern here is whether or not the identity of those witnesses has to be given.  And there is clear authority that you do not have to identify witnesses for the purpose of complaint.  You can have confidential witnesses.  All that has to be shown for a complaint is sufficient information to make it likely that that individual possessed or was in a place to have the information ascribed to them.

And so, you know, you can have allegations based on, you know -- that has some individual who is giving testimony.

THE COURT:  But eventually that information has to be disclosed; right?  These individuals cannot remain

|Hearing
|20-cv-04457, February 4, 2025

confidential informants, for lack of a better word, forever.

MR. VAN:  So if we had the information, we would -- we'd absolutely disclose that.

There is -- you know, they've asked a legitimate discovery request that we provide the information we have in our possession, custody, and control about those individuals, and we've given them everything that we have.  And that's the only question before the Court now.

We don't have anything more to give them.  And we don't have a means of getting that.

THE COURT:  All right.  So -- go ahead.

MR. FUMERTON:  Your Honor, just briefly, for the purposes of a pleading, you don't have to identify confidential witnesses by name.  They can't point to a single court anywhere that's held that you can survive a motion to dismiss on the backs of confidential witnesses and then turn around and say, "Sorry.  We'd really like to give you the names, but we don't even know who they are."  I mean, if you look at the opinion, it's peppered with references to this.

Judge Farbiarz also says, quote, "taken together, the confidential witnesses paint an unmistakable picture of allegedly systematic and large-scale use of bots by the company to generate fake student enrollments."  These aren't New York Times articles.  This was the only thing that separated the complaint that was sustained from the complaint

|Hearing
|20-cv-04457, February 4, 2025

that was dismissed.

We think Rule 11 is clear.  We think the PSLRA is clear.  Judge Kaplan in the Southern District of New York has said you need to talk to confidential witnesses personally if you're going to plead them in a complaint.

But Your Honor doesn't need to decide that issue.  Not we survived a motion to dismiss on the backs of confidential witnesses and they don't know who they are.

We respect plaintiff's counsel.  We're not saying he's not being forthright with the Court.

The only remedy is to strike those allegations.  And if we strike those allegations, we're back in the same place we were before Judge Salas, and this case should be dismissed.

We completely agree this is a game-changer.  We would like to brief it.

But for now, we'd like a court order that this has to be produced, and if they can't comply with it, we intend to move to strike the allegations.

THE COURT:  Here's what I'm going to do then, and I think this changes my prior decisions as well.

It seems to me that this is a threshold issue because if defendant is right that Judge Farbiarz's decision was based on relying on confidential informants who now cannot be identified and the prior complaint was dismissed,

|Hearing
|20-cv-04457, February 4, 2025

then I think we may need to re-examine that.

So I'm going to give you the opportunity to convince me that, under the circumstances of this case, I shouldn't order your client to produce this information.

I understand your argument that you don't have it. But you have to convince me that this investigator is not somehow an agent of yours.

MR. VAN:  Your Honor, we don't understand what you'd be asking us to do.  I don't know what I would do with that order beyond what we've done already.  We've done everything we can to get that information.

So I'm just -- I am not sure what we would do with that order.  We have given them all the information in our possession, custody, or control.  We would not be able to comply.

And I'm -- we desperately want to comply.  It is in our interests to get this information, but we can't because these investigators who we do not own, do not control -- refuse to give them to us.

THE COURT:  So what you're saying is that no matter what I ask you to brief, you will not be able to provide any more information?

MR. VAN:  Yes.  I can't think of way to get it.  We can't go into China and compel them.

THE COURT:  Okay.  That's fair.

|Hearing
|20-cv-04457, February 4, 2025

So here's what we're going do, then --

MR. VAN:  Well, so, but my colleague's thinking of a subpoena.

THE COURT:  The subpoena to a foreign country, we know that that's going to go through the Hague Convention and there's going to be -- you're going to be in even a worse position than you are now with respect to having the PRC review information.  That's going to take even longer.

So here's the bottom line.  I'm hearing that you cannot produce any more information about the confidential witnesses.  So I am going to authorize the defendants to file a motion to strike.  I am going to hold today's decision in abeyance pending a decision on the motion to strike.

Is there anything else that we need to discuss from either side?

MR. FUMERTON:  No.  Thank you, Your Honor.

THE COURT:  From plaintiff's side, anything else we need to discuss?

MR. VAN:  Well, Your Honor, I am not sure why the discovery shouldn't proceed as you've outlined.  It -- I -- but I understand the Court's holding.

THE COURT:  Because this could be a game-changer from what I'm hearing.  I mean, I heard the excerpt of Judge Farbiarz's decided.  You haven't told me that that's inaccurate.

|Hearing
|20-cv-04457, February 4, 2025

If the reason why the complaint survived the motion to dismiss because of these confidential witnesses who are not available and not identifiable, I think in fairness to the defendants, they should be able to move to strike that information.  If it's stricken, then I think Judge Farbiarz will have to reconsider whether or not the complaint should survive the motion to dismiss.

MR. VAN:  Well, I think our preference would be that any such motion be brought before Judge Farbiarz.

THE COURT:  It will be.

MR. VAN:  Okay.

THE COURT:  Yeah.

So anything else?

MR. VAN:  Is there a deadline for that motion to be brought?

THE COURT:  How much time do you need?

MR. FUMERTON:  Your Honor, could we have 30 days to bring it?

THE COURT:  Sure.  That is fine.

MR. FUMERTON:  And, Your Honor, so we're clear, all discovery is stayed pending that threshold motion.

THE COURT:  Yes.

MR. FUMERTON:  Thank you, Your Honor.

THE COURT:  Anything else, Mr. Van?

MR. VAN:  No, Your Honor.

|Hearing
|20-cv-04457, February 4, 2025

THE COURT:  All right.  Thank you.  This matter's adjourned.

(Conclusion of proceedings)

|Hearing
|20-cv-04457, February 4, 2025
|Certification

Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 51 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

s/ *Sara L. Kern*                                    10th of February, 2025
_____    _____
Signature of Approved Transcriber                        Date


Sara L. Kern, CET**D-338
King Transcription Services, LLC
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080