## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YANG RENBIN, ROBERT ANGELINE, COREY HAYS, AND ALEXANDRE TAZI, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:20-CV-04457 (MEF) (JRA) |
| Plaintiffs, | |
| v. | |
| GSX TECHEDU INC., LARRY XIANGDONG CHEN, NAN SHEN, XIN FAN, YIMING HU, MING LIAO, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES, INC., BARCLAYS CAPITAL, INC., BOFA SECURITIES, INC., CLSA LIMITED, AND GOLDMAN SACHS (ASIA) L.L.C., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

        A.      Procedural History of the Litigation ...................................................... 3

        B.      Summary of Key Aspects of the Proposed Settlement ........................... 5

                1.      Relief to Settlement Class Members and Release of Claims .................... 5

                2.      Notice and Settlement Administration ......................................... 5

                3.      Papers in Support of the Settlement, Award of Lead Counsel Fees and
                        Expenses, and Plaintiffs' Compensatory Award ....................................... 6

                4.      Objections .................................................................. 6

                5.      Requests for Exclusion ..................................................... 6

                6.      Termination of the Settlement .............................................. 7

                7.      No Admission of Liability ................................................. 7

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............. 7

        A.      The Third Circuit Favors Settlement ................................................ 7

        B.      Plaintiffs and Their Counsel Have Zealously Represented the Class (Rule
                23(e)(2)(A)) ........................................................................ 9

        C.      The Settlement Is the Product of Good Faith, Informed, and Arm's-Length
                Negotiations Between Experienced Counsel (Rule 23(e)(2)(B)) ........................... 9

        D.      The Settlement Provides Fair, Reasonable and Adequate Relief to the Class (Rule
                23(e)(2)(C)) ...................................................................... 10

                1.      The *Girsh* Factors Demonstrate that the Costs, Risks, and Delay of Trial
                        Favor Approval (Rule 23I(2)(C)(I)) ....................................... 10

                        a. Complexity, Length, and Duration of the Litigation ......................... 11

                        b. Reaction of the Class to the Settlement .................................. 13

                        c. Stage of the Proceedings ................................................ 13

                        d. Risk of Establishing Liability and Damages .......................... 14

- ii -

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

e. Risk of Maintaining a Certified Class Through Trial ........................... 15

f. Ability of Defendant to Withstand a Greater Judgement ..................... 16

g. Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation....................................... 16

2.   The Proposed Method of Distributing Relief to Settlement Class Members Is Effective and Equitable (Rule 23(e)(2)(C)(ii)) ..................................... 17

3.   The Terms of Any Proposed Award of Attorneys' Fees Are Disclosed and Reasonable (Rule 23(e)(2)(C)(iii)) ........................................................... 18

4.   The Parties Have Entered into a Side Agreement Which Has Been Disclosed and Is Also Fair, Reasonable, and Adequate (Rule 23(e)(2)(C)(iv)) ..................................................................................... 18

IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ........................................... 19

A.   Numerosity.......................................................................................... 20

B.   Commonality........................................................................................ 20

C.   Typicality............................................................................................. 21

D.   Adequacy ............................................................................................. 22

1.   Adequacy of Proposed Class Representatives ........................................... 22

2.   Adequacy of Proposed Class Counsel ....................................................... 22

E.   Predominance and Superiority.............................................................. 23

F.   Predominance--Reliance and Market Efficiency .................................. 24

V.   THE PROPOSED NOTICE PLAN SATISFIES RULE 23(C)(2)(B) ............................. 27

VI.   THE PROPOSED SCHEDULE ............................................................................. 30

VII.   CONCLUSION.................................................................................................... 30

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Alves v. Main*,
   2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ..................9

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................19, 22, 23

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)........................................................................................................25

*Bing Li v. Aeterna Zentaris, Inc.*,
   324 F.R.D. 331 (D.N.J. 2018)........................................................................................20

*Bredbenner v. Liberty Travel, Inc.*,
   2011 WL 1344745 (D.N.J. Apr. 8, 2011) ......................................................................10

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ........................................................................25, 26, 27

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)........................................................................................7, 8

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)........................................................................................................29

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)................................................................................. *passim*

*Hayes v. Gross*,
   982 F.2d 104 (3d Cir. 1992)...........................................................................................26

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..............................................................19

*Huffman v. Prudential Ins. Co. of America*,
   2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ..................................................................13

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)...........................................................................15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)..........................................................................................24

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*In re Celgene Corp. Sec. Litig.*,
2020 WL 8870665 (D.N.J. Nov. 29, 2020) .......................................................20, 21

*In re CIGNA Corp.*,
2007 WL 2071898 (E.D. Pa. Jul. 13, 2007).......................................................10, 15

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ..............................................................................17

*In re DVI, Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ....................20

*In re DVI, Inc. Sec. Litig.*,
639 F.3d 623 (3d Cir. 2011), *abrogated on other grounds by Amgen*, 568 U.S....................25

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................................21

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).................................................................................15

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012)......................................................................................12

*In re JPMorgan Chase & Co. Sec. Litig.*,
2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015)........................................................25

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004) ...........................................................................14

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
2013 WL 396117 (D.N.J. Jan. 30, 2013) ..................................................................25

*In re NFL Players Concussion Injury Litig.*,
775 F.3d 570 (3d Cir. 2014).................................................................................8, 19

*In re NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016)..........................................................................15, 16, 21

*In re NIO, Inc. Sec. Litig.*,
2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023)............................................................27

*In re: Ocean Power Techs., Inc., Sec. Litig.*,
2016 WL 7638464 (D.N.J. June 7, 2016) .................................................................17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)......................................................................................29

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  2008 WL 9447623 (D.N.J. Dec. 9, 2008) ...............................................................11

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ................................................................................22

*In re Schering-Plough/Merck Merger Litig.*,
  2010 WL 1257722 (D.N.J. Mar. 26, 2010) ..............................................................9

*In re Viropharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ......................................................10, 15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...................................................................................9

*Jones v. Commerce Bancorp, Inc.*,
  No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) .................................8

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) ..........................................................................25

*Louisiana Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  2017 WL 3149424 (D. Vt. July 21, 2017) .............................................................21

*Milliron v. T-Mobile USA, Inc.*,
  2009 WL 3345762 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009),
  *aff'd*, 423 F. App'x 131 (3d Cir. 2011) ................................................................18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................28, 29

*Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ............................................................15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .............................................................................................24

*Shapiro v. All. MMA, Inc.*,
  2018 WL 3158812 (D.N.J. June 28, 2018) ............................................................22

*Singleton v. First Student Mgmt. LLC*,
  2014 WL 3865853 (D.N.J. Aug. 6, 2014) .............................................................11

*Vinh Nguyen v. Radient Pharms. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) .........................................................................26

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
  775 F. App'x 51 (3d Cir. 2019) ............................................................................20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ..........................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...........................................................................................20

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004) ....................23

*Yaeger v. Subaru of Am., Inc.*,
   2016 U.S. Dist. LEXIS 117193 (D.N.J. Aug. 31, 2016).........................................14

**Statutes**

15 U.S.C. § 78u-4 ................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................... *passim*

**Other Authorities**

7 Conte & Newberg, *Newberg on Class Actions* §22.91 (4th ed. 2002) ........................8

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, fig. 22 (NERA Jan. 23, 2024)........................17

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986)..........................................................................................................23

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Lead Plaintiff Yang Renbin and Additional Plaintiffs Robert Angeline, Corey Hays, and Alexandre Tazi (collectively, "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this memorandum of law in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated June 5, 2025 (the "Stipulation")[1]; (ii) preliminary certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; (iv) a date for a final settlement fairness hearing (the "Settlement Hearing") and deadlines for the mailing and publication of the Notice, for Settlement Class Member objections and exclusion requests, for the filing of Plaintiffs' motion for Final Approval of the Settlement, and for the filing of Lead Counsel's application for an award of attorneys' fees and payment of Litigation Expenses and compensatory awards to Plaintiffs.

## I.    PRELIMINARY STATEMENT

Plaintiffs have achieved a very favorable resolution of this litigation.  The proposed Settlement will resolve all claims against Defendants in exchange for a sizable cash payment of $9,500,000 (the "Settlement Amount") for the benefit of the Settlement Class.

This securities class action arises out of allegedly false and misleading statements and omissions by Defendants in connection with GSX's business and financial operations.  Plaintiffs allege that as the truth was revealed through a series of public disclosures, the price of GSX stock fell substantially, causing significant harm to Plaintiffs and the Class.

By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and Defendants' defenses.  In particular, prior to

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Austin P. Van ("Van Declaration"), which is filed concurrently.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

reaching the Settlement nearly five years after this Action was initially filed, Lead Counsel: (i) conducted a comprehensive legal and factual investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Defendant GSX's filings with the U.S. Securities and Exchange Commission ("SEC"), public reports concerning GSX, and transcripts of GSX's investor calls; researching case law concerning the elements of the claims asserted, reviewing documents produced by third parties; interviews with several former employees and other potential witnesses with relevant information; and consultation with damages and accounting experts; (ii) drafted each of: the Amended Class Action Complaint ("AC") and Second Amended Class Action Complaint ("SAC"), to address the deficiencies in the AC identified by the Court when it granted Defendants' motion to dismiss the AC; (iii) briefed Defendants' motions to dismiss the AC and SAC; (iv) in large part successfully opposed Defendants' motions to dismiss; (v) drafted and exchanged extensive mediation statements containing detailed analyses of the strengths, risks, and potential issues in the litigation; (vi) participated in a full-day mediation sessions before mediator David Murphy of Phillips ADR and several post-mediation discussions through the mediator; (vii) engaged in negotiations regarding the terms of the proposed Settlement; (viii) prepared the initial draft of the Stipulation and supporting documents; and (ix) worked with Plaintiffs' damages experts to craft the Plan of Allocation. The Settlement is the result of arm's length negotiations conducted by informed and experienced counsel, in conjunction with a well-respected mediator. As discussed in greater detail below, Plaintiffs and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative class. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement. Pursuant to the terms of the Stipulation and Federal Rule of Civil Procedure ("Rule") 23(c)(2)(B)(v), all members of the Class will have an opportunity to opt out or object.

At this first stage of the settlement approval process, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e).  As set forth below, the Settlement easily satisfies the relevant standard because it is a fair, reasonable, and adequate resolution for the Class.

In addition, pursuant to the Stipulation, each Class Member will be treated equitably because each Class Member that properly submits a valid Proof of Claim form will receive a pro rata share of the monetary relief based on the terms of the Plan of Allocation.

Plaintiffs seek preliminary approval so that notice may be disseminated to the Class and a Final Approval Hearing and other Settlement-related dates may be scheduled.  At the Final Approval Hearing, the Court will make a final determination as to (i) whether the Settlement is fair, reasonable, and adequate as a whole; (ii) whether the Plan of Allocation should be approved; and (iii) a proposed award of attorneys' fees and expenses and a proposed amount to be awarded to Plaintiffs, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation and work on behalf of the Class.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.  Procedural History of the Litigation

On April 17, 2020, the initial class action complaint was filed in this Court.  ECF No. 1. On August 6, 2020, the Court appointed Yang Renbin as Lead Plaintiff and approved Pomerantz LLP as Lead Counsel in the Action.  ECF No. 9.

Plaintiffs filed their Amended Class Action Complaint on November 2, 2020 (ECF No. 22), and on April 30, 2021, the Parties filed their Motion to Dismiss briefing (ECF Nos. 67, 68, 70), and on the same day, the Parties filed a Stipulation and Order of Voluntary Partial Dismissal (ECF No. 69), which the Court granted on May 4, 2021 (ECF No. 73), dismissing certain counts and Defendants.  On February 7, 2022, the Parties filed updated Motion to Dismiss briefing (ECF

Nos. 82-84), and on February 24, 2023, the Court issued an Opinion and Order granting Defendants' motion to dismiss without prejudice and directing Plaintiffs to file an amended complaint (ECF Nos. 95-96). Plaintiffs filed their Second Amended Complaint on April 25, 2023. ECF No. 97. Defendants filed a motion to dismiss on June 9, 2023 (ECF No. 105), Plaintiffs filed an opposition on July 24, 2023 (ECF No. 108), and Defendants filed a reply in further support of the motion to dismiss (ECF No. 109) on August 23, 2023. On June 25, 2024, the Court issued an Opinion and Order denying the motion to dismiss, except as to certain statements in Part III.C, which it granted. ECF No. 112. On August 9, 2024, Defendants filed an answer to Plaintiffs' Second Amended Complaint. ECF No. 120.

After the Court denied in part the motion to dismiss, the Parties explored the possibility of a settlement and retained an experienced mediator to assist them, David Murphy of Phillips ADR. Van Declaration, ¶ 25. In advance of a formal mediation session, the Parties exchanged detailed mediation statements and material. *Id.* A mediation session was held on November 26, 2024, however a settlement was not reached at that time. *Id.* After numerous rounds of meeting and conferring regarding discovery and bringing to the Court several discovery disputes, the Parties agreed to renew settlement discussions in an effort to reach a negotiated resolution. *Id.* Following the exchange of additional mediation material, a formal mediation session with mediator David Murphy was held on April 3, 2025. *Id.* On April 22, 2025, the mediator made a formal mediator's proposal recommending that the Parties agree to settle the case for $9,500,000. *Id.* On April 29, 2025, the Parties accepted the mediator's proposal and began negotiating this Stipulation. *Id.* On June 5, 2025, the Parties executed the Stipulation, setting forth the terms of the agreement in principle. *Id.*

On April 30, 2025, the Parties informed the Court via a Joint Status Update and Motion for Stay (ECF No. 148) that they had reached an agreement resolving the matter in principle. Judge

Almonte then stayed all deadlines and proceedings in the case for 30 days (ECF No. 149) and

scheduled a status conference for May 22, 2025 (ECF No. 152).

### B.  Summary of Key Aspects of the Proposed Settlement

#### 1.      Relief to Settlement Class Members and Release of Claims

Defendants have agreed to settle the Litigation for $9,500,000, as described more fully in

the Stipulation, in return for which Released Plaintiffs' Claims (as defined in the Stipulation)

against Defendants and other Released Defendant Parties will be forever dismissed, barred, and

released.  Van Declaration, ¶ 27.

#### 2.      Notice and Settlement Administration

As explained below and set forth in the proposed Preliminary Approval Order, within 15

business days of the Court's entry of Preliminary Approval, the proposed Notice and Claim Form,

substantially in the forms set forth in Exhibits A-1 and A-2 to the Stipulation, will be mailed to

each Settlement Class Member identified by records maintained by GSX's transfer agent, as well

as to institutional nominees that usually maintain custodial accounts.  A Summary Notice will also

be transmitted over the *PR Newswire*.  Van Declaration, ¶ 28.

The Notice describes in plain English the terms of the Settlement, the considerations that

led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of

Allocation for the distribution of the proceeds of the Settlement, and the maximum attorneys' fees

and Litigation Expenses that may be sought, including the proposed compensatory award to

Plaintiffs.  Van Declaration, ¶ 29.

After competitive bidding, Lead Counsel selected JND Legal Administration ("JND" or

the "Claims Administrator") to administer the notice and claims.  Van Declaration, ¶ 30.  The

Claims Administrator is well known and experienced in administering securities fraud class action

settlements.  *Id.*

### 3.    Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Award

No later than 35 days prior to the Final Approval Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Plaintiffs' compensatory award.  Van Declaration, ¶ 31.  Those papers will explain why the Settlement should be approved, as well as Lead Counsel's efforts on behalf of the Class (including the time and rates of each attorney and paralegal).  *Id.*

No less than 7 days prior to the Final Approval Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses and request for a compensatory award to Plaintiffs.  Van Declaration, ¶ 32.

### 4.    Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so by mail or email 21 days prior to the Hearing, and must send copies of such objections to the Claims Administrator, as well as Lead Counsel and Defendants' Counsel.  Van Declaration, ¶ 33. Any Settlement Class Member who does not submit a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.  *Id.*

To ensure the legitimacy of any such objections, the Settlement Class Member must submit documents evidencing transactions in GSX Securities, as well as submit to the jurisdiction of this Court.  Van Declaration, ¶ 34.

### 5.    Requests for Exclusion

Any Settlement Class Member who wishes to be excluded must do so by written request, either by mail or email, accompanied by GSX transaction documentation, such that it is received

no later than 21 days prior to the Final Approval Hearing.  Van Declaration, ¶ 35.  The opt-out must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).  *Id.*

### 6.    Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of GSX Securities elect to opt out of the Class.  Van Declaration, ¶ 36.  The threshold amount is set forth in a separate, confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement").  Stipulation ¶ 41. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  Van Declaration, ¶ 36.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  *Id.*  The Supplemental Agreement and Stipulation are the only agreements concerning the Settlement entered into by the Parties.  *Id.*

In the event that the Settlement is not approved by the Court, or does not become final due to any appeals or Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.  *Id.*

### 7.    No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability or wrongdoing and continue to deny that they engaged in any misconduct or violated the law.  Van Declaration, ¶ 37.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.  The Third Circuit Favors Settlement

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).  "Settlement agreements are to be

- 7 -

encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Id.* This is particularly true for class actions involving complex litigation and securities matters. *See* 7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more.").

Settlement of this class action requires the Court's approval. *See* Fed. R. Civ. P. 23(e). Courts usually conduct a preliminary assessment of the settlement before directing notice, a practice the Third Circuit endorses. *See In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 582–84 (3d Cir. 2014) (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>> (A)  the class representatives and class counsel have adequately represented the class;
>> (B)  the proposal was negotiated at arm's length;
>> (C)  the relief provided for the class is adequate, taking into account:
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>> (D)  the proposal treats class members equitably relative to each other.

- 8 -
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**B.  Plaintiffs and Their Counsel Have Zealously Represented the Class (Rule 23(e)(2)(A))**

Courts recognize that, as here, skilled counsel's well-informed judgment that a settlement is in the best interests of the Class is entitled to considerable weight. *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).

As detailed in Section II *supra*, Plaintiffs and Lead Counsel have more than adequately represented the Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this Litigation on behalf of the Class, including, among other things, scouring GSX's SEC filings, earnings calls, analyst reports, and other industry reports, retaining multiple investigators to interview former GSX employees with knowledge of facts relevant to Plaintiffs' claims, drafting and filing two amended complaints, opposing two motions to dismiss filed by Defendants, and engaging in extensive settlement negotiations and mediations assisted by a well-respected mediator.  Van Declaration, ¶ 38.  Plaintiffs have been active and informed participants in the litigation by regularly communicating with Lead Counsel, evaluating the Settlement Class's and Defendants' best arguments concerning liability and damages, consulting with Lead Counsel concerning the settlement negotiations, and approving the terms of the Settlement.  *Id.* Accordingly, "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004); *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26. 2010).

**C.  The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations Between Experienced Counsel (Rule 23(e)(2)(B))**

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

When a settlement results from arm's-length negotiations, the Court "affords considerable weight to the views of experienced counsel regarding the merits of the settlement." *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016).

A mediator's direct participation further ensures that negotiations were non-collusive and conducted at arm's-length. *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *In re CIGNA Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. Jul. 13, 2007) (approving settlement where it was "clear that negotiations for the settlement occurred at arm's length, as the parties were assisted" by a mediator).

The Settlement was reached through arm's-length negotiation, which included two all-day mediations before the well-respected David Murphy, separated by months of hard-fought litigation. Van Declaration, ¶ 41. The negotiations, though collegial, were adversarial. *Id.* After the second mediation, the mediator made a formal mediator's proposal recommending that the Parties agree to settle the case for $9,500,000, which the Parties accepted. *Id.*

Lead Counsel Pomerantz are highly experienced in securities class actions and led the negotiations. Van Declaration, ¶ 42.

### D. The Settlement Provides Fair, Reasonable and Adequate Relief to the Class (Rule 23(e)(2)(C))

#### 1. The *Girsh* Factors Demonstrate that the Costs, Risks, and Delay of Trial Favor Approval (Rule 23I(2)(C)(I))

When determining whether to grant final approval of class action settlements, courts in this Circuit consider the *Girsh* factors: "(1) complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of

maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). The *Girsh* final approval factors guide a court's preliminary assessments of class action settlements. *Id.*

### a.    Complexity, Length, and Duration of the Litigation

The complexity, expense, and likely duration of the litigation supports approval of the Settlement. "Federal securities class actions by definition involve complicated issues of law and fact." *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008). Securities class actions are notoriously complex and expensive to litigate because they require extensive investigations, discovery, and the retention of experts to opine on several topics such as market efficiency, loss causation, and damages. Van Declaration, ¶ 43.

This case was filed over five years ago and undoubtedly faces many risks. Van Declaration, ¶ 44. If the Parties did not agree to settle, Plaintiffs would initially face the risks associated with Defendants' pending motion to strike certain portions of the Second Amended Complaint, and Defendants' potential renewed motions to dismiss. *Id.* If Plaintiffs prevailed in defeating Defendants' motion to strike, Plaintiffs would resume the difficult, potentially years-long task of obtaining discovery from a foreign entity based in China. *Id.* In addition, most of the depositions would take place in a foreign language, introducing both additional expenses and ambiguity. *Id.* Plaintiffs would also potentially have to prove their claims without discovery from third parties in China, including brushers and employees who have since left GSX—the third parties most likely to have evidence of Defendants' wrongdoing. *Id.* Moreover, it is likely that many, if not most, of the relevant employees have left GSX in the past five years. *Id.*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs might not prove their claims. Van Declaration, ¶ 45. Defendants suggest that discovery will ultimately not support Plaintiffs' claims, pointing to the SEC's ultimate decision not to pursue claims against GSX and the Department of Justice's indictment of one of the firms that wrote negative articles about GSX. *Id.*

Plaintiffs would also have to survive Defendants' motion for summary judgment, prevail at trial, and defend their victory on appeal. Van Declaration, ¶ 46. That the documents and witnesses' testimony would all be in Chinese means the parties would have numerous disputes over translation. *Id.* Translation would introduce uncertainty, create appellate issues, and substantially lengthen the trial. *Id.* Similarly, the jury is unlikely to be familiar with the Chinese tutoring industry or the use of bots in China, making its verdict even less predictable. *Id.* These risks and costs support approval. *Id.*; *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class.").

The recovery is fair, reasonable, and adequate considering the risks of continued litigation, which would require Plaintiffs to prove (and defeat Defendants' counter-arguments regarding) falsity, materiality, scienter, loss causation, and damages at trial. Van Declaration, ¶ 47; *see Girsh*, 521 F.2d at 157 (risks of establishing liability and damages are factors that can support settlement approval). For example, Defendants have maintained that their statements with respect to GSX's business and financial operations were not false and misleading because Plaintiffs cannot prove Defendants inflated student enrollment data or revenue. Van Declaration, ¶ 47. Defendants have also argued that, even if their statements were false or misleading, Plaintiffs cannot prove the elements of scienter, loss causation, or damages. *Id.*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Taking into account nearly five years of litigation, the risks and uncertainties of continued litigation, and the significant amount of the recovery, the Settlement here is certainly reasonable and should be preliminarily approved.  Van Declaration, ¶ 48; *see Girsh*, 521 F.2d at 157.  Indeed, given the complexity of this case, the sophisticated Defendants involved, and the uncertain delay of continued litigation, the $9,500,000.00 Settlement is an outstanding result.  Van Declaration, ¶ 48.  When analyzing the risks of establishing liability and damages at trial, the court should "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action."  *Id.*; *Huffman v. Prudential Ins. Co. of America*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019).  As such, the Court should find that the relief provided under the Settlement is adequate, given the complexity of the case and the risks.  Van Declaration, ¶ 48.

### b.    Reaction of the Class to the Settlement

Because notice has not issued, the second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Class Members have been given notice of the Settlement and have had an opportunity to be heard.  Van Declaration, ¶ 49.

### c.    Stage of the Proceedings

This Action has progressed to the stage where Plaintiffs are thoroughly aware of the strengths and weaknesses of their claims.  Van Declaration, ¶ 50.  Plaintiffs investigated the underlying claims, drafted multiple amended complaints, including a viable second amended complaint, have briefed oppositions to two motions to dismiss by Defendants, and consulted with experts.  *Id.*  The parties also engaged in an extensive meet and confer process regarding the scope of, and constraints on, Defendants' production of discovery, including discovery from China.  *Id.*  Although discovery was not completed, "class counsel were sufficiently well prepared and

informed enough to engage in robust settlement negotiations," which is all the third *Girsh* factor requires. *Id.*; *Yaeger v. Subaru of Am., Inc.*, 2016 U.S. Dist. LEXIS 117193, at *28 (D.N.J. Aug. 31, 2016).

### d.    Risk of Establishing Liability and Damages

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  Van Declaration, ¶ 51; *Yaeger* at *29 (quotation omitted). Here, there were substantial risks to proving both liability and damages which, if litigated, threatened to deprive the Class of any recovery.  Van Declaration, ¶ 51.

Specifically, Defendants made various arguments during mediation regarding falsity and scienter, which might be accepted by the Court in ruling on Defendants' future motion for summary judgement, depriving the Class of any recovery.  *Id.*; *see In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (finding settlement reasonable, in part, because proving scienter "would have been very difficult").

Further, with respect to loss causation and damages, at summary judgment and trial, Defendants' experts would have argued against loss causation and damages with respect to each of the disclosure dates at issue, in an effort to truncate the Class Period or eliminate it altogether. Van Declaration, ¶ 52.  The estimated damages for this case ranges from $10.4 million to $138.5 million under the two loss causation dates sustained by the Court, but there is no guarantee that losses would ultimately be proven for those dates.[2]  *Id.*; *see* Van Declaration, Exhibit 3-1.  Given

---

[2] The Court's opinion left open the possibility of two other loss causation dates, which it did not specifically rule on.  Op. at 55 n.47 ("the Plaintiffs press certain arguments as to . . . two additional corrective disclosures.  Given the Court's resolution of the other theories of . . . loss causation in the Plaintiffs' favor, those are irrelevant for now and are not taken up.").  Including these dates is highly speculative, but under such an analysis (*see* Van Declaration, Exhibit 3-2), the estimated damages could reach $974.7 million.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

that the testimony of the parties' experts on loss causation and damages would vary substantially, these crucial elements would have been resolved at trial, in large part, through a "battle of experts." Van Declaration, ¶ 53; *see In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426–27 (S.D.N.Y. 2001). Each expert's testimony would rely on complex and highly technical economic arguments. Van Declaration, ¶ 53. Such a battle increases the expense as well as the risk of advancing the litigation toward a positive resolution for Plaintiffs and the Class. Van Declaration, ¶ 53. Plaintiffs believe their case is strong but acknowledge, as they must, that there are risks to litigation and ultimate recovery. *Id.*; *see Viropharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in proving damages"); *Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *6 (D.N.J. July 29, 2013) (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"); *CIGNA*, 2007 WL 2071898, at *3 (approving settlement in "complex" case that "could have depended on a jury's assessment of the credibility of various witnesses called by both sides" and in which there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) ("[T]he relationship between the price decline and defendants' conduct would have been hotly contested, and the outcome of this dispute is difficult to predict."). The Settlement provides a guaranteed result without protracted delay and without the risk of receiving no recovery at all. Van Declaration, ¶ 53.

### e.    Risk of Maintaining a Certified Class Through Trial

The Third Circuit instructs that the sixth *Girsh* factor warrants "only minimal consideration." Van Declaration, ¶ 54; *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016). In any event, this factor also favors approval. Van Declaration, ¶ 54. Defendants have reserved the right to oppose class certification in the absence of a settlement, and

Plaintiffs expect that they would do so by, among other things, challenging market efficiency and attempting to prove the absence of price impact. *Id.* There could be no assurance that class certification would be granted, or that a certified class could be maintained through trial. *Id.*

### f.    Ability of Defendant to Withstand a Greater Judgement

This *Girsh* factor is neutral because Plaintiffs did not consider any "financial instability as justification for the settlement's size." *See In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. As the Third Circuit has noted, "'in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the . . . settlement." *Id.* (quotation and citation omitted).

### g.    Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation

The eighth and ninth *Girsh* factors ask whether the settlement represents a good value for a weak case or a poor value for a strong case. *Id.*, 821 F.3d at 440 (quotation and citation omitted). These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* When assessing the eighth and ninth *Girsh* factors, courts "must take seriously the litigation risks inherent in pressing forward with the case." *Id.*

Here, the eighth and ninth *Girsh* factors favor approval. As set forth above, the guaranteed recovery of $9.5 million is a significant win for the class given, among other things, the uncertainty of the case moving forward, the pending motion to strike, discovery hurdles, and potential future motions for summary judgement and class certification. Van Declaration, ¶ 56. The Settlement Amount represents approximately 6.86% of the $138.5 million total maximum damages

potentially available in this Action under the two loss causation dates sustained by the Court.[3]  *Id.*;
s*ee* Van Declaration, Exhibit 3-1.  If Defendants' arguments against these loss causation dates
were accepted by the trier of fact, the maximum recoverable damages could be drastically reduced
or eliminated.  Van Declaration, ¶ 56.  A recovery of 6.86% significantly exceeds the 1.8% median
settlement as a percentage of investor losses in securities class actions settled between 2021 and
2023.  *Id.*; *see* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action
Litigation: 2023 Full-Year Review* at 26, fig. 22 (NERA Jan. 23, 2024).

> **2.    The Proposed Method of Distributing Relief to Settlement Class
> Members Is Effective and Equitable (Rule 23(e)(2)(C)(ii))**

As discussed in Section V below, the Settlement calls for all Class Members to be
effectively apprised of the Settlement, the reasons for settling, and the risks and potential benefits
of continued litigation.  Van Declaration, ¶ 57.  The Long Notice also informs Class Members how
the net proceeds of the Settlement will be equitably and effectively distributed among Class
Members who opt to participate in the Settlement by returning a valid claim form.  *Id.*; *see* Exhibit
A-1 at 12-15.

A plan of allocation will be approved if the proposed plan has a "reasonable, rational basis."
*In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013).   The Plan is fair,
reasonable, and adequate because it does not treat Lead Plaintiffs or any other Class Member
preferentially.  Van Declaration, ¶ 58; *see In re: Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL
7638464, at *1 (D.N.J. June 7, 2016).  The Plan, set out in the Long Notice, attached as Exhibit
A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Authorized

---

[3] While including the two other loss causation dates that the Court did not reach, Op. at 55 n.47,
would be highly speculative, under such an analysis (*see* Van Declaration, Exhibit 3-2), the
estimated maximum damages would be $974.7 million.  Under this analysis, the Settlement
Amount would represent approximately 0.97% of the total maximum damages available in this
Action.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Claimants.  Van Declaration, ¶ 58.  The Plan provides that each Class Member will receive a *pro rata* distribution pursuant to the formulas for calculating Recognized Losses.  *Id.*  Plaintiffs and all other Class Members will receive their payment pursuant to the same formula.  *Id.*

### 3.    The Terms of Any Proposed Award of Attorneys' Fees Are Disclosed and Reasonable (Rule 23(e)(2)(C)(iii))

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion, on behalf of all Plaintiffs' Counsel, for attorneys' fees and expenses. Van Declaration, ¶ 59.  The Settlement does not contemplate any specific award.  *Id.*  Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants.  *Id.*  As set forth in the Notice, Plaintiffs have disclosed that Lead Counsel will apply for an award of attorneys' fees of up to 33.3% of the Settlement Amount, as well as reimbursement in an amount not to exceed $500,000 for expenses incurred in connection with the prosecution and resolution of this Action and compensatory awards to Plaintiffs, *see* Exhibit A-1 at 2, which is typical for similar securities fraud litigations.  *Id.*; *see, e.g., Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *15 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (awarding 33% of $13.5 million settlement).

### 4.    The Parties Have Entered into a Side Agreement Which Has Been Disclosed and Is Also Fair, Reasonable, and Adequate (Rule 23(e)(2)(C)(iv))

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement.  As is standard in securities fraud class action settlements, the Parties have a supplemental agreement that provides GSX with the option to terminate the settlement if the number of GSX shares represented by Class Members who opt out of the Settlement equals or exceeds a certain threshold.  Van Declaration, ¶ 60; Stipulation ¶ 41.  As is also standard practice, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating an incentive for a small group

of class members to opt out solely to leverage the threshold to exact an individual settlement.  Van Declaration, ¶ 60.  "The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair." *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018).

## IV.    THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

This Court should preliminarily certify the proposed Class for the purposes of the Settlement.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Fed. R. Civ. P. 23).  The Court need not, at this point, conduct a rigorous analysis to make a preliminary determination whether to certify a settlement class, but should reserve this analysis for the final approval hearing.  *See In re NFL Players Concussion Injury Litig.*, 775 F.3d at 586.

Rule 23 of the Federal Rules of Civil Procedure governs class certification, requiring that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This Action readily meets Rule 23's requirements.  Van Declaration, ¶ 61.

## A. Numerosity

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). While there is no mandatory minimum, "the Third Circuit has previously held that the numerosity requirement will generally be satisfied 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40.'" *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *4 (D.N.J. Nov. 29, 2020) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

Here, the Class far exceeds forty members. Van Declaration, ¶ 62. Throughout the Class Period, GSX securities were actively traded on the New York Stock Exchange. *Id.* While the exact number of Class Members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. *Id.* Therefore, Rule 23(a)(1) is satisfied.

## B. Commonality

Commonality is met where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). And "courts in this [C]ircuit . . . have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock." *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019); *see also In re DVI, Inc. Sec. Litig.*, 249 F.R.D. 196, 200 (E.D. Pa. 2008), *aff'd,* 639 F.3d 623 (3d Cir. 2011) ("Courts in this Circuit also have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its

stock"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *13
(S.D.N.Y. July 27, 2007) (remarking that in a securities class action the commonality requirement
"is applied permissively").

As in most securities class actions, the dispute in this Action focused on common issues
relating to alleged violations of federal securities laws, misrepresentations and omissions of
material fact made to the market as a whole, and scienter.  Van Declaration, ¶ 63; *Louisiana Mun.
Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2017 WL 3149424, at *5 (D. Vt.
July 21, 2017).  All Class members were injured because of common misrepresentations and
omissions, and all assert the same legal claims.  Van Declaration, ¶ 63.

## C.  Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties
are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Third Circuit has
"set a 'low threshold' for typicality" so that "'[e]ven relatively pronounced factual differences will
generally not preclude a finding of typicality where there is a strong similarity of legal theories' or
where the claim arises from the same practice or course of conduct.'"  *In re NFL Players
Concussion Injury Litig.*, 821 F.3d at 428.

Plaintiffs' claims here are typical because both Plaintiffs and Class Members were injured
by the same common course of conduct by Defendants—misrepresentations and omissions
regarding GSX's business and financial operations—and all assert violations of the same statutes
based upon the same nucleus of facts.  Van Declaration, ¶ 64; *see Pope*, 2021 WL 926611, at *7
(finding typicality "easily satisfied" where, like here, "Lead Plaintiff is asserting the same claims—
both in terms of the legal theory advanced and the factual circumstances underlying the theory—
as the class.");  *see also Celgene*, 2020 WL 8870665, at *4.  Nor is any Plaintiff "subject to a
defense that is both inapplicable to many members of the class and likely to become a major focus

of the litigation."  Van Declaration, ¶ 64; *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

### D.  Adequacy

"Determining adequacy involves a two-part inquiry:  (1) 'the named plaintiff's interests must be sufficiently aligned with the interests of the absentees;' and (2) 'the plaintiff's counsel must be qualified to represent the class.'"  *Pope*, 2021 WL 926611, at *7.  Both elements are easily satisfied here.

#### 1.        Adequacy of Proposed Class Representatives

As discussed above, Plaintiffs both "possess the same interest and suffer[ed] the same injury as the class members," *Amchem*, 521 U.S. at 594–95, and have no conflicts with absent Class members.  Van Declaration, ¶ 65.  Moreover, Plaintiffs have proved their adequacy by zealously advancing the Class's interests.  *Id.*  Plaintiffs have vigorously opposed multiple motions to dismiss from Defendants and negotiated this favorable Settlement that will bring immediate, certain recovery to the Class.  *Id.*

#### 2.        Adequacy of Proposed Class Counsel

Rule 23(g) requires a court to independently assess the adequacy of proposed class counsel. Fed. R. Civ. P. 23(g).  To that end, the Court must consider the following:  (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  *Shapiro v. All. MMA, Inc.*, 2018 WL 3158812, at *5 (D.N.J. June 28, 2018).

Pomerantz has routinely served as lead counsel in securities class actions in federal courts across the country and has won substantial recoveries for classes represented by the firm in other securities class actions and complex litigation.  Van Declaration, ¶ 66; *see* ECF No. 7-3.  Moreover,

the firm is very familiar with the applicable legal issues, and has devoted considerable resources to advancing the Class's interests. Van Declaration, ¶ 66.

### E. Predominance and Superiority

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Here, Plaintiffs seek to certify a settlement class under Rule 23(b)(3). *Id.* That Rule is satisfied where a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* This Action satisfies both the predominance and superiority criteria of Rule 23(b)(3). Van Declaration, ¶ 67.

Class certification is appropriate when common questions are a significant aspect of a case and can be resolved in a single action. *Id.*; *see* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004). Here, common questions predominate because Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members. Van Declaration, ¶ 67. Damages will be calculated on a class-wide basis. *Id.* Thus, as in many securities fraud class actions, the predominance requirement is "readily met." *Id.*; *Amchem*, 521 U.S. at 625.

Factors relevant to a finding of superiority include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Many of the Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. Van Declaration, ¶ 68. No Class Member has brought a separate claim, which would likely be consolidated into this Action anyway. *Id.* And Plaintiffs foresee no difficulties in managing this Class for the purposes of settlement. *Id.*

Class actions are vastly superior to individual actions with respect to securities fraud claims. Van Declaration, ¶ 69. Without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical recourse. *Id.*; *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Thus, a class action is the superior method of adjudication. Van Declaration, ¶ 69.

Solely for the purposes of settlement, Defendants do not dispute that the Class should be certified in accordance with Rule 23(b)(3). Van Declaration, ¶ 70. The Court should preliminarily determine that class treatment is appropriate to permit notice to the Class. *Id.*

### F. Predominance--Reliance and Market Efficiency

Although a court must be mindful of manageability issues at trial, including whether reliance is satisfied, "[b]ecause settlement eliminates the need for trial, a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 232

(2d Cir. 2012).  Thus, the Court may certify a settlement class without making a finding that GSX's stock trades on an efficient market.  Van Declaration, ¶ 71.

In any event, GSX certainly traded on an efficient market.  Van Declaration, ¶ 72.  Putative class members who purchased GSX Securities are therefore entitled to a presumption of reliance based on the fraud-on-the-market doctrine recognized in *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988).  Van Declaration, ¶ 72.

GSX traded on the New York Stock Exchange ("NYSE") during the Class Period, which is one of the most well-developed securities markets in the world.  Van Declaration, ¶ 73.  "[N]o argument could be made that the [NYSE] is not an efficient market." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 183 (S.D.N.Y. 2008).  Accordingly, consistent with *Cammer* and *Basic*, "[m]ost courts to consider the issue have concluded that a stock's listing on the New York Stock Exchange is a strong indication that the market for the stock is efficient."  *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *7 (S.D.N.Y. Sept. 29, 2015).  *See also In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011) ("[T]he listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency."), *abrogated on other grounds by Amgen*, 568 U.S. at 455; *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *11 (D.N.J. Jan. 30, 2013).

In addition, the market for GSX Securities was efficient because it met the canonical factors set out in *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-86 (D.N.J. 1989).  Van Declaration, ¶ 74.  The *Cammer* factors are: (1) large weekly trading volume; (2) a significant number of analyst following the stock; (3) numerous market makers and arbitrageurs; (4) that the company met the market valuation requirements necessary to file a Form S-3 registration statement; and (5) a history of immediate stock price movement in reaction to unexpected corporate events.  711 F. Supp. at 1286-87.

*Cammer* **1:** High weekly trading volume indicates market efficiency because it increases the likelihood that new information will be reflected in the price of the company's securities. *Cammer*, 711 F. Supp. at 1286. GSX's stock had an average weekly turnover during the Class Period of about 40% of all GSX shares outstanding and 40% of its float, far above the 2% average that would justify a "strong presumption that the market for the security is . . . efficient." *Id.* Van Declaration, ¶ 75; Exhibit 4.

*Cammer* **2:** Analysts make markets more efficient by uncovering and publicizing information about a security. *Cammer*, 711 F. Supp. at 1286. The Third Circuit has found that coverage from five market analysts supported efficiency. *Hayes v. Gross*, 982 F.2d 104, 107 (3d Cir. 1992). At least 23 analysts followed GSX during the Class Period. Van Declaration, ¶ 76; Exhibit 5.

*Cammer* **3:** Market makers and arbitrageurs "ensure completion of the market mechanism" because they "react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F. Supp. at 1286-87. The number of market makers is not germane to the Company's stock because its stock traded on the NYSE during the Class Period. Van Declaration, ¶ 77. Stocks that trade in an auction market like the NYSE have a single designated market maker (formerly referred to as a specialist) to maintain a competitive and efficient market, as opposed to multiple market makers found on the NASDAQ market. *Id.* However, the presence of a designated market maker supports a finding of efficiency. *See Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 573 (C.D. Cal. 2012) (finding that the existence of a designated market maker satisfies *Cammer* Factor 3).

*Cammer* **4:** To be eligible to file a registration statement on SEC Form S-3, a company must (among other things) show that the average market value of its non-affiliate stock exceeded $75 million. *Cammer,* 711 F. Supp. at 1284-85. Satisfying this requirement, regardless of actual

- 26 -

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

eligibility to file an S-3, suffices for *Cammer* factor 4. *Id.* at 1287 ("[I]t is the number of shares traded and value of shares outstanding that involve the facts which imply efficiency"); *see also In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *12 & n.9 (E.D.N.Y. Aug. 8, 2023) (finding factor 4 supported efficiency even though company could not file an S-3). The public float requirement has been loosened from the time of *Cammer* (decreasing from $150 million to $75 million), but GSX vastly exceeded both levels during the Class Period with a float of $1,646,482,344.68. Van Declaration, ¶ 78; Exhibit 4.

*Cammer* **5**: Based on Plaintiffs' review of five of the days during the Class Period on which there were statistically-significant returns in GSX stock price with over 98% confidence, each of those dates were preceded by the release of GSX-specific news, indicating market efficiency. Van Declaration, ¶ 80; Exhibit 6; *Cammer*, 711 F. Supp. at 1287 ("a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price . . . is the essence of an efficient market and the foundation for the fraud on the market theory."). In any event, "Courts have rejected the idea that the fifth *Cammer* factor is necessary to establish market efficiency." *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2016 WL 4138613, at *12 (E.D. Pa. Aug. 4, 2016).

## V.    THE PROPOSED NOTICE PLAN SATISFIES RULE 23(C)(2)(B)

The Parties have negotiated the form of a Notice of Proposed Class Action Settlement (the "Notice") to be disseminated to the Class to notify them of the terms of the Settlement and of their rights in connection therewith, as well as a Summary Notice of Proposed Class Action Settlement (the "Summary Notice") to be published on a national business newswire. Van Declaration, ¶ 81. The Notice and Summary Notice have been drafted to comply with the provisions of the Private Securities Litigation Reform Act. Van Declaration, ¶ 81; *see* 15 U.S.C. § 78u-4(a)(7). The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary

Approval Order, satisfy due process, the federal rules, and the PSLRA.  Van Declaration, ¶ 81.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members

who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless

of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *See Manual for Complex

Litigation (Fourth)* § 21.312.  To satisfy due process, notice must be "reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity" to object.  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

With the Court's permission, the Claims Administrator will commence mailing the Notice

to Settlement Class Members identified by GSX's transfer agent within 15 business days of Court

entry of the Preliminary Approval Order, and mail the Notice to shareholders identified in requests

to nominees as soon thereafter as addresses are received.  Van Declaration, ¶ 82.  The Summary

Notice will be transmitted by *PR Newswire* within 14 days thereafter.  *Id.*

The proposed Notice, which the Claims Administrator will send to potential Settlement

Class Members by first class mail, describes in plain English the Settlement's terms, the

considerations that led Lead Counsel to conclude it is fair and adequate, the maximum attorneys'

fees and expenses that may be sought, the procedures for objecting to the Settlement, requesting

exclusion, or submitting a Claim Form, and how to attend the final Settlement Hearing.  Van

Declaration, ¶ 83.  The Notice provides detailed information concerning (a) the proposed

Settlement; (b) the nature, history, and progress of the Action; (c) the date of the Final Approval

Hearing; (d) the proposed Plan of Allocation; (e) the fees and expenses to be sought by Class

Counsel; (f) the rights of Class Members, including the procedures for filing a Claim Form,

requesting exclusion from the Class, or objecting to the Settlement or Plan of Allocation or request

for fees and expenses; and (g) how to contact Class Counsel, access the Court's docket, or

otherwise learn more about the Action and Settlement.  *Id.*

The proposed Notice Plan is thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Van Declaration, ¶ 84; *Mullane*, 339 U.S. at 314.

The proposed Notice also informs Class Members how to object or exclude themselves from the Settlement and clearly states that all those who do not exclude themselves from the Settlement will be bound by the Settlement and Final Judgment.  Van Declaration, ¶ 84.

Furthermore, the proposed Notice provides for the PSLRA-mandated disclosures, as it:  (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and (4) provides the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel, who will be available to answer questions from Class Members.  Van Declaration, ¶ 85; *see* 15 U.S.C. § 78u-4(a)(7).

The form and manner of providing Notice to the Class Members here satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  Van Declaration, ¶ 86.  The Notice "provide[s] all of the required information concerning the class members' right[s] and obligations under the settlement."  *Id.*; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998).

The manner of providing notice here, which includes individual notice by email or mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of Rule 23.  Van Declaration, ¶ 87.  Thus, the proposed method of notice described above satisfies due process.  *Id.*; *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## VI.    THE PROPOSED SCHEDULE

Plaintiffs propose the following procedural schedule of events in connection with the

Settlement as set forth in the Preliminary Approval Order (Exhibit A to the Stipulation):

| Event | Proposed Timing |
|---|---|
| Date for Settlement Hearing. | At least 100 days after the Court enters the Preliminary Approval Order. (Preliminary Approval Order ¶ 5) |
| Mailing of Notice and Proof of Claim and Release. | No later than 15 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 8) (the "Notice Date") |
| Publication of Summary Notice. | No later than 14 calendar days after the Notice Date (Preliminary Approval Order ¶ 11) |
| Submission deadline for requests for exclusion. | Received no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 15) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and the application for attorneys' fees and payment of expenses. | No later than 35 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Filing deadline for objections. | Received no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 18) |
| Date for Lead Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and the application for attorneys' fees and payment of expenses. | Seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Date for Claims to be Filed | Postmarked no later than 5 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 13(a)) |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily

approve the proposed Settlement and enter a preliminary approval order substantially in the form

filed with this motion.

Dated:  June 6, 2025                    Respectfully submitted,

                                        **POMERANTZ LLP**
                                        */s/ Austin P. Van*
                                        Jeremy A. Lieberman
                                        Austin P. Van
                                        600 Third Avenue, 20th Floor
                                        New York, New York 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (212) 661-8665
                                        jalieberman@pomlaw.com
                                        avan@pomlaw.com

                                        *Lead Counsel for Lead Plaintiff Yang
                                        Renbin, and Additional Plaintiffs Corey
                                        Hays and Alexandre Tazi*

                                        **THE ROSEN LAW FIRM, P.A**
                                        Laurence M. Rosen
                                        One Gateway Center, Suite 2600
                                        Newark, New Jersey 07102
                                        Telephone:  (973) 313-1887
                                        Facsimile:  (973) 833-0399
                                        Email:  lrosen@rosenlegal.com

                                        Jing Chen
                                        Jonathan Horne
                                        275 Madison Avenue, 40th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 686-1060
                                        Facsimile:  (212) 202-3827
                                        Email:  jchen@rosenlegal.com
                                        Email: jhorne@rosenlegal.com

                                        Junbo Hao
                                        **HAO LAW FIRM**
                                        **BEIJING HAO JUNBO LAW FIRM**
                                        Room 3-401 No. 2 Building,
                                        No. 1 Shuangliubei Street
                                        100024  Beijing
                                        People's Republic of China
                                        Telephone:  +86 137-1805-2888
                                        Email:  jhao@haolaw.cn

                                        *Additional Counsel for Lead Plaintiff and
                                        Additional Plaintiff Robert Angeline*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT