# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YANG RENBIN, ROBERT ANGELINE, COREY HAYS, AND ALEXANDRE TAZI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> GSX TECHEDU INC., LARRY XIANGDONG CHEN, NAN SHEN, XIN FAN, YIMING HU, MING LIAO, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES, INC., BARCLAYS CAPITAL, INC., BOFA SECURITIES, INC., CLSA LIMITED, AND GOLDMAN SACHS (ASIA) L.L.C., <br><br> Defendants. | **Case No. 2:20-CV-04457 (MEF) (JRA)** |

**DECLARATION OF LUIGGY SEGURA IN SUPPORT OF
LEAD PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Luiggy Segura, declare as follows:

1.    I am the Vice President of Securities Class Actions at JND Legal Administration ("JND"), located at 3333 New Hyde Park Rd, New Hyde Park, NY 11042. At the request of Lead Counsel, I submit this Declaration to provide the Court and the Parties to the above-captioned action (the "Action") with information regarding JND's experience and the proposed plan for notice and claims administration for the proposed settlement of the Action (the "Settlement").[1] The following statements are based on my personal knowledge and information provided to me by Lead Counsel, and, if called as a witness, I could and would testify competently thereto.

2.    JND has been retained by Lead Counsel, subject to Court approval, to act as the Claims Administrator and provide notice and claims administration services for the Settlement. JND was selected after submitting a detailed proposal in response to a request for proposal from Lead Counsel. Based on information provided by Lead Counsel, JND's proposal included proposed pricing for the engagement including per-claim fees for claim processing and the proposed costs for, among other things, printing and mailing of notices, call center services, website development and maintenance, and building and testing of the loss calculation module.

3.    JND is a nationally recognized class action administration firm. The principals of JND collectively have over 75 years of experience in the class action legal and administrative fields, and have personally overseen some of the largest securities class action settlements in the country's history, including, among many others, *In re WorldCom, Inc. Securities Litigation*, No. 1:02-cv-3288 (S.D.N.Y.) ($6.15 billion settlement), *In re Tyco International Ltd. Securities Litigation*, No. 1:02-cv-1335-PB (D.N.H.) ($3.2 billion settlement), *In re Bank of America Corp.*

---

[1] Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement in this Action (the "Stipulation" or the "Settlement Agreement.").

1

*Securities Litigation, Derivative, and ERISA Litigation*, No. 1:09-md-2058 (S.D.N.Y.) ($2.4 billion settlement), *In re Royal Ahold N.V. Securities ERISA Litigation*, No. 1:03-md-1539 (D. Md.) ($1.1 billion settlement), and *In re Initial Public Offering Securities Litigation*, No. 1:21-mc-00092 (S.D.N.Y.) ($586 million settlement). More information on JND's qualifications and experience can be found on www.jndla.com. Our firm profile is attached as Exhibit A.

**Proposed Plan for Disseminating Notice of the Settlement to the Settlement Class**

4.      Pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." As a result, the proposed plan here is to disseminate notice of the Settlement via a robust direct notice effort, supplemented by a digital notice posting, a print notice placement, and the distribution of a press release. A settlement website, toll-free telephone number, and dedicated email address will provide additional opportunities for Settlement Class Members to learn more about the proposed Settlement.

5.      The proposed plan for providing notice of the Settlement to the Settlement Class uses customary procedures that have been designed to provide direct mailed notice to investors who are potential members of the Settlement Class. The proposed Settlement Class consists of all non-excluded persons and entities that purchased or otherwise acquired American Depositary Shares ("ADSs"), evidenced by American Depositary Receipts, of GSX ("GSX Securities") from June 6, 2019 through October 20, 2020 inclusive, including those who purchased ADSs in or traceable to the Company's initial public offering on or about June 6, 2019, or GSX's secondary public offering on or about November 20, 2019, and were damaged thereby. Excluded from the

Settlement Class are (i) Defendants; (ii) members of the Immediate Families of the Individual Defendants and the directors and officers of GSX; (iii) any person who was an officer or director of GSX during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) the Company's employee retirement and benefit plan(s), if any, and their participants or beneficiaries; (vi) the legal representatives, affiliates, subsidiaries, parents, heirs, heirs apparent, beneficiaries, successors-in-interest, or assigns of any such excluded person or entity in (i)-(v), in their respective capacity as such; and (vii) any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

6.       As set forth in the Parties' Stipulation and in the proposed Preliminary Approval Order, GSX shall provide JND with lists containing the names and addresses of the holders of GSX Securities during the Class Period, in electronic searchable form, to the extent reasonably available, within ten (10) business days of the Court's preliminary approval of the Settlement. As set forth in the proposed Preliminary Approval Order, JND will mail a copy of the Notice and Claim Form, in the forms approved by the Court (together, the "Notice Packet") to all Settlement Class Members who can be identified with reasonable effort, including the persons and entities set forth in the records provided by GSX, on or before fifteen (fifteen) business days after the Court's preliminary approval of the Settlement (the "Notice Date").

7.       In addition, as in most class actions of this nature, the large majority of Settlement Class Members will be beneficial purchasers who hold their securities in "street name," i.e., the securities are purchased by banks, brokers, and other nominees ("Nominees") in the name of the Nominee on behalf of the beneficial purchaser. Accordingly, to effectuate notice to the majority of the Settlement Class, JND will mail a copy of the Notice Packet to JND's database of

approximately 4,000 Nominees.[2] These Nominees are instructed to either forward the Notice Packet to potential Settlement Class Members or provide the names, addresses and, if available, e-mail addresses of potential Settlement Class Members to JND so that we may forward the Notice Packet directly.[3] The Notice Packet mailed to Nominees will include a cover letter highlighting these requirements as well as JND's contact information for questions.

8.      Following the mailing to Nominees, JND will send reminder postcards to the Nominees in its Broker Database who do not respond to the initial mailing. The postcard will advise Nominees of their obligation to facilitate notice of the Settlement to their clients who purchased or otherwise acquired GSX Securities during the Settlement Class Period. In addition, JND will perform a personalized calling campaign to the largest Nominees to prompt them to respond to the Notice by either identifying potential Settlement Class Members or requesting Notice Packets to forward directly to their clients. JND typically makes multiple attempts to reach a person at the Nominees' offices. If JND is unable to reach the Nominee by phone, JND will send the Nominee an email reminding them to provide the names and addresses of their clients in accordance with the Notice.

9.      In addition, JND will research filings with the United States Securities and Exchange Commission ("SEC") on Form 13-F to identify additional institutions or entities that

---

[2] JND's Nominee database is continually monitored and updated as Nominees change addresses, merge, go out of business and/or come into existence.

[3] As set forth in the proposed Preliminary Approval Order and Notice, Nominees that held GSX Securities during the Settlement Class Period shall: (a) within ten (10) calendar days of receipt of the Notice, provide a list of the names and addresses of all beneficial owners to the Claims Administrator, which is ordered to send the Notice Packet promptly to such identified beneficial owners; or (b) within ten (10) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners and within ten (10) calendar days of receipt of those Notice Packets forward them to all such beneficial owners.

may have purchased or otherwise acquired GSX Securities during the Settlement Class Period. JND will also mail the Notice Packet to those institutions.

10.     JND will also submit the Notice to the Depository Trust Company ("DTC") to post on the DTC Legal Notice System ("LENS"). LENS enables DTC member banks and brokers to review the Notice and contact JND directly to obtain copies of the Notice Packet for their clients who may be potential Settlement Class Members.

11.     As requests are received, JND will mail copies of the Notice Packet to Nominees (in bulk), or directly mail the Notice Packet to potential Settlement Class Members identified by Nominees. JND will also disseminate the Notice Packet to any other persons and entities requesting them or other points of contact for potential Settlement Class Members as appropriate.

12.     Any Notice Packets that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the U.S. Postal Service or through a third-party vendor to which JND subscribes and will be re-mailed to the updated or alternative address, if available.

13.     To supplement direct mailed notice to potential Settlement Class Members, JND will cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*.  As set forth in the proposed Preliminary Approval Order, the foregoing publication/transmission will occur within fourteen (14) calendar days of the Notice Date.

14.     In coordination with Lead Counsel, JND will design and maintain a website for the Settlement, www.GSXSecuritiesSettlement.com (the "Settlement Website"). The Settlement Website will contain an overview of the Settlement, important dates, and deadlines in connection with the Settlement, including the exclusion/objection deadline and the date and time of the Final Approval Hearing, copies of the Notice, Claim Form, Summary Notice, Stipulation, Complaint,

and other documents related to the Settlement. The Settlement Website will also contain a claim filing portal for those Settlement Class Members who wish to file their Claim online, as well as provide detailed instructions for Nominees and third-party filers filing Claims electronically on behalf of a large number of clients.

15.    A toll-free telephone number, 855-779-3369, and dedicated email address, info@GSXSecuritiesSettlement.com, will also be established and staffed with customer service representatives trained to answer questions about the Settlement. As a result of its experience in administering complex class action settlements, JND has developed an expertise in anticipating the questions that class members will ask and how to most efficiently answer them, and we will leverage that experience for this Settlement. Both the toll-free telephone number and email address will be displayed on the Notice, Claim Form, Summary Notice, and on the Settlement Website.

16.    Based on JND's experience with securities class actions, we expect the direct notice effort alone to effectively notify Settlement Class Members of the proposed Settlement. The supplemental digital posting through DTC's LENS, the print placement in *Investor's Business Daily*, the distribution of a press release over *PR Newswire*, and the establishment of the case specific website, toll-free telephone number, and email will further enhance notice exposure. The proposed notice plan is designed to reach as many Settlement Class Members as possible and inform them about the Settlement and their rights and options. JND believes that the proposed notice plan provides the best method for notifying potential Settlement Class Members of the Settlement in this Action. Indeed, JND has employed virtually identical notice plans in recent securities class actions settlements, including before this Court and in this District. *See*, *e.g.*, *Davis v. Yelp*, 2023 WL 3063823, at *1 (N.D. Cal. Jan. 27, 2023) (Chen, J.); *Fleming v. Impax Laboratories, Inc.*, 2022 WL 2789496, at *5 (N.D. Cal. July 15, 2022). In JND's opinion, the

proposed notice plan provides the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, and is consistent with other similar court-approved securities class action notice programs.

**Information on Settlement Administration, Estimated Settlement Class Size and Number of Potential Claims**

17.    In developing the proposed notice plan for the Settlement, JND was asked to provide a rough estimate of the number of potential Settlement Class Members, the number of Notice Packets to be mailed, and the number of Settlement Class Members who will be eligible for payment. As noted above, the majority of potential class members for any securities class action are beneficial purchasers who hold their securities in "street name."[4] When an investor opens an investment account, the security he, she or it buys is registered in the issuer's (in this case, GSX's) books as belonging to the Nominee. The Nominee, in its records, however, lists the investor as the actual owner. Because of this street name system, even corporate entities often do not know the identity of the vast majority of their investors, as Nominees have the overwhelming bulk of the information related to who owns the securities, the dates of purchase and sale, the quantity of the securities purchased or sold, and the names and addresses of the investors. Since this information is not freely available, it is the reason that the proposed Preliminary Approval Order provides that Nominees shall either: (a) provide names and addresses of beneficial owners to the Claims Administrator; or (b) send the Notice Packet to potential Settlement Class Members. Thus, while the Settlement Class size is unknown, JND knows that: (a) Nominees have contact information for a large number of Settlement Class Members (most likely the vast majority); and (b) that JND will

---

[4] According to the U.S. Securities and Exchange Commission ("SEC"), "[a]proximately 85% of exchange-traded securities are held by securities intermediaries, such as broker-dealers and banks, on behalf of themselves or their customers."
https://www.sec.gov/spotlight/proxyprocess/proxyvotingbrief.htm

send Notice Packets for dissemination to potential Settlement Class Members by Nominees that wish to send notice themselves, and that JND will receive investor information from Nominees and disseminate Notice Packets to those potential Settlement Class Members based on that information.

18.     Regarding class size, without detailed data being readily available to JND or Lead Counsel, accurately estimating the size of the Class is difficult, and JND can only provide a rough estimate. Thus, in estimating class size for any case, JND utilizes historical settlement data from other securities class action settlements JND has administered, particularly those settlements of similar size and involving companies with similar market capitalizations and numbers of shareholders. Based on this information, we expect to mail approximately 30,000 Notice Packets in this matter. Further, in our experience in settlements of federal securities class actions, we typically receive Claims from approximately 15% to 25% of the potential Settlement Class Members to whom we mail notice (equating to 4,500 to 7,500 Claims here).[5] For Claims received, various factors can affect the total number which will ultimately be eligible for recovery from the Settlement (e.g., length of the Class Period and parameters for calculating recognized loss amounts), but based on data from the above-referenced securities class action settlements, we have previously determined approximately 17% to 38% of Claims received to be eligible (equating to

[5] For example, *Fleming v. Impax Laboratories*, No. 4:16-cv-06557-HSG (N.D. Cal.) (approximately 28% claims response rate (or approximately 14,000 claims) on over 49,000 notices sent in $33 million securities class action settlement); *Davis v. Yelp*, No. 3:18-cv-00400-EMC (N.D. Cal.) (approximately 17% claims response rate (or approximately 7,500 claims) on nearly 45,000 notices sent out in $22.25 million securities class action settlement); *In re: BofI Holding, Inc. Securities Litigation*, No. 3:15-cv-02324-GPC-KSC (S.D. Cal.) (approximately 17% claims response rate (or approximately 7,500 claims) on over 44,000 notices sent out in $14.1 million securities class action settlement); and *Rabkin v. Lion Biotechnologies, Inc., et al.*, No. 3:17-cv-02086-SI (N.D. Cal.) (approximately 22% claims response rate (or nearly 4,700 claims) on over 21,000 notices sent out in $3.25 million securities class action settlement). Each of these is a recent securities class action settlement in this District which JND administered using similar methods of notice and administration as proposed for this Action.

8

to approximately 800 to 3,000 Claims here based on the above estimates for total Claims that will be received).[6] The foregoing numbers are only estimates, however, and the actual number of potential Settlement Class Members identified during the notice campaign, as well as the number of Claims ultimately received for processing, may be higher or lower than the estimates provided herein.[7]

19.    Since JND does not know the size of the Settlement Class, it cannot state what proportion of Settlement Class Members will receive notice through the notice campaign. However, JND believes based on many years of experience in giving notice in securities class actions, that its process for providing notice will result in a significant percentage of potential Settlement Class Members—including Nominees and third-party filers—receiving notice. As detailed above, special emphasis is given to making sure that Nominees, who have the bulk of the investor information, as well as third party filers whose business is filing claims on behalf of institutional investors and other large investors, receive notice.

20.    Based on JND's experience, the majority of large value valid claims will be filed by institutional investors. Many, if not most, institutional investors—such as state, city, and union pension funds—file, or hire a third-party claims filing service to file claims on the investor's behalf. Given the fact that institutional investors typically file the largest claims in a case, these investors typically receive the largest portion of the Net Settlement Fund.  Based on this, it is

---

[6] For example, in recent class action settlements as mentioned in Footnote 5, there were approximately 5,300 eligible claims (approximately 38% of claims received) in *Fleming v. Impax Laboratories* and approximately 1,300 eligible claims (approximately 17% of claims received) in *In re: BofI Holding, Inc. Securities Litigation*.

[7] To be clear, the number of Settlement Class Members will be a subset of the number of Notice Packets sent. Not every person or entity that receives a Notice Packet will be a Settlement Class Member.

JND's expectation that institutional investors will file the largest claims in the Action and receive the bulk of the Net Settlement Fund.

21.    Settlement Class Members who wish to be eligible to receive a distribution from the Settlement Fund are required to complete and submit to JND a properly executed Claim either by mail or online such that it is postmarked (if mailed) or received no later than the claims-submission deadline established by the Court, together with adequate supporting documentation for the transactions and holdings in GSX Securities reported therein.

22.    Each Claim received by JND will be reviewed upon receipt to verify that all required information has been provided. The documentation provided with each Claim will also be reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and the purchase/acquisition, sale, and holding information. JND will process each Claim in accordance with the Court-approved Plan of Allocation using a calculation module developed for the Settlement.

23.    If a Claim is determined to be defective, a deficiency notification (via letter or email) will be sent to the Claimant describing the deficiency in the Claim including, where applicable, what is necessary to cure the deficiency. The deficiency notification will also advise the Claimant how much time he, she, or it has to submit the appropriate information and/or documentary evidence to complete/cure the Claim. If the deficiency in the Claim is not cured, the Claim will be recommended for rejection (in whole or in part). The deficiency notification will also advise Claimants of their right to contest JND's administrative determination with respect to their Claim and to request the Court's review of their Claim if they desire.

24.    After the Claims (and responses to deficiency notifications) have been fully processed, and final administrative determinations have been made as to which Claims are valid,

10

JND will present its administrative report on the Claims received to the Court. Thereafter, upon Court approval, JND will distribute the net Settlement proceeds to eligible Settlement Class Members *pro rata* based upon each Claimant's recognized loss amount as calculated pursuant to the Court-approved plan of allocation, the total recognized losses of all eligible Claims, and the amount available for distribution.

25.    Distributions from the net Settlement proceeds will be sent to eligible Settlement Class Members via checks and wires with, in the case of check payments, a specified period for each Claimant to cash their payment (typically 90 or 180 days).[8] For any checks that are not cashed, JND will conduct an outreach campaign to encourage cashing and providing Claimants with reissued checks where applicable.

26.    The process described above is the standard claims administration process for all securities class action settlements handled by JND.

**Estimated Administration Costs and Distribution Amount**

27.    Based on JND's experience, we estimate that administering the Settlement, including disseminating notice to the Settlement Class, processing Claims received, and distributing the net Settlement proceeds in accordance with the Court-approved Plan of Allocation, will cost approximately $500,000, plus the anticipated requests from Nominees for reimbursement of their expenses in connection with providing notice, assuming the actual numbers of Notice Packets sent and Claims received are not significantly different from the estimates provided above,

---

[8] Due to the expenses associated with administering claims, JND recommends that no distributions be made to Claimants who would receive less than $10.  These expenses include the costs of printing and mailing a check, as well as monitoring whether the check has been cashed, all of which could easily exceed the value of such smaller claims. It is standard practice in securities class actions to utilize a minimum check threshold and it is commonplace to use $10 as the minimum amount.

and no unforeseen issues arise in the course of the administration.[9]  These costs will be paid from the Settlement Fund upon Court approval.

28.     The estimated cost of this administration represents a range of approximately 2.7% to 3.8% of the Settlement Amount. This percentage range is reasonable in relation to the value of the Settlement and is consistent with the administration costs incurred in other securities class action settlements. *See, e.g.*, *Mild v. PPG Industries, Inc.*, No. 2:18-cv-04231 (C.D. Cal.) (3.9% notice and administration cost in $25 million securities class action settlement).

29.     The foregoing amounts are estimates and the ultimate cost of this administration could change if the number of Notice Packets mailed are substantially greater (or smaller) than our estimate or if the number of Claims received are substantially greater (or smaller) than our estimate. In addition, the cost of this administration could also be impacted by any out-of-scope work encountered during the course of the administration. JND will always strive to keep costs down whenever possible.

30.     In developing the proposed notice plan for the Settlement, JND was also asked to provide an estimate for the total payment amount to be distributed from the Net Settlement Fund. With $9.5 million as the value of the proposed Settlement Amount in this matter, and accounting for proposed attorneys' fees of up to 33.3% of the Settlement Amount and litigation expenses of up to $500,000 as set forth in the proposed Preliminary Approval Order, as well as the estimated total administration cost of $500,000, JND estimates a Net Settlement Fund of approximately

---

[9] Regarding Taxes, $3,000 of JND's cost estimate will cover the filing of tax returns for the Settlement Fund. While it is possible that, in the event that interest on the Settlement Fund may exceed the Notice and Administration Costs, taxes may be due on such net interest, in JND's experience, such a scenario is highly unlikely for settlements of less than $100 million, and in any event the amount owed axiomatically will be less than any such net interest and will be paid out of the Settlement Fund prior to distribution. For a variety of reasons, it is therefore difficult to provide any specific estimates.

$5,336,500 (not accounting for the amount to be reimbursed to Nominees for noticing expenses). JND would conduct the distribution from this Net Settlement Fund among the eligible Claims (estimated to be 800 to 3,000 Claims as previously discussed) after removing those which would receive a payment of less than $10 and recalculating a *pro rata* share for each remaining Claimant.

### Data and Privacy Practices for Securely Handling Settlement Class Member Data

31.     JND is well versed in the handling and management of sensitive information and has in place the technical, administrative, and physical controls necessary to ensure the ongoing confidentiality, integrity, and availability of data.

### Limitation on Use of Data

32.     JND collects personal information as a legal administrator to implement legal notice programs, process and validate claims, communicate with claimants and clients, and disburse settlement benefits. JND only uses personal information collected to accomplish the purpose(s) for which such information was provided. JND may also use personal information to investigate or prevent illegal activities such as suspected fraud and to comply with applicable laws, regulations, and court orders.

### Technical Controls

33.     To help ensure proper access and handling of data, JND's systems have been designed with privacy in mind and utilize a role-based access control methodology to ensure access is granted in accordance with the principle of least privilege security concept. Dedicated applications and storage are provided for each settlement, ensuring data that has been collected for different purposes can be processed separately.

34.     JND has deployed Next Generation Firewalls at all perimeter points which provide intrusion detection and prevention protection (IDS/IPS) to proactively block suspicious and

13

malicious traffic without the need for human intervention. Security event and audit log data is transmitted to JND's Security Information and Event Management (SIEM) solution which aggregates data from across the enterprise to deliver analytics and threat intelligence. Additionally, an Endpoint Detection and Response (EDR) solution is deployed on all endpoints to perform real-time and schedule scanning along with behavioral analysis to protect systems from malicious software and activity. JND also has a vulnerability management program in place that performs monthly scans across its environment and retains an independent third-party security firm to perform penetration testing.

35.    Encryption is also in use throughout JND's systems and services. Access to JND's information processing system is provided by a web application configured to be accessible only via Transport Layer Security (TLS) connectivity. Transmission of data outside of JND's environment also occurs via TLS encrypted web traffic or similarly protected secure and encrypted protocols. Databases are protected with encryption keys and employ full database encryption and/or field/column level encryption to ensure the protection of sensitive data. Furthermore, the physical disks of all servers and workstations are also protected with encryption.

36.    Industry standard logical access controls are in place to prevent unauthorized access to JND's network and systems, access is only provided after proper approval, and based on business need. JND provides unique identifiers to each employee, requires complex passwords which regularly expire at routine intervals, and uses multifactor authentications for all remote access.

### Administrative Policies

37.    JND performs background checks on all personnel at onboarding and requires each individual to enter into a non-disclosure and confidentiality agreement. Additionally, all personnel

14

must complete security and privacy training during the onboarding process which educates staff on proper handling of sensitive data. Refresher training is required of employees each year and JND periodically disseminates security and privacy awareness messages to all staff. Personnel are also required to review and attest to applicable security and privacy policies annually.

38.     Upon departure of any employee, JND promptly takes steps to ensure that all access to JND systems is revoked, effective on the date of departure.

39.     JND maintains a suite of information security policies which undergo an annual review and approval process.

40.     Access to systems and data is granted in accordance with the principle of least privilege and guidance to adhere to this principle is included in JND's information security policies and operational procedures. Access reviews are performed quarterly.

41.     JND maintains SOC 2 certification and adheres to the standards of the National Institute and Standards of Technology (NIST).

## Crisis and Risk Management

42.     JND maintains an Incident Response Policy and Plan that provides organization guidance, processes, and procedures to effectuate proper response to a security or privacy incident. The Incident Response Plan includes procedures for the various phases of incident response, including communication and notification for internal and external stakeholders.

43.     JND has in place a Vendor Management program which governs the procurement, initial and periodic assessments, and ongoing management of its relationships with any third-party vendors and service partners.

**Physical Access Controls**

44.    JND facilities used to process and store data have adequate physical controls in place to prevent unauthorized access to, or dissemination of, sensitive information. Access to, and within, JND facilities is controlled by key cards assigned only to authorized personnel and only at the level required to perform job duties. Access to highly sensitive areas, such as datacenters, server rooms, mailrooms, while also controlled by key cards, utilize restricted levels of access. Access logs are maintained and access to JND's facilities is reviewed periodically. Facilities are also protected by alarm systems and employ CCTV monitoring and recording systems.

**Data Collection and Retention**

45.    JND will only collect the minimum amount of data necessary to administer this Settlement administration, will create a dedicated and separate database to prevent comingling of data, and utilizes that data only for the purposes specified by court orders and settlement documents. All data collected in conjunction with the Settlement is considered sensitive.

46.    All data provided to JND in connection with this Settlement will be handled according to JND's security protocols and applicable laws as detailed above.

**Data Destruction**

47.    JND retains data for the minimum amount of time required and securely destroys data once it is no longer required to be retained.

48.    Disposal of media, whether physical or electronic, is done securely and in accordance with NIST 800-88 guidelines to ensure that data cannot be reconstituted.

**Applicable Laws, Standards, and Other Regulations**

49.    JND has adopted a NIST-based information security program and series of controls to ensure all security and privacy safeguards are appropriately selected, implemented, and

16

reviewed. JND submits itself and its systems no less than annually to several independent assessments, such as the American Institute of Certified Public Accountants SOC 2 certification, and penetration testing by a reputable cybersecurity consulting firm.

50.    JND reviews applicable laws, standards, and regulations to ensure compliance.

51.    JND is an approved vendor for the SEC as well as for the Federal Trade Commission ("FTC") and has worked with a number of other government agencies including: the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ"), and the Department of Labor ("DOL"). JND also has Master Services Agreements with various corporations, banks, and other government agencies that were only awarded after JND underwent rigorous reviews of its systems, privacy policies, and procedures.

### Ethical Rules

52.    JND's administrative policies and employee handbook incorporates a commitment to standards of ethical and legal behavior and outlines enforcement clauses for violations resulting in disciplinary action including and up to termination of employment.

### Customer Service Measures

53.    JND provides a link to its Privacy Policy on every website it manages which details, among other things, that JND is committed to protecting privacy, preventing the misuse or unauthorized disclosure of any personal information it collects and maintains, what information JND may collect, how it collects and uses that information, and what rights individuals may have regarding such information. Similarly, all case-specific contact information for JND is displayed

prominently on every website it manages, as well as any Court-approved notices sent by JND, as applicable.

54.     Where appropriate, JND includes anti-phishing language in Court-ordered communications indicating that JND will not request confidential information by e-mail and how to identify a valid e-mail sent from JND.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 6, 2025 in New Hyde Park, New York.


_____
Luiggy Segura

18

# EXHIBIT A



# Who We Are

With over 70 years of collective experience in law and administration, it's no surprise that JND's seasoned executive management team has built the fastest-growing legal administration firm in the industry. When you work with us, your case receives the personal attention and expertise of our principals –Jen Keough (J), Neil Zola (N), and David Isaac (D).

JND is well-known throughout the legal industry for providing the most responsive, trustworthy, and comprehensive legal administrative service in the country. JND has already been recognized by the New York Law Journal and the Legal Times as the best administration firm in the country for 2018 and 2017. JND was also recently named an approved vendor for the United States Securities and Exchange Commission (SEC) and the Federal Trade Commission (FTC).

Where other firms come up short, clients who want the most dedicated, technically agile team turn to JND for innovative, ambitious strategies with proven results.



📞 1.800.207.7160

✉ Info@JNDLA.com

🌐 www.JNDLA.com

JND and its prinicpals have overseen some of the most complex class action and mass tort cases in our country's history.

No other company in the legal industry understands more about client delivery. No one else has proven their ability to handle large, intricate cases like JND. And no other company excels at the range of services JND offers.

 **CLASS ACTION ADMINISTRATION**
Comprehensive administrative resources through pre-settlement consultation, complete notice services, claims processing and validation, scalable call center capabilities, state-of-the-art website design, and an array of distribution services.

 **MASS TORT & LIEN RESOLUTION**
Manage client intake, screening, and retention; medical record retrieval and review; Plaintiff Fact Sheet preparation including a unique online website offering; claims and settlement administration; lien resolution; and disbursements.

 **eDISCOVERY**
Leverage an extensive, flexible cloud-based platform to provide targeted data analysis, logical, physical and mobile forensics, data recovery, email examination, and timeline generation among many other offerings.

**GOVERNMENT SERVICES**
Assistance with all facets of any administration, including systematic noticing, claims processing and validation, contact services, state-of-the-art website design and distribution, and account reconciliation.



📞 1.800.207.7160

✉ Info@JNDLA.com

🌐 www.JNDLA.com





JND delivers the most reliable and comprehensive legal administrative resources and services available to our clients. Our team has handled some of the most complex class action settlements in the country's history.

 **PRE-SETTLEMENT CONSULTING**

We begin by consulting with clients on how to develop allocation methodologies and design efficient, economical roadmaps for settlement administration while providing preliminary hearing support. Our team works with the parties to compile the class list, or maintain a role as independent auditor of an existing class list to verify completeness.

 **NOTICE PROGRAM**

Effectively notifying class members is key to the approval of your settlement. We advise our clients on effective notice best practices and are experienced in preparing class lists from various sources. Management of the entire CAFA Notice process for Defendants is handled by our team with our proprietary database of officials who need to be notified. Our notice and claim form mailing services utilize creative options to maximize effectiveness and reduce costs, while our advertising team comprises experts handling all media publication needs while obtaining the best rates.

 **CLAIMS PROCESSING**

Our professional staff is trained to process even the most complex claims with efficiency and accuracy and we are readily available to draft, or assist in drafting, claim forms to ensure class comprehension and complete claim form submission. Proprietary databases efficiently capture claim form data as well as accurate and flexible reporting; and with our proprietary online claim submission site, we can provide secure submission and reduce overall complexity. Knowing each case is different, we offer customized reporting to provide a variety of perspectives on the data that our clients may have not considered.

 **BENEFIT DISBURSEMENT**

JND manages all aspects of the settlement fund, including opening disbursement accounts, reconciling accounts, establishing a Qualified Settlement Fund (QSF), filing tax returns, and serving as Escrow Agent. Even the most complex benefit allocation methodology is implemented and applied to individual class members. In addition, we manage tax reporting for settlement disbursements, including the issuance of tax statements, such as W-2s and 1099s, to class members. We also calculate the payroll withholding and employer taxes that are often required in employment class action settlements. Our team partners with a respected CPA firm to prepare settlement fund tax returns.



📞 1.800.207.7160

✉ Info@JNDLA.com

🌐 www.JNDLA.com

## Prominent Case History

JND is routinely called upon to handle the largest and most complex class action administrations. Some of the matters JND and its Founders have worked on over the years include the following:

- Allagas v. BP Solar Int'l, Inc.
- Auction Houses Antitrust Litigation
- BP Deepwater Horizon Settlement
- BP Solar International, Inc. Settlement
- Cecil v. BP America Production Company
- Chieftain-Marathon Oil Company Settlement
- City of Long Beach Telephone Tax Settlement
- Condé Nast Privacy Litigation
- County of Los Angeles Telephone Tax Settlement
- Equifax Data Breach Settlement
- Expedia Hotel Taxes & Fees Litigation
- Freedom Financial Network Restitution Program
- Greyhound Lines, Inc. ADA Settlement
- Hearst Communications, Inc. Privacy Litigation
- Broiler Chicken Antitrust Litigation
- J.P. Morgan Stable Value Fund ERISA Litigation
- LIBOR-Based Financial Instruments Antitrust Litigation
- Intuit Data Breach Litigation
- J. Crew Factory Store Pricing Litigation
- Langan v. Johnson & Johnson Consumer Companies, Inc.
- MyFord Touch Class Action Settlement
- Navistar MaxxForce Engine Settlement
- Red Bull False Advertising Litigation
- Robert Briseno et al. v. Conagra Foods, Inc.
- TCF National Bank Restitution Program
- TJX Companies False Pricing Settlement
- Uber Technologies Employment Discrimination Settlement
- USC Student Health Center Litigation
- Visa/Mastercard Antitrust Litigation
- Vitamix Blender Settlement

Class Action



📞 1.800.207.7160

✉ Info@JNDLA.com

🌐 www.JNDLA.com

## Prominent Securities Cases

JND's stand-alone securities group handles complex settlement administrations involving common stock, options, notes, derivatives and other complex securities. Our securities team, located in New York, is overseen by Co-Founder Neil Zola, with over 25-years' experience in securities class action litigation and administration. Neil has played a direct role in many of the largest securities settlements in our country's history. Securities matters handled by JND and its Founders include:

- Akorn Securities Litigation
- Akorn, Inc. Data Integrity Securities Litigation
- Amaya Securites Litigation
- Babcock & Wilcox Ent., Inc. Securities Litigation
- Bankrate Securities Litigation
- Barclays Dark Pool Securities Litigation
- Citigroup Securities Litigation
- ComScore Securities Litigation
- Dole Food Company Securities Litigation
- Endo International Securities Litigation
- Endurance Securities Litigation
- Equifax Inc. Securities Litigation
- Fenix Parts Inc. Securities Litigation
- Fiat Chrysler Shareholder Litigation
- GoPro Shareholder Litigation
- Halliburton EPJ Fund Securities Litigation
- Higher One Holdings Securities Litigation
- Illumina, Inc. Securities Litigation
- IPO Securities Litigation
- Lannett Company, Inc. Securities Litigation
- Linkwell Corp. Securities Litigation
- Lion Biotechnologies Securities Litigation
- LSB Industries Security Litigation
- NantHealth, Inc. Securities Litigation
- Nantkwest Securities Litigation
- Nortel Networks Securities Litigation I & II
- Opus Bank Securities Litigation





Securities Experience

- PPG Industries Securities Litigation
- Precision Castparts Securities Litigation
- Royal Ahold Securities and Erisa Litigation
- Santander Securities Litigation
- SFX Entertainment Securities Litigation
- Stericycle Securities Litigation
- Terraform Power Securities Litigation
- Tyco International LTD Securities Litigation
- Ubiquiti Networks Securities Litigation
- Vale Securities Litigation
- Washington Mutual Securities Litigation
- Wells Fargo RMBS Trustee Litigation
- WorldCom, Inc. Securities Litigation
- Yahoo! Securities Litigation