**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YANG RENBIN, ROBERT ANGELINE, COREY HAYS, and ALEXANDRE TAZI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> GSX TECHEDU INC., LARRY XIANGDONG CHEN, NAN SHEN, XIN FAN, YIMING HU, MING LIAO, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES, INC., BARCLAYS CAPITAL, INC., BOFA SECURITIES, INC., CLSA LIMITED, and GOLDMAN SACHS (ASIA) L.L.C., <br><br> Defendants. | **Case No. 2:20-CV-04457 (MEF) (JRA)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     PROCEDURAL HISTORY OF THE LITIGATION ........................................... 4

III.    ARGUMENT ..................................................................................................... 6

        A.      The Reasonableness of the Settlement Warrants Final Approval ........................... 6

        B.      The Proposed Settlement Carries a Presumption of Fairness ................................ 7

        C.      The *Girsh* Factors Support Final Approval ........................................................ 10

                1.      Complexity, Length, and Duration of Litigation Support
                        Final Approval ...................................................................................... 10

                2.      Reaction of the Class to the Settlement Overwhelmingly
                        Supports Final Approval ........................................................................ 14

                3.      Stage of the Proceedings Supports Final Approval ................................. 15

                4.      The Risks of Establishing Liability and Damages Support
                        Final Approval ...................................................................................... 16

                5.      The Risks of Maintaining a Certified Class Through Trial
                        Support Final Approval .......................................................................... 18

                6.      Ability of Defendant to Withstand a Greater Judgment .......................... 19

                7.      The Settlement Puts the Settlement Fund Well Within the Range
                        of Reasonableness in Light of the Best Possible Recovery and All
                        Attendant Risks of Litigation ................................................................. 19

        D.      The Settlement Meets All Requirements of Rule 23(e) ........................................ 20

        E.      The *Prudential* Factors Support Approval ....................................................... 22

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER RULE 23 ............... 23

        A.      Numerosity ........................................................................................................ 23

        B.      Commonality ..................................................................................................... 24

        C.      Typicality .......................................................................................................... 24

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

D.     Adequacy ........................................................................................ 25

E.     Predominance.................................................................................. 25

F.     Superiority....................................................................................... 26

V.     THE COURT SHOULD FINALLY APPROVE LEAD COUNSEL AS CLASS COUNSEL.................................................................................... 26

VI.     NOTICE TO THE CLASS COMPLIED WITH THE COURT'S PRELIMINARY APPROVAL ORDER AND SATISFIED RULE 23 AND DUE PROCESS .................. 27

VII.     THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE.......... 29

VIII.     CONCLUSION................................................................................... 30

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012),
  *aff'd*, 559 F. App'x 151 (3d Cir. 2014)................................................................7

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................23, 26

*Bowling v. Pfizer, Inc.*,
  143 F.R.D. 141 (S.D. Ohio 1992)...........................................................................9

*Bredbenner v. Liberty Travel, Inc.*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...............................................................8

*Bryan v. Pittsburgh Plate Glass Co.*,
  494 F.2d 799 (3d Cir. 1974)....................................................................................7

*California v. Teva Pharm. Indus., Ltd.*,
  2020 WL 3128027 (E.D. Pa. June 10, 2020)........................................................22

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)...................................................................................................6

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 n.2 (2d Cir. 1974).............................................................................20

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010).....................................................................................6

*Eisen v. Carlisle & Jacqelin*,
  417 U.S. 156 (1974)...............................................................................................27

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)............................................................................ *passim*

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) .................................................................................12

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).....................................................................................20

*Hacker v. Elec. Last Mile Sols. Inc.*,
  722 F. Supp. 3d 480 (D.N.J. 2024) ........................................................................13

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)...................................................................................................12

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...........................................................22

*Huffman v. Prudential Ins. Co. of Am.*,
   2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ....................................................14, 22, 23

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................17

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)....................................................................................26

*In re Auto. Refinishing Paint Antitrust Litig.*,
   2004 WL 6248154 (E.D. Pa. Sept. 27, 2004) ..............................................................7

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013).........................................................................................7

*In re Celgene Corp. Sec. Litig.*,
   2020 WL 8870665 (D.N.J. Nov. 29, 2020) ................................................................24

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)......................................................................................15

*In re CIGNA Corp., Sec. Litig.*,
   2007 WL 2071898 (E.D. Pa. Jul. 13, 2007)............................................................8, 18

*In re Datatec Sys. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) ................................................................18

*In re DVI, Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008),
   *aff'd,* 639 F.3d 623 (3d Cir. 2011) ...........................................................................24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)...........................................................................................6

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)............................................................................15, 18

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012)....................................................................................6, 12

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013)....................................................................................15

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*In re Lucent Techs., Inc., Sec. Litig.*,
    307 F. Supp. 2d 633 (D.N.J. 2004) ....................................................................................17

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016).........................................................................18, 19, 25, 26

*In re Ocean Power Techs., Inc.*,
    2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...............................................................16, 22

*In re: Ocean Power Techs., Inc., Sec. Litig.*,
    2016 WL 7638464 (D.N.J. June 7, 2016) ........................................................................29

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...........................................................................................21

*In re Par Pharm. Sec. Litig.*,
    2013 WL 3930091 (D.N.J. July 29, 2013)...................................................................14, 18

*In re PNC Fin. Servs. Grp., Inc.*,
    440 F. Supp. 2d 421 (W.D. Pa. 2006).................................................................................9

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).............................................................................................22

*In re Remeron End-Payor Antitrust Litig.*,
    2005 WL 2230314 (D.N.J. Sept. 13, 2005) .....................................................................6, 7

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003).................................................................................7

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    2008 WL 9447623 (D.N.J. Dec. 9, 2008).....................................................................10, 29

*In re Schering-Plough/Merck Merger Litig.*,
    2010 WL 1257722 (D.N.J. Mar. 26. 2010)..........................................................................9

*In re Toronto-Dominion Bank Sec. Litig.*,
    2019 WL 12323620 (D.N.J. Oct. 4, 2019)........................................................................30

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    2020 WL 3166456 (D.N.J. June 15, 2020),
    *R. & R. adopted*, 2021 WL 358611 (D.N.J. Feb. 1, 2021) .............................................13

*In re Viropharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .......................................................................18

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016).............................................................................................12

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)....................................................................9, 10

*Kanefsky v. Honeywell Int'l Inc.*,
    2022 WL 1320827 (D.N.J. May 3, 2022).........................................................19, 30

*Lazy Oil Co. v. Witco Corp.*,
    95 F.Supp.2d 290 (W.D. Pa. 1997),
    *aff'd*, 166 F.3d 581 (3d Cir. 1999)................................................................20

*Li v. Aeterna Zentaris, Inc.*,
    324 F.R.D. 331 (D.N.J. 2018)......................................................................24

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 10, 2009),
    *aff'd*, 423 F. App'x 131 (3d Cir. 2011).............................................................21

*P Van Hove BVBA v. Universal Travel Grp., Inc.*,
    2017 WL 2734714 (D.N.J. June 26, 2017).........................................................16

*Pope v. Navient Corp.*,
    2021 WL 926611 (D.N.J. Mar. 11, 2021).........................................................25

*Sala v. Nat'l R.R. Passenger Corp.*,
    721 F. Supp. 80 (E.D. Pa. 1989)..................................................................14

*Serio v. Wachovia Sec., LLC*,
    2009 WL 900167 (D.N.J. Mar. 31, 2009)..........................................................15

*Shapiro v. All. MMA, Inc.*,
    2018 WL 3158812 (D.N.J. June 28, 2018).....................................................26, 27

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001).......................................................................24

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990)....................................................................14, 15

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011).......................................................................29

*TIAA v. Valeant Pharms. Int'l, Inc.*,
    2021 WL 6881210 (3d Cir. Dec. 20, 2021).........................................................13

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ........................................................................................7

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
775 F. App'x 51 (3d Cir. 2019) ...................................................................................24

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ........................................................3, 22

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................................19, 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ..........................................................................................27

*Weisfeld v. Sun Chem. Corp.*,
210 F.R.D. 136 (D.N.J. 2002),
*aff'd*, 84 F. App'x 257 (3d Cir. 2004) ........................................................................26

*Wu v. GSX Techedu Inc.*,
738 F. Supp. 3d 527 (D.N.J. June 25, 2024) ..........................................................16, 17

*Yaeger v. Subaru of Am., Inc.*,
2016 WL 4541861 (D.N.J. Aug. 31, 2016) ............................................................15, 16

*Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985) ...........................................................................................29

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................27

Private Securities Litigation Reform Act of 1995 ...........................................................27

Securities Exchange Act of 1934 .....................................................................................27

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Lead Plaintiff Yang Renbin and Additional Plaintiffs Robert Angeline, Corey Hays, and Alexandre Tazi (collectively, "Plaintiffs"), individually and on behalf of all Settlement Class Members[1], respectfully submit this memorandum of law in support of their unopposed motion to: (1) grant final approval of a $9,500,000 cash settlement that will dispose of all claims in this Action; (2) certify this Action as a class action pursuant to Fed. R. Civ. P. 23(e) to effectuate the Class Settlement, including appointing Lead Counsel as Class Counsel; (3) find that the notice plan the Court approved at preliminary approval met all applicable requirements; and (4) approve the Plan of Allocation for the disbursement of the proceeds among Class Members.[2]

## I.    PRELIMINARY STATEMENT

The Settlement is fair, reasonable, adequate, and a very favorable result for the Settlement Class.  The Settlement will resolve all claims against Defendants GSX Techedu, Inc. n/k/a Gaotu Techedu Inc. ("GSX"), Larry Xiangdong Chen, and Nan Shen (collectively, "Defendants") in exchange for a sizable cash payment of $9,500,000 ("Settlement Amount") for the benefit of the Settlement Class.

By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and Defendants' defenses.  In particular, prior to reaching the Settlement nearly five years after this Action was initially filed, Lead Counsel:  (i) conducted a comprehensive legal and factual investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Defendant GSX's filings with the U.S. Securities and Exchange Commission ("SEC"), public reports concerning GSX, and transcripts of

---

[1]    Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated June 5, 2025 (the "Stipulation") (ECF No. 155-3), preliminarily approved by this Court on February 19, 2026 (ECF No. 169) (the "Preliminary Approval Order").

[2]    A memorandum in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs is filed concurrently.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GSX's investor calls; researching case law concerning the elements of the claims asserted, reviewing documents produced by third parties; interviews with several former employees and other potential witnesses with relevant information; and consultation with damages and accounting experts; (ii) drafted the Amended Class Action Complaint ("AC") and Second Amended Class Action Complaint ("SAC") to address the deficiencies in the AC identified by the Court when it granted Defendants' motion to dismiss the AC; (iii) briefed Defendants' motions to dismiss the AC and SAC; (iv) in large part successfully opposed Defendants' motions to dismiss; (v) drafted and exchanged extensive mediation statements containing detailed analyses of the strengths, risks, and potential issues in the litigation; (vi) participated in a full-day mediation sessions before David Murphy of Phillips ADR and several post-mediation discussions through the mediator; (vii) engaged in negotiations regarding the terms of the proposed Settlement; (viii) prepared the initial draft of the Stipulation and supporting documents; and (ix) worked with Plaintiffs' damages experts to craft the Plan of Allocation.  The Settlement is the result of arm's length negotiations conducted by informed and experienced counsel, in conjunction with a well-respected mediator.

While Plaintiffs maintain that the merits of their allegations are strong, continued litigation carries significant risks.  To sustain the Action on behalf of Class Members, Plaintiffs would have needed to succeed in certifying the Class – something Defendants would have opposed vigorously. Plaintiffs faced possibly insurmountable hurdles with respect to discovery because:  (1) Chinese law imposes significant hurdles on depositions and document discovery in this Action so there was a real chance that Plaintiffs may not have been able to prove their case, as witnesses with relevant knowledge no longer work at GSX and cannot be compelled to sit for a deposition, and Plaintiffs may have spent years attempting to obtain even a small number of documents from China; and (2) as of the date of the parties' agreement in principle to settle this matter, confidential witnesses in China indicated an unwillingness to be deposed (inside or outside of China) or to participate further

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

in this matter.  If Plaintiffs successfully obtained some discovery, they would have to test their evidence at summary judgment, and then again in a lengthy, expensive trial.  If Plaintiffs prevailed at trial, they would then have to defend the verdict from post-trial motions and appeal.  These ample risks led one court to remark that a "complete and total victory throughout the entire course of complex securities litigation – occurs with the regularity of unicorn sightings." *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *6 (E.D. Pa. Sept. 20, 2017)[3]

Plaintiffs faced additional risks even if they prevailed.  Actual damages depend on actual trades during the Class Period.  The Parties would only know actual damages after trial and appeal when Class Members filed their claims.  Further, continuing the litigation would have jeopardized the resources available to compensate investors and substantially delayed payment of any recovery.  The Settlement provides the Class with meaningful recovery without the need for time-consuming, expensive, litigation requiring the aid of experts.  Given the risks of further litigation, including the substantial discovery challenges in this Action, and the significantly higher than average percentage of recovery, a $9,500,000 settlement is an outstanding outcome.

The Court preliminarily certified a Settlement Class in its Preliminary Approval Order.  Nothing has happened since that Order which would warrant a different result.  The Court's Preliminary Approval Order also established a detailed plan to provide notice to the Class, which Plaintiffs and the Claims Administrator have followed.  Though the time to object to the Settlement and request exclusion from the Class has not passed, no Class Members have objected to the Settlement, and no persons have requested exclusion from the Class.  *See* Declaration of Austin P. Van in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Van Declaration") at Ex. 1 (Declaration of Luiggy Segura Regarding (A) Mailing of the Notice

---

[3]    In case citations all internal quotations and citations are omitted, and all emphasis is added unless otherwise indicated.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and Claim Form; (B) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections Received, dated April 30, 2026 ("Segura Decl.")) ¶¶17-18.

The Settlement reflects an excellent result for Plaintiffs and the putative investor class and warrants approval by the Court. Accordingly, the Court should: (a) grant final approval of the Settlement; (b) finally certify the Class to effectuate the Settlement; (c) finally approve the Notice Plan; (d) appoint Lead Counsel as Class Counsel; and (e) finally approve the Plan of Allocation.

## II.      PROCEDURAL HISTORY OF THE LITIGATION

On April 17, 2020, the initial class action complaint was filed in this Court. ECF No. 1. On August 6, 2020, the Court appointed Yang Renbin as Lead Plaintiff and approved Pomerantz LLP as Lead Counsel in the Action. ECF No. 9.

Plaintiffs filed their Amended Class Action Complaint ("FAC") on November 2, 2020 (ECF No. 22), and on April 30, 2021, the Parties filed their Motion to Dismiss briefing (ECF Nos. 67, 68, 70), and on the same day, the Parties filed a Stipulation and Order of Voluntary Partial Dismissal (ECF No. 69), which the Court granted on May 4, 2021 (ECF No. 73), dismissing certain counts and Defendants. On February 7, 2022, the Parties filed updated Motion to Dismiss briefing (ECF Nos. 82-84), and on February 24, 2023, the Court issued an Opinion and Order granting Defendants' motion to dismiss without prejudice and directing Plaintiffs to file an amended complaint (ECF Nos. 95-96). Plaintiffs filed their Second Amended Complaint ("SAC") on April 25, 2023. (ECF No. 97). Defendants filed a motion to dismiss on June 9, 2023 (ECF No. 105), Plaintiffs filed an opposition on July 24, 2023 (ECF No. 108), and Defendants filed a reply in further support of the motion to dismiss (ECF No. 109) on August 23, 2023. On June 25, 2024, the Court issued an Opinion and Order denying the motion to dismiss, except as to certain statements in Part III.C, which it granted. ECF No. 112. On August 9, 2024, Defendants filed an answer to Plaintiffs' Second Amended Complaint. ECF No. 120.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

After the Court denied in part the motion to dismiss, the Parties explored the possibility of a settlement and retained an experienced mediator to assist them, David Murphy of Phillips ADR. Van Declaration, ¶ 21. In advance of a formal mediation session, the Parties exchanged detailed mediation statements and material. *Id.* A mediation session was held on November 26, 2024, however a settlement was not reached at that time. *Id.*

The Parties continued to engage in discovery. *Id.* ¶ 22. After numerous rounds of meeting and conferring regarding discovery, bringing to the Court several discovery disputes, the Parties agreed to renew settlement discussions in an effort to reach a negotiated resolution. *Id.* ¶¶ 22-23. Following the exchange of additional mediation material, a formal mediation session with mediator David Murphy was held on April 3, 2025. *Id.* ¶ 23. On April 22, 2025, the mediator made a formal mediator's proposal recommending that the Parties agree to settle the case for $9,500,000. *Id.* On April 29, 2025, the Parties accepted the mediator's proposal and began negotiating this Stipulation. *Id.* On June 5, 2025, the Parties executed the Stipulation, setting forth the terms of the agreement in principle. *Id.*

On April 30, 2025, the Parties informed the Court via a Joint Status Update and Motion for Stay (ECF No. 148) that they had reached an agreement resolving the matter in principle. *Id.* ¶ 24. Judge Almonte then stayed all deadlines and proceedings in the case for 30 days (ECF No. 149) and scheduled a status conference for May 22, 2025 (ECF No. 152). *Id,*

On June 6, 2025, Plaintiffs filed an unopposed motion for preliminary approval of the Settlement. ECF No. 155. *Id.* ¶ 25. Pursuant to Court Orders and requests for additional information, Plaintiffs filed supplemental briefing and supporting declarations with new and/or revised exhibits in support of their preliminary approval motion on November 24, 2025 (ECF No. 162); February 3, 2026 (ECF No. 165); and February 12, 2026 (ECF No. 167). *Id.* On February 19, 2026, the Court issued the Preliminary Approval Order. ECF No. 169. *Id.* The Court

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

scheduled the Final Approval Hearing for final approval of the Settlement, attorney's fees and expenses, Plaintiffs' awards, and to hear any objections by Settlement Class Members for June 4, 2026.  Preliminary Approval Order ¶ 5.

## III.    ARGUMENT

### A.    The Reasonableness of the Settlement Warrants Final Approval

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).  "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."  *Id*.  This is particularly true for class actions involving complex litigation and securities matters, where substantial judicial resources can be conserved by avoiding formal litigation.  *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("*Ins. Brokerage I*") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); 7 Conte & Newberg, *Newberg on Class Actions* § 22.91 at 386-87 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more.").

Courts should approve proposed class-action settlements if they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).  "Because a settlement represents an exercise of judgment by the negotiating parties, [courts] have consistently held that the function of a court reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving issues left unresolved by the settlement." *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *16 (D.N.J. Sept.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

13, 2005) ("*Remeron I*") (citing *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) ("The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only] whether the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole.").

The Settlement is fair, adequate, and reasonable, and should be approved.

**B.      The Proposed Settlement Carries a Presumption of Fairness**

The Third Circuit affords an initial presumption of fairness for a settlement "if the court finds that:  (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Remeron I*, 2005 WL 2230314, at *15.  Courts recognize that, as here, skilled counsel's well-informed judgment that a settlement is in the best interests of the Class is entitled to considerable weight.  *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014). It is "appropriate" to give "substantial weight to the recommendations of experienced attorneys" who have engaged in arm's-length negotiations.  *See In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 6248154, at *2 (E.D. Pa. Sept. 27, 2004); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (similar).

Here, three of the four elements are met in abundance.  The proposed Settlement results from meaningful, extended arm's-length negotiations between adversarial counsel with extensive experience in securities class action litigation, in satisfaction of the first and third factors.  Plaintiffs

- 7 -
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

had the benefit of representation by leading securities plaintiffs' law firms and attorneys who are highly experienced in complex litigation, and were well-versed in the legal and factual issues of the case. Van Declaration ¶ 32; *see* ECF No. 7-3, Exbibit B (Pomerantz Firm Resume); ECF No. 6-7 (The Rosen Law Firm, P.A. ("Rosen") Firm Resume); Declaration of Thomas G. Hoffman, Jr. Regarding Fees and Expenses of Additional Counsel Labaton Keller Sucharow LLP ("Labaton Decl.," attached to the Van Declaration as Exhibit 4) Exhibit C (Labaton Firm Resume).  The efforts of counsel secured a Settlement that provides substantial benefits to the Settlement Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

A mediator's direct participation further ensures that negotiations were non-collusive and conducted at arm's-length.  *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties."); *In re CIGNA Corp.*, *Sec. Litig.*, 2007 WL 2071898, at *3 (E.D. Pa. Jul. 13, 2007) (approving settlement where it was "clear that negotiations for the settlement occurred at arm's length, as the parties were assisted" by a mediator).

The Settlement was reached through arm's-length negotiation, which included two all-day mediations before the well-respected David Murphy, for which the parties conducted "substantial" work, including preparing for and exchanging mediation statements, hiring experts that debated respective damages analyses, and presenting arguments about their positions. Van Declaration, ¶¶ 30-31; Declaration of David M. Murphy ("Murphy Decl.") (ECF No. 162-2), ¶¶ 6-11.  The negotiations, though collegial, were adversarial.  Van Declaration ¶ 30; Murphy Decl. ¶ 15.  They were separated by months of hard-fought litigation.  Van Declaration ¶ 30.  After the second

- 8 -
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

mediation, the mediator made a formal mediator's proposal recommending that the Parties agree to settle the case for $9,500,000, which the Parties accepted. *Id.* Murphy Decl. ¶¶ 12-13.

Plaintiffs and Lead Counsel have more than adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this Action on behalf of the Settlement Class, including, among other things, scouring GSX's SEC filings, earnings calls, analyst reports, and other industry reports, retaining multiple investigators to interview former GSX employees with knowledge of facts relevant to Plaintiffs' claims, drafting and filing two amended complaints, opposing two motions to dismiss filed by Defendants, consulting with experts, including on the issues of damages, loss causation, and market efficiency, and engaging in extensive settlement negotiations and mediations assisted by a well-respected mediator. Van Declaration, ¶ 27. Plaintiffs have been active and informed participants in the litigation by regularly communicating with Lead Counsel and Plaintiffs' Counsel, evaluating the Settlement Class's and Defendants' best arguments concerning liability and damages, consulting with Lead Counsel concerning the settlement negotiations, and approving the terms of the Settlement. *Id.* Accordingly, "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004); *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26. 2010).

Although Plaintiffs were unable to engage in substantial formal discovery prior to settlement, courts regularly approve settlements where, as here, Lead Counsel has "diligently investigated and analyzed the events and issues . . . giving rise to plaintiffs' claims in the securities litigation." *See In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 430 (W.D. Pa. 2006) (holding counsel "diligently investigated" where they "thoroughly analyzed the strengths and weaknesses of the claims" through "formal opposition to defendants' motion to dismiss," "briefs in preparation for mediation," "settlement negotiations," and preparation of complaints); *Bowling*

*v. Pfizer, Inc.*, 143 F.R.D. 141, 161 (S.D. Ohio 1992) ("If a court required a certain amount of discovery to be taken, the primary beneficiary of such a per se rule would be the attorneys"); *see also Warfarin Sodium,* 391 F.3d at 537 (focusing analysis on "whether counsel had an adequate appreciation of the merits of the case before negotiating").

Finally, to date, no members of the Settlement Class, which has thousands of potential members, have objected.  Van Declaration ¶ 40; Segura Decl. ¶¶ 17-18; *Warfarin Sodium*, 391 F.3d at 535 (finding presumption of fairness where "only a small fraction of the purported class" objected).  Thus, the Settlement proposed here easily meets three of the four factors for consideration by the Court and is therefore entitled to a presumption of fairness.

C.    **The *Girsh* Factors Support Final Approval**

The Settlement provides fair, reasonable and adequate relief to the Class as required by Rule 23(e)(2)(C).  In *Girsh v. Jepson*, the Third Circuit identified nine factors courts should consider when evaluating a class-action settlement:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975).  The *Girsh* factors demonstrate that the costs, risks, and delay of trial favor approval. Rule 23I(2)(C)(I)).

1.    **Complexity, Length, and Duration of Litigation Support Final Approval**

The complexity, expense, and likely duration of the litigation support approval of the Settlement.  "Federal securities class actions by definition involve complicated issues of law and fact." *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008).

Securities class actions are notoriously complex and expensive to litigate because they require extensive investigations, discovery, and the retention of experts to opine on several topics such as market efficiency, loss causation, and damages. Van Declaration, ¶ 33.

This case was filed over five years ago and undoubtedly faces many risks. Van Declaration, ¶ 34. If the Parties did not agree to settle, Plaintiffs would resume the nearly impossible, and potentially years-long task of obtaining discovery from a foreign entity based in China. Van Declaration, ¶¶ 34-41. In addition, most of the depositions would take place in a foreign language, introducing both additional expenses and ambiguity. *Id.*, ¶ 34. Plaintiffs would also potentially have to prove their claims without discovery from third parties in China, including brushers and employees who have since left GSX—the third parties most likely to have evidence of Defendants' wrongdoing. *Id.* Moreover, it is likely that many, if not most, of the relevant employees have left GSX in the past five years and because of Chinese law, cannot be compelled to sit for a deposition. Van Declaration, ¶¶ 34-41. Plaintiffs have already verified that former employee confidential witnesses in the case are unwilling to be deposed (inside or outside China) or to participate in the case further. Van Declaration, ¶¶ 51-52.

Plaintiffs might not prove their claims. Van Declaration, ¶ 42. As discussed *supra*, Plaintiffs may not be able to obtain discovery needed to prove their claims. Also, Defendants suggest that discovery will ultimately not support Plaintiffs' claims, pointing to the SEC's ultimate decision not to pursue claims against GSX and the Department of Justice's indictment of one of the firms that wrote negative articles about GSX. *Id.*

In addition, Defendants will vigorously oppose class certification, where mixed evidence of price impact could pose substantial challenges to establishing market efficiency under *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283 (2014). Van Declaration, ¶ 60. Even if certified, and the prolonged and burdensome fact discovery process happened to yield

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

some information, Plaintiffs would need to retain experts to produce merits reports on issues such as materiality, loss causation, and damages.  All of this would cut into any possible class recovery through payment of expenses.

Plaintiffs would also have to survive Defendants' motion for summary judgment, prevail at trial, and defend their victory on appeal.  Van Declaration, ¶ 43.  That the documents and witnesses' testimony would all be in Chinese means the parties would have numerous disputes over translation.  *Id.*  Translation would introduce uncertainty, create appellate issues, and substantially lengthen the trial.  *Id.*  Similarly, the jury is unlikely to be familiar with the Chinese tutoring industry or the use of bots in China, making its verdict even less predictable.  *Id.*  Even very large judgments recovered after lengthy litigation and trial can be completely lost on appeal or as a result of a post-trial judgment as a matter of law.  This is especially true of securities class actions, which are so lengthy and complex that plaintiffs risk that the law will shift beneath their feet, eliminating a victory that was unimpeachable under the standards that existed when secured. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (in a case brought in 2005, a Supreme Court decision after entry of a verdict in Plaintiffs' favor reduced the billion-dollar award into an approximately $78 million recovery); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of intervening Supreme Court case).  These risks and costs support approval.  *Ins. Brokerage I*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class."); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *8

(D.N.J. June 15, 2020) (approving final settlement of a securities class action case and noting that "contested issues of liability and damages would subject the Class to considerable risk through summary judgment"), *R. & R. adopted*, 2021 WL 358611 (D.N.J. Feb. 1, 2021), *aff'd in part, appeal dismissed in part sub nom TIAA v. Valeant Pharms. Int'l, Inc.*, 2021 WL 6881210 (3d Cir. Dec. 20, 2021).

The recovery is fair, reasonable, and adequate considering the risks of continued litigation, which would require Plaintiffs to prove (and defeat Defendants' counter-arguments regarding) falsity, materiality, scienter, loss causation, and damages at trial. Van Declaration, ¶ 44; *see Girsh*, 521 F.2d at 157 (risks of establishing liability and damages are factors that can support settlement approval). For example, Defendants have maintained that their statements with respect to GSX's business and financial operations were not false and misleading because Plaintiffs cannot prove that Defendants inflated student enrollment data or revenue. Van Declaration, ¶ 44. Defendants have also argued, and continue to maintain to date, that even if their statements were false or misleading, Plaintiffs cannot prove the elements of scienter, loss causation, or damages. *Id.*, ¶¶ 44-45; ECF No. 162-1 (Declaration of Defendant Nan Shen in support of Settlement because of belief that Plaintiffs are unlikely to prove falsity or scienter). For example, demonstrating scienter can be difficult, as it requires adducing evidence of Defendants' knowledge that is more plausible than the competing inference that management was not involved or misled by others. *Hacker v. Elec. Last Mile Sols. Inc.*, 722 F. Supp. 3d 480, 500 (D.N.J. 2024) (finding settlement reasonable for preliminary approval, in part, because "scienter would be a high and hard bar to clear").

Taking into account nearly five years of litigation, the risks and uncertainties of continued litigation, and the significant amount of the recovery, the Settlement here is certainly reasonable and should be preliminarily approved. Van Declaration, ¶ 46; *see Girsh*, 521 F.2d at 157. Indeed, given the complexity of this case, the sophisticated Defendants involved, and the uncertain delay

of continued litigation, the $9,500,000.00 Settlement is an outstanding result. *Id.* When analyzing the risks of establishing liability and damages at trial, the court should "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action." *Id.*; *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019). As such, the Court should find that the relief provided under the Settlement is adequate, given the complexity of the case and the risks. Van Declaration, ¶ 46.

### 2. Reaction of the Class to the Settlement Overwhelmingly Supports Final Approval

The Class's reaction "is especially critical to the Court's fairness analysis, as the reaction of the class 'is perhaps the most significant factor to be weighed in considering the settlement's adequacy.'" *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)). The lack of objections provides powerful evidence of fairness. *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that the absence of, or a small number of objections, is strong evidence that the settlement is fair and reasonable).

The Class overwhelmingly favors the Settlement. Pursuant to the Court's Preliminary Approval Order, JND Legal Administration ("JND" or the "Claims Administrator") caused the Notice Packets to be mailed to over 32,951 potential Class Members and nominees thus far. *See* Segura Decl., ¶ 12. Additionally, the Summary Notice was published over *PR Newswire* on March 26, 2026. *See id.*, ¶ 13. To date, no objections have been received. *Id.* ¶ 18. The Class's favorable reaction supports approving the Settlement. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 189 (E.D. Pa. 2000) ("the total absence of objections is noteworthy" and "weighs in favor of settlement"); *Stoetzner*, 897 F.2d at 118–19 (finding "only" twenty-nine objections in 281 member class "strongly favors settlement"); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D.

136, 145 (D.N.J. 2013) ("dearth of objections by Class Members to the Settlement weighs in favor of approval"); *Serio v. Wachovia Sec., LLC*, 2009 WL 900167, at *7 (D.N.J. Mar. 31, 2009) ("The low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair.").

### 3.    Stage of the Proceedings Supports Final Approval

The goal of the third *Girsh* factor is to "capture[] the degree of case development that class counsel accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).  This Action has progressed to the stage where Plaintiffs are thoroughly aware of the strengths and weaknesses of their claims.  Van Declaration, ¶ 48.  Plaintiffs investigated the underlying claims, drafted multiple amended complaints, including a viable second amended complaint, have briefed oppositions to two motions to dismiss by Defendants, benefited from Court analyses in two Orders on motions to dismiss the FAC and SAC, and consulted with experts.  *Id.*  The parties engaged in an extensive meet and confer process regarding the scope of, and constraints on, Defendants' production of discovery, including discovery from China.  *Id.*  The parties also filed a joint letter regarding discovery disputes and presented arguments to the Court.  *Id.*  Although discovery was not completed, "class counsel were sufficiently well prepared and informed enough to engage in robust settlement negotiations," which is all the third *Girsh* factor requires.  *Id.*; *Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *9-10 (D.N.J. Aug. 31, 2016).  Indeed, frequently "courts in this district have approved settlements while the case was in the pre-trial stage and formal discovery had not yet commenced." *P Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017); *see also In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *17 (D.N.J. Nov. 15, 2016) ("*Ocean Power II*") (same).

### 4.    The Risks of Establishing Liability and Damages Support Final Approval

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Yaeger*, 2016 WL 4541861, at *29. Here, there were substantial risks to proving both liability and damages which, if litigated, threatened to deprive the Class of any recovery. Van Declaration, ¶ 49.

Specifically, Defendants made various arguments during mediation regarding falsity and scienter, which might be accepted by the Court in ruling on Defendants' future motion for summary judgement, depriving the Class of any recovery. *Id.* To prove falsity, Plaintiffs likely will have to rely heavily on the testimony of confidential witnesses, but such a basis for proof is risky in this case. *Id.* ¶¶ 39, 50. Although the Court ultimately permitted some of the alleged misstatements to proceed to discovery, the Court expressed concern that some of Plaintiffs' allegations may have been premised on unreliable sources that may not yield admissible evidence. *See Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 545 (D.N.J. June 25, 2024) ("[T]he Court is left to speculate whether [CW-3] obtained the information they purport to possess by firsthand knowledge or rumor"); *id.* at 546 n.20 (Court did not consider allegations where "the basis of CW-2's knowledge, is, as pled, too little to go on"); *id.* at 548 ("In some instances . . . it is not clear how a particular confidential witness knows something . . . And one of the confidential witnesses was not interviewed by the Plaintiffs"). Moreover, other bases on which Plaintiffs intend to rely to prove falsity may also fail to materialize in discovery, including, for example, whether the majority of GSX users were bots—a proposition that was supported in part by a Muddy Waters Report, which Defendants have attacked. Van Declaration ¶¶ 54-55.

Defendants will undoubtedly continue to vigorously deny that Defendants acted with scienter, evidenced by the declaration Defendant submitted in connection with preliminary

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

approval motion stating as much.  *See* Declaration of Defendant Nan Shen (ECF No. 162-1).

Scienter is difficult to prove.  *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645

(D.N.J. 2004) (finding settlement reasonable, in part, because proving scienter "would have been

very difficult").  Indeed, the Court has already signaled that the inference of scienter is "not the

strongest one" for certain statements.  *Wu*, 738 F. Supp. 3d at 562.

Further, with respect to loss causation and damages, at summary judgment and trial,

Defendants' experts would have argued against loss causation and damages with respect to each

of the disclosure dates at issue, in an effort to truncate the Class Period or eliminate it altogether.

Van Declaration, ¶ 57.  The estimated damages for this case range from $10.4 million to $138.5

million under the two loss causation dates sustained by the Court, but there is no guarantee that

losses would ultimately be proven for those dates.[4]  *Id.*; *see* ECF No. 155-10 (preliminary damages

report prepared by Plaintiffs' financial expert).  Given that the testimony of the parties' experts on

loss causation and damages would vary substantially, these crucial elements would have been

resolved at trial, in large part, through a "battle of experts."  Van Declaration, ¶ 58; *see In re Am.*

*Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426–27 (S.D.N.Y. 2001).  Each

expert's testimony would rely on complex and highly technical economic arguments.  Van

Declaration, ¶ 58.  Such a battle increases the expense as well as the risk of advancing the litigation

toward a positive resolution for Plaintiffs and the Class.  *Id.*  Plaintiffs believe their case is strong

but acknowledge, as they must, that there are risks to litigation and ultimate recovery.  *Id.*; *see In*

---

[4]    The Court's opinion left open the possibility of two other loss causation dates, which it did not specifically rule on.  *Wu*, 738 F.Supp.3d at 569 n.47 ("[T]he Plaintiffs press certain arguments as to . . . two additional corrective disclosures.  Given the Court's resolution of the other theories of . . . loss causation in the Plaintiffs' favor, those are irrelevant for now and are not taken up."). Including these dates is highly speculative, but under such an analysis (*see* ECF No. 155-11 (second preliminary damages report prepared by Plaintiffs' financial expert)), the estimated damages could reach $974.7 million.

*re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *13 (E.D. Pa. Jan. 25, 2016) (stating that "this issue of causation directly impacts the difficulty in proving damages"); *Par Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"); *CIGNA*, 2007 WL 2071898, at *3 (approving settlement in "complex" case that "could have depended on a jury's assessment of the credibility of various witnesses called by both sides" and in which there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants"); *Ikon*, 194 F.R.D. at 183 ("[T]he relationship between the price decline and defendants' conduct would have been hotly contested, and the outcome of this dispute is difficult to predict."). The Settlement provides a guaranteed result without protracted delay and without the risk of receiving no recovery at all. Van Declaration, ¶ 58.

### 5.   The Risks of Maintaining a Certified Class Through Trial Support Final Approval

The Third Circuit instructs that the sixth *Girsh* factor warrants "only minimal consideration." *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016). In any event, this factor also favors approval. Defendants have reserved the right to oppose class certification in the absence of a settlement, and Plaintiffs expect that they would do so by, among other things, challenging market efficiency and attempting to prove the absence of price impact. Van Declaration, ¶ 60. There could be no assurance that class certification would be granted, or that a certified class could be maintained through trial. Thus, without the Settlement, the Class risked that certification would not be granted. *See, e.g.*, *In re Datatec Sys. Sec. Litig.*, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007). Moreover, even if a class were certified over Defendants' objections, maintaining certification through possible appeals is expensive and risky. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347-66 (2011) (reversing certification order that was obtained in 2004 and affirmed by a Ninth Circuit panel in 2007 and *en banc* in 2010).

- 18 -

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**6.    Ability of Defendant to Withstand a Greater Judgment**

This *Girsh* factor is not relevant to the Court's analysis because "Neither party has suggested that the Settlement Amount was in any way related to [GSX's] ability to pay." *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *6 (D.N.J. May 3, 2022)

**7.    The Settlement Puts the Settlement Fund Well Within the Range of Reasonableness in Light of the Best Possible Recovery and All Attendant Risks of Litigation**

The eighth and ninth *Girsh* factors ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *NFL*, 821 F.3d at 440. These factors "test two sides of the same coin:  reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* When assessing the eighth and ninth *Girsh* factors, courts "must take seriously the litigation risks inherent in pressing forward with the case." *Id.*

Here, the eighth and ninth *Girsh* factors favor approval. As set forth above, the guaranteed recovery of $9.5 million is a significant win for the class given, among other things, the uncertainty of the case moving forward, discovery hurdles, and potential future motions for summary judgement and class certification. Van Declaration, ¶ 62. The Settlement Amount represents approximately 6.86% of the $138.5 million total maximum damages potentially available in this Action under the two loss causation dates sustained by the Court.[5] *Id.*; s*ee* Declaration of Zachary Nye, Ph.D ("Nye Declaration") (ECF No. 165-1), ¶ 16; ECF No. 155-10 (preliminary damages report prepared by Plaintiffs' financial expert). If Defendants' arguments against these loss causation dates were accepted by the trier of fact, the maximum recoverable damages could be

---

[5]    While including the two other loss causation dates that the Court did not reach, would be highly speculative, under such an analysis (*see* ECF No. 155-11 (second preliminary damages report prepared by Plaintiffs' financial expert)), the estimated maximum damages would be $974.7 million. Under this analysis, the Settlement Amount would represent approximately 0.97% of the total maximum damages available in this Action.

- 19 -

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

drastically reduced or eliminated.  Van Declaration, ¶ 62.  This recovery is within the range of reasonableness for securities class action settlements in cases of this size.  *See* Laarni Bulan & Eric Tam, Securities Class Action Settlements – 2025 Review and Analysis (Cornerstone Research 2026), at 7 (finding a median settlement recovery of 6.5% in securities class actions asserting Section 10(b) claims in 2025)[6]; Edward Flores, et al., Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review, at 28 (Fig. 24) (NERA Jan. 21, 2026) (showing the median settlement value in securities class actions in 2025 was 1.5% of estimated damages, and for cases between 2016–2025, the median settlement value ranged between 1.2% and 2.5% of estimated damages[7]; *Lazy Oil Co. v. Witco Corp.*, 95 F.Supp.2d 290, 339 (W.D. Pa. 1997) (collecting cases where courts approved class action settlements providing from 0.2%-16% of potential recovery), *aff'd*, 166 F.3d 581 (3d Cir. 1999).[8]  Here, the proportion of recovered damages is significantly higher than the median and would rise further if not every Class Member files a claim.

### D.      The Settlement Meets All Requirements of Rule 23(e)

Rule 23(e) lists four factors for court consideration in determining fairness:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats class members equitably relative to each other.

---

[6]      https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf.

[7]      https://www.nera.com/insights/publications/2026/recent-trends-in-securities-class-action-litigation--2025-full-y.html?lang=en.

[8]      *See also, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Fed. R. Civ. P. 23(e).

Sections A, B, and C (i-ii) are addressed, *supra*. The proposed fee award (Section C (iii)) is discussed in the accompanying Motion for an Award of Attorneys' Fees and Expenses and Awards for Plaintiffs, which demonstrates that Lead Counsel's request for 33.3% of the Settlement Fund is fair and reasonable. The Settlement does not contemplate any specific award. Van Declaration, ¶ 65. As set forth in the Long Notice (ECF No. 165-6 at 2,9), Plaintiffs have disclosed that Lead Counsel will apply for an award of attorneys' fees of up to 33.3% of the Settlement Amount, as well as reimbursement in an amount not to exceed $500,000 for expenses incurred in connection with the prosecution and resolution of this Action and compensatory awards to Plaintiffs, which is typical for similar securities fraud litigations. *See, e.g., Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at \*15 (D.N.J. Sept. 10, 2009) (awarding 33% of $13.5 million settlement), *aff'd*, 423 F. App'x 131 (3d Cir. 2011). With respect to the identification of agreements pursuant to Rule 23(e)(3) (Section C (iv)), the Stipulation notes that the parties have entered into a Supplemental Agreement, as is standard practice in securities fraud class action settlements. *See* Van Declaration ¶ 66; Stipulation ¶ 41. It provides Defendants with the option to terminate the Settlement if Settlement Class Members who meet certain criteria exclude themselves from the Settlement Class. *Id.* To protect the Settlement Class, the Supplemental Agreement is confidential. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015). "The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair." *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018). Finally, as discussed, *infra*, the Plan of Allocation treats all Settlement Class Members equitably.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

E.       The *Prudential* Factors Support Approval

The Third Circuit suggests that courts may consider whether the Settlement meets factors set out in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) ("*Prudential*").  While courts *must* consider the *Girsh* factors, the *Prudential* factors merely "illustrat[e]" additional analyses courts *may* conduct.  *See California v. Teva Pharm. Indus., Ltd.*, 2020 WL 3128027, at *7 (E.D. Pa. June 10, 2020).  The *Prudential* factors relevant to this case are whether class members may opt out of the settlement, which they can (*see* Long Notice, ECF No. 165-6 at 3,8), and whether the procedure for processing individual claims is fair and reasonable.  *Prudential.* 148 F.3d at 323-24.[9]  Plaintiffs propose a procedure for processing claims based upon transactional records that is standard in securities fraud class actions and has been repeatedly found by courts to be reasonable and sufficient.  *See Ocean Power*, 2016 WL 6778218, at *24 (noting that these "claim-processing procedures are the standard ones used in securities class-action settlements"); *see also DFC*, 2017 WL 4167440, at *6.  The Settlement calls for all Settlement Class Members to be effectively apprised of the Settlement, the reasons for settling, and the risks and potential benefits of continued litigation.  Van Declaration, ¶ 63.  The Notice also informs Class Members how the net proceeds of the Settlement will be equitably and effectively distributed among Settlement Class Members who opt to participate in the Settlement by returning a valid claim form.  *Id.*; *see* Long Notice (ECF No. 165-66), ¶¶12-15.  For these reasons, the *Prudential* factors support Lead Plaintiff's request for final approval of the Settlement.

---

[9]       The majority of the *Prudential* factors are irrelevant here.  There were no individual lawsuits filed, and thus, no experience in adjudicating individual actions.  Scientific knowledge as understood in *Prudential* is not relevant here.  The extent of discovery on the merits is addressed above in response to the third *Girsh* factor.  There are no other classes, subclasses, or claimants.  Approval of the Settlement does not depend on approval of attorneys' fees.  Whether attorneys' fees are reasonable, a *Prudential* factor, is therefore irrelevant.  *Id.* at 323.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER RULE 23

The following Settlement Class has already been preliminarily certified under Rule 23:

All persons and entities that purchased or otherwise acquired ADSs, evidenced by ADRs, of GSX from June 6, 2019 through October 20, 2020 inclusive, including those who purchased ADSs in or traceable to the Company's initial public offering on or about June 6, 2019, or GSX's secondary public offering on or about November 20, 2019, and were damaged thereby.

> Excluded from the Settlement Class are: (1) Defendants; (ii) members of the Immediate Families of the Individual Defendants and the directors and officers of GSX; (iii) any person who was an officer or director of GSX during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) the Company's employee retirement and benefit plan(s), if any, and their participants or beneficiaries; (vi) the legal representatives, affiliates, subsidiaries, parents, heirs, heirs apparent, beneficiaries, successors-in-interest, or assigns of any such excluded person or entity in (i)-(v), in their respective capacity as such; (vii) Judge Michael E. Farbiarz, Judge Esther Salas, Magistrate Judge José R. Almonte, and their current or former chambers staff, and any of their family members; and (viii) any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

Preliminary Approval Order, ¶ 2.

Plaintiffs respectfully request that the Court grant final certification of the Settlement Class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The circumstances supporting the Court's analysis in preliminarily certifying the class are still present: the requirements under Rule 23(a) (numerosity, commonality, typicality, and adequacy) and Rule 23(b)(3) (predominance and superiority) are met.[10]

### A.    Numerosity

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). While there is no mandatory minimum, "the Third

---

[10]    The Court is not required to determine whether the Action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Circuit has previously held that the numerosity requirement will generally be satisfied 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40.'" *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *4 (D.N.J. Nov. 29, 2020) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). As of the April 28, 2026, the Claims Administrator has mailed over 32,951 potential Class Members and nominees. *See* Segura Decl., ¶ 12. Joinder of such numerous plaintiffs would be exceedingly difficult and impracticable.

### B.     Commonality

Commonality is met where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 564 U.S. at 369. As in most securities class actions, the dispute in this Action focused on common issues relating to alleged violations of federal securities laws, misrepresentations and omissions of material fact made to the market as a whole, and scienter. All Class members were injured because of common misrepresentations and omissions, and all assert the same legal claims. *Id.* Accordingly, this Action meets the commonality requirement. *See, e.g.*, *Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019); *In re DVI, Inc. Sec. Litig.*, 249 F.R.D. 196, 201 (E.D. Pa. 2008), *aff'd,* 639 F.3d 623 (3d Cir. 2011).

### C.     Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Third Circuit has "set a 'low threshold' for typicality" so that "'[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct.'" *NFL.*, 821 F.3d at 428.

- 24 -
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Here, all claims derive from the same legal theories and allege the same set of operative facts. Thus, typicality is established. *See, e.g.*, *Pope v. Navient Corp.*, 2021 WL 926611, at \*7 (D.N.J. Mar. 11, 2021) (finding typicality "easily satisfied" where, like here, "Lead Plaintiff is asserting the same claims—both in terms of the legal theory advanced and the factual circumstances underlying the theory—as the class.").

## D.    Adequacy

"Determining adequacy involves a two-part inquiry:  (1) 'the named plaintiff's interests must be sufficiently aligned with the interests of the absentees;' and (2) 'the plaintiff's counsel must be qualified to represent the class.'" *Pope*, 2021 WL 926611, at \*7.  Both elements are easily satisfied here.  Plaintiffs have a financial stake in this Action and have proven their adequacy by zealously advancing the Class's interests.    Lead Counsel possess extensive experience in successfully prosecuting securities fraud class actions and routinely serve as lead counsel in securities class actions in federal courts and have won substantial recoveries for classes represented by the firm. *See* ECF No. 7-3, Exbibit B (Pomerantz Firm Resume).  Additional Plaintiffs' Counsel are highly respected and skilled attorneys in securities litigation and have successfully litigated a multitude of securities class actions for the benefit of classes nationwide. *See* ECF No. 6-7 (Rosen Firm Resume); Labaton Decl., Exhibit C (Labaton Firm Resume).

## E.    Predominance

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b).  Fed. R. Civ. P. 23.  Here, Plaintiffs seek to certify a settlement class under Rule 23(b)(3). *Id.*  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *NFL*, 821 F.3d at 434. "The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification." *Weisfeld v. Sun Chem.*

*Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004).  Here, common questions predominate because Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members.  *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 122 (D.N.J. 2002) (predominance element satisfied where plaintiff alleged that defendant's material misstatements caused the class to suffer damages).   Damages will be calculated on a class-wide basis.  Thus, as in many securities fraud class actions, the predominance requirement is "readily met."  *Amchem*, 521 U.S. at 625.

### F.    Superiority

Under Rule 23(b)(3), a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy."  "In determining whether a class action is the superior form of handling a case, a court must 'balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternate available methods' of adjudication."  *Shapiro v. All. MMA, Inc.*, 2018 WL 3158812, at *6 (D.N.J. June 28, 2018).  Class treatment is often deemed superior in negative value cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually.  *Id.*  Without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical recourse. Here, the potential Settlement Class Members number in the tens of thousands and many are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative.  *See* Segura Decl. ¶ 12; *AremisSoft*, 210 F.R.D. at 122 ("[W]hile damage estimates collectively soar into the millions, each Class Member's individual damages are minimal [which] often result in few Class Members bringing their own suit.").

### V.    THE COURT SHOULD FINALLY APPROVE LEAD COUNSEL AS CLASS COUNSEL

Pursuant to Federal Rule of Civil Procedure 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class.  *See*

Fed. R. Civ. P. 23(g)(1).  In determining class counsel, the Court must consider: (i) the work undertaken by counsel in identifying or investigating the potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id*; *Shapiro*, 2018 WL 3158812, at *5.

Previously, the Court effectively acknowledged the qualifications of Pomerantz when it appointed the firm as Lead Counsel.  *See* ECF No. 9.  Lead Counsel have actively advanced the Settlement Class's claims, have committed massive time, resources, and skills to the successful representation of the Class, and at all times have acted in the best interests of the Settlement Class.  *See* Van Declaration,  ¶¶ 29, 32, 72-74.  Plaintiffs respectfully request that the Court finally approve Pomerantz as Class Counsel.

## VI.     NOTICE TO THE CLASS COMPLIED WITH THE COURT'S PRELIMINARY APPROVAL ORDER AND SATISFIED RULE 23 AND DUE PROCESS

The notice plan of the proposed Settlement to the Class Members satisfied the requirements of Rule 23, §21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, the U.S. Constitution (including the Due Process Clause), the Rules of Court, and any other applicable law and constituted the best notice practicable to Settlement Class Members under the circumstances of this Action.  Preliminary Approval Order, ¶ 7.  Due process and Rule 23(c)(2) direct that the notice be "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacqelin,* 417 U.S. 156, 173-75 (1974).  Rule 23(e) directs "notice in a reasonable manner." Fed. R. Civ. P. 23(e)(1)(B); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (under Rule 23(e), notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Both the substance of the Notice and the means of dissemination satisfy these standards. It included: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement on both an aggregate and average per share basis; (iv) a description of the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought; (vii) how to opt-out of the Settlement Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (ix) provides the contact information of the Claims Administrator and Lead Counsel, who will be available to answer questions from Class Members and (x) the binding effect of a judgment on Settlement Class Members. Van Declaration, ¶ 70; *see* ECF No. 165-6.

The Claims Administrator, JND, a nationally recognized third-party claims administrator, carried out the notice plan under Lead Counsel's supervision. Van Declaration, ¶ 12. The Court approved the notice documents and notice plan in its Preliminary Approval Order. As the Court ordered, the Notice and Proofs of Claim (together, the "Notice Packet") were initially mailed to 4,901 Settlement Class Members. Segura Decl., ¶¶ 4-7. After receiving additional names and addresses of potential Class Members from brokerage firms, banks, institutions, and other nominees, the Notice Packet has been, or will be, mailed to a cumulative total of 32,951 potential Class Members and their nominees. *Id.*, ¶¶ 11-12. Summary Notice was also published over *PR Newswire* on March 26, 2026, directing potential Class Members to a settlement website, which contains the Notice Packet (including Chinese-translated versions), Stipulation, and other documents. *Id.*, ¶ 15. Additionally, the Claims Administrator has maintained a toll-free telephone number. *Id.*, ¶ 14. To date, no Settlement Class Members have objected to the Settlement, and no exclusion requests have been received. *Id.*, ¶¶ 17-18.

This combination of individual first-class mail and/or email to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely

circulated publication, transmitted over the newswire, and posted on the internet, was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause").

## VII.   THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE

The Plan of Allocation set forth in the Long Notice (ECF No. 165-6) and preliminarily approved by the Court is "fair and reasonable as to all participants in the fund." *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011). An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. *See Royal Dutch/Shell*, 2008 WL 9447623, at *23.

The Plan of Allocation is fair, reasonable, and has a rational basis. It was formulated by Lead Counsel and Plaintiffs' damages expert, and is based, in part, on an event study of the ADS price reactions that occurred following the alleged corrective events. Van Declaration, ¶ 68; Nye Declaration, ¶¶ 4-11. No preferential treatment will be provided to Plaintiffs or other Settlement Class Members. Van Declaration, ¶ 68; Nye Declaration, ¶¶ 4-11; *see In re: Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL 7638464, at *1 (D.N.J. June 7, 2016). The Plan of Allocation provides that each Settlement Class Member will receive a *pro rata* distribution pursuant to the formulas for calculating Recognized Losses. Van Declaration, ¶ 68. Plaintiffs and all other Settlement Class Members will receive their payment pursuant to the same formula. *Id.* Even after the mailing of over 32,951 Notice Packets which included the Plan of Allocation and directed Settlement Class Members to Plan of Allocation information on the Claims Administrator's website, no one objected. Segura Decl. ¶ 18. Similar plans are routinely approved by Third Circuit courts. *See,*

*e.g.*, *Kanefsky*, 2022 WL 1320827, at \*6; *In re Toronto-Dominion Bank Sec. Litig.*, 2019 WL 12323620, at \*4 (D.N.J. Oct. 4, 2019).

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement, finally certify the Settlement Class to effectuate the Settlement, appoint Lead Counsel as Class Counsel, finally approve the Plan of Allocation, and enter the proposed Final Judgment and Order.

Dated:  April 30, 2026

Respectfully submitted,

**POMERANTZ LLP**

<u>/s/ Austin P. Van</u>
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

*Lead Counsel for Lead Plaintiff Yang Renbin, and Additional Plaintiffs Corey Hays and Alexandre Tazi*

**THE ROSEN LAW FIRM, P.A**
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Telephone:  (973) 313-1887
Facsimile:  (973) 833-0399
Email:  lrosen@rosenlegal.com

Jing Chen
Jonathan Horne
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827
Email:  jchen@rosenlegal.com
Email: jhorne@rosenlegal.com

Junbo Hao
**HAO LAW FIRM**
**BEIJING HAO JUNBO LAW FIRM**
Room 3-401 No. 2 Building,
No. 1 Shuangliubei Street
100024  Beijing
People's Republic of China
Telephone:  +86 137-1805-2888
Email:  jhao@haolaw.cn

*Additional Counsel for Lead Plaintiff and Additional Plaintiff Robert Angeline*

- 31 -
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT