**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YANG RENBIN, ROBERT ANGELINE, COREY HAYS, and ALEXANDRE TAZI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>GSX TECHEDU INC., LARRY XIANGDONG CHEN, NAN SHEN, XIN FAN, YIMING HU, MING LIAO, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES, INC., BARCLAYS CAPITAL, INC., BOFA SECURITIES, INC., CLSA LIMITED, and GOLDMAN SACHS (ASIA) L.L.C.,<br><br>        Defendants. | **Case No. 2:20-CV-04457 (MEF) (JRA)** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS FOR PLAINTIFFS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     PLAINTIFFS' COUNSEL'S EFFORTS ON BEHALF OF THE CLASS ........................ 5

III.    ARGUMENT.............................................................................................................. 7

        a.      The Court Should Award the Reasonable Percentage of the Common
                Fund Proposed Here for Attorneys' Fees to Plaintiffs' Counsel ............................ 7

        b.      Analysis of the Relevant Factors Confirms that the Requested Fee
                Is Reasonable ................................................................................................. 9

                1.      Awards at or Above the Requested Fee Amount Are Routinely
                        Granted in Similar Cases ............................................................. 10

                2.      Complexity and Duration of the Litigation Favor the Requested Fee ...... 11

                3.      Skill and Efficiency of Attorneys Support the Requested Fee ................. 13

                4.      Risk of Non-Payment Favors the Requested Fee Here............................. 15

                5.      The Size of the Fund Also Weighs in Favor of the Requested Fee .......... 17

                6.      The Lodestar Cross-Check and the Time Devoted to the Litigation
                        and Support the Fee Application................................................. 19

                7.      The Lack of Objections or Requests for Exclusion Also Strongly
                        Supports the Fee Application...................................................... 20

                8.      Innovative Terms of the Settlement........................................................... 21

                9.      Analysis of the Value of Benefits Attributable to the Efforts of
                        Class Counsel Relative to the Efforts of Other Groups ........................... 21

        c.      Plaintiffs' Counsel's Expenses Were Reasonably Incurred and Necessary
                to the Prosecution of This Litigation .................................................................... 22

        d.      The Proposed Compensatory Award to Plaintiffs Should Be Granted................. 22

IV.     CONCLUSION......................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................................................................16

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)........................................................................20

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ..........................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)..............................................................................................................7

*Blum v. Stenson*,
  465 U.S. 886 (1984)........................................................................................................8, 11

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..............................................................................................................7

*Brown v. Esmor Corr. Servs., Inc.*,
  2005 WL 1917869 (D.N.J. Aug. 10, 2005) ..........................................................................3

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................................16

*Dartell v. Tibet Pharms, Inc.*,
  2017 WL 2815073 (D.N.J. June 29, 2017)..........................................................................11

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................................................15

*Fogarazzo v. Lehman Bros.*,
  2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)........................................................................11

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..................................................................................................15

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000).........................................................................................4, 7, 10

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010).....................................................................13, 22

*Hegab v. Fam. Dollar Stores, Inc.*,
    2015 WL 1021130 (D.N.J. Mar. 9, 2015)................................................................8

*Hensley v Eckerhart*,
    461 U.S. 424 (1983)...............................................................................................17

*Huffman v. Prudential Ins. Co. of Am.*,
    2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .......................................................3, 10

*In re Aetna Inc.*,
    2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...............................................................18

*In re Alstom S.A. Sec. Litig.*,
    741 F. Supp. 2d. 469 (S.D.N.Y. 2010)...................................................................16

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109, 132 (D.N.J. 2002)..................................................................14, 19

*In re AT & T Corp., Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006)......................................................................... *passim*

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ...................................................................14

*In re Cendant Corp. Derivative Action Litig.*,
    232 F. Supp. 2d 327 (D.N.J. 2002) .......................................................................18

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001).....................................................................................8

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .................................................................................15

*In re Corel Corp. Inc. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ..................................................................3, 15

*In re Datatec Sys., Inc. Sec. Litig.*,
    2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...........................................................11

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009).....................................................................................10

*In re Domestic Drywall Antitrust Litig.*,
    2018 WL 3439454 (E.D. Pa. July 17, 2018)............................................................8

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    2012 WL 6184269 (D.Mass. 2012) .......................................................................23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................................13

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ...........................................................22

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................................3

*In re Genta Sec. Litig.*,
   2008 WL 2229843 (D.N.J. May 28, 2008) .....................................................11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)................................................................................8

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).........................................................8, 11, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)............................................................22

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012).....................................................................10, 11

*In re Marsh & McLennan Cos. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...........................................16, 23

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...........................................................15

*In re Ocean Power Techs., Inc.*,
   2016 WL 6778218 (D.N.J. Nov. 15, 2016) .....................................................14

*In re Petrobras Sec. Litig.*,
   312 F.R.D. 354 (S.D.N.Y. 2016),
   *aff'd in part*, *vacated in part on other grounds*, 862 F.3d 250 (2d Cir. 2017) ..........................5

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)............................................................... *passim*

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005) .............................................................19

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005).............................................................................9

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ...................................................................10

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
   2012 WL 1964451 (D.N.J. May 31, 2012) ........................................................15

*In re Silvercorp Metals, Inc. Sec. Litig.*,
   No. 12-cv-9456, ECF No. 81 (S.D.N.Y. Feb. 13, 2015) ........................................22

*In re Toronto-Dominion Bank Sec. Litig.*,
   2019 WL 12323620 (D.N.J. Oct. 4, 2019) ...............................................3, 5, 22

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
   2022 WL 525807 (D.N.J. Feb. 22, 2022) ...........................................................4

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .........................................................9

*In re Veritas Software Corp. Sec. Litig.*,
   396 F. App'x 815 (3d Cir. 2010) ....................................................................3

*In re Vivendi Universal, S.A., Sec. Litig.*,
   2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) .........................................................16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ..............................................................16

*Inventus Power v. Shenzhen Ace Battery*,
   339 F.R.D. 487 (N.D. Ill. 2021) ....................................................................13

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ....................................................................................7

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..............................................................11

*Milliron v. T-Mobile USA, Inc.*,
   423 F. App'x 131 (3d Cir. 2011) .....................................................................2

*Morrison v. Nat'l Bank of Austl.*,
   561 U.S. 247 (2010) ....................................................................................16

*Payton-Fernandez v. Burlington Stores, Inc.*,
   2024 WL 5202421 (D.N.J. Dec. 23, 2024) .........................................................18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ......................................................................16

v

*Schuler v. Med. Co.*,
   2016 WL 3457218 (D.N.J. June 24, 2016) ................................................................10

*Silverberg v. People's Bank*,
   23 F. App'x 46 (2d Cir. 2001) ...................................................................................11

*Stevens v. SEI Invs. Co.*,
   2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ................................................................3

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) ..............................................................................21, 22

*Wu v. GSX Techedu Inc.*,
   738 F. Supp. 3d 527 (D.N.J. June 25, 2024) ..........................................................12

**Statutes**

15 U.S.C. § 78u-4 ...........................................................................................................8, 22

Private Securities Litigation Reform Act of 1995 ...................................................8, 9, 22

Securities Exchange Act of 1934 ...........................................................................................12

**Rules**

Fed. R. Civ. P. 1 .................................................................................................................19

Lead Plaintiff Yang Renbin and Additional Plaintiffs Robert Angeline, Corey Hays, and Alexandre Tazi (collectively, "Plaintiffs"), and Lead Counsel Pomerantz LLP ("Pomerantz"), Additional Counsel The Rosen Law Firm, P.A. ("Rosen"), and The Hao Law Firm ("Hao") (together, "Plaintiffs' Counsel"),[1] respectfully submit this Memorandum of Law in support of their Motion for an Award of Attorneys' Fees and Expenses and Compensatory Awards to Plaintiffs.

## I.      INTRODUCTION

Plaintiffs have obtained a cash Settlement of $9,500,000 for the benefit of the Settlement Class to resolve this securities class action against Defendants GSX Techedu, Inc. n/k/a Gaotu Techedu Inc. ("GSX"), Larry Xiangdong Chen, and Nan Shen (collectively, "Defendants").[2] As explained in the contemporaneously filed submissions in support of the Settlement, Plaintiffs achieved this favorable result despite serious obstacles to recovery, reflecting the vigorous and diligent prosecution of the litigation by Plaintiffs' Counsel. Plaintiffs' Counsel, who have received no payment to date, now move for an award of 33.3% of the $9,500,000 recovered for the Settlement Class, a fee of $3,163,500, plus accrued interest. As articulated more fully below, Plaintiffs' Counsel's diligence and substantial efforts during the nearly six years that this Action has been pending generated a total lodestar value of $2,958,310.55. Plaintiffs' Counsel's request for a fee of $3,163,500 therefore amounts to a request for only 1.07 times the value of the labor they contributed. An award that amounts to this minimal multiplier is consistent with—indeed lower than—awards standardly granted in courts throughout the country in securities class actions like this. The complexity and risks of this securities-fraud class action, which Plaintiffs' Counsel

---

[1]      Counsel at Labaton Keller Sucharow ("Labaton") also provided valuable assistance to Plaintiffs' Counsel for the benefit of the Settlement Class.

[2]      Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated June 5, 2025 (the "Stipulation") (ECF No. 155-3), preliminarily approved by this Court on February 19, 2026 (ECF No. 169).

undertook on a contingency-fee basis, even after claims were fully dismissed after the first round of motion to dismiss briefing, also amply support the requested fee. Additionally, this request is consistent with Plaintiffs' Counsel's retainer agreements with Plaintiffs, and all Plaintiffs have determined the request to be reasonable. *See* Declaration of Yang Renbin in Support of (1) Final Approval of Proposed Settlement; and (2) Award of Attorneys' Fees and Expenses, and Awards for Plaintiffs ("Yang Decl."), attached as Exhibit 5 to the Declaration of Austin P. Van in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan of Allocation and Unopposed Motion for an Award of Attorneys' Fees and Expenses and Awards for Plaintiffs ("Van Declaration"), submitted herewith; Declaration of Robert Angeline in Support of 1) Final Approval of Proposed Settlement; and (2) Award of Attorneys' Fees and Expenses and Awards for Plaintiffs ("Angeline Decl."), attached as Exhibit 6 to the Van Declaration; Declaration of Corey Hays in Support of 1) Final Approval of Proposed Settlement; and 2) Award of Attorneys' Fees and Expenses and Awards for Plaintiffs ("Hays"), attached as Exhibit 7 to the Van Declaration; Declaration of Alexandre Tazi in Support of 1) Final Approval of Proposed Settlement; and 2) Award of Attorneys' Fees and Expenses and Awards for Plaintiffs ("Tazi Decl."), attached as Exhibit 8 to the Van Declaration.[3]

The requested award is reasonable under the percentage-of-recovery method favored in the Third Circuit. *See Milliron v. T-Mobile USA, Inc.,* 423 F. App'x 131, 135 (3d Cir. 2011) ("The

---

[3] The Van Declaration and the attached fee declarations are an integral part of this submission. Plaintiffs respectfully refer the Court to them for a detailed description of the factual and procedural history of the Action, the claims asserted, Plaintiffs' and Plaintiffs' Counsel's investigation and litigation efforts, the negotiations leading to the Settlement, and the fairness and reasonableness of the Settlement, the Plan of Allocation, and counsel's request for an award of attorneys' fees and expenses and compensatory awards for each Plaintiff.

percentage-of-recovery method is favored in common fund cases, such as the settlement here.").[4]

Courts within the Third Circuit have routinely awarded legal fees amounting to one third of settlement funds. *See, e.g.*, *In re Toronto-Dominion Bank Sec. Litig.*, 2019 WL 12323620, at *2-3 (D.N.J. Oct. 4, 2019) (awarding 33.3% of $13,250,000 settlement); *Brown v. Esmor Corr. Servs., Inc.*, 2005 WL 1917869, at *14 (D.N.J. Aug. 10, 2005) (awarding 33.3% of $2.5 million settlement fund); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. 2003) (awarding 33.3% of $7 million settlement); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432-34 (E.D. Pa. 2001) (awarding one-third of a $48 million settlement and collecting cases); *see also Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *7 (E.D. Pa. Apr. 5, 2019) ("[O]ne-third of the settlement fund . . . is the 'benchmark' percentage for an award to counsel").

A lodestar cross-check confirms the reasonableness of the fee request. Third Circuit precedent makes plain that percentage awards resulting in multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 819 (3d Cir. 2010); *see also Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving fee award resulting in a multiplier of 6.16; "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis"). Here, Plaintiffs' Counsel have spent, in the aggregate, 3,164.74 hours in the prosecution of this case against Defendants, with a lodestar of $2,958,310.55.[5] *See* Declaration of Austin P. Van Regarding Fees and Expenses of Pomerantz LLP ("Pomerantz Decl.," attached to the Van Declaration. as

---

[4]    Unless otherwise noted, all internal quotations and citations are omitted.
[5]    This total includes both the lodestar of Lead Counsel ($2,305,784.00), Rosen ($532,603.05), and Labaton ($119,923.50), but excludes any time spent preparing this motion for attorneys' fees and expenses or the supporting documentation thereto.

Exhibit 2), Exhibit A; Declaration of Jonathan Horne on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Decl.," attached to the Van Declaration as Exhibit 3) ¶ 3; and Declaration of Thomas G. Hoffman, Jr. Regarding Fees and Expenses of Additional Counsel Labaton Keller Sucharow LLP ("Labaton Decl.," attached to the Van Declaration as Exhibit 4) Exhibit A. This results in a multiplier of 1.07 (*see* Van Declaration ¶ 14), which provides "strong evidence that the requested fees are reasonable." *In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022).

That no Settlement Class Members objected after receiving Notice that Lead Counsel would seek on behalf of Plaintiffs' Counsel up to 33.3% (or one-third) of the settlement for attorney fees and reimbursement of expenses also strongly weighs in favor of the requested fees. Additionally, other factors identified as relevant by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 197–99 (3d Cir. 2000) and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336–40 (3d Cir. 1998), support the requested fee award.

In addition, Plaintiffs' Counsel respectfully request reimbursement of $248,681.70 in expenses that they reasonably and necessarily incurred in prosecuting this litigation.[6] *See* Pomerantz Decl., Exhibit B; Rosen Decl. ¶ 5; and Labaton Decl., Exhibit B.

Plaintiffs also request that their significant contributions to the successful settlement of this case be compensated. Each has conferred with Plaintiffs' Counsel on numerous occasions. Each had discussions about the claims, litigation, and settlement strategies, reviewed filings, produced documents, and provided authorization to Plaintiffs' Counsel for the amounts to be sought in the settlement negotiations. *See* Van Declaration, Exhibit 5 (Yang Decl.); Exhibit 6 (Angeline Decl.);

---

[6]    This total includes both the expenses incurred by Lead Counsel ($221,560.88), Rosen ($18,568.25), and Labaton ($8,552.57).

Exhibit 7 (Hays Decl.); Exhibit 8 (Tazi Decl.).  Therefore, Lead Counsel requests that the Lead

Plaintiff and three Additional Plaintiffs each receive a compensatory award of $10,000 ($40,000

in total), an amount both reasonable and well-deserved here.  *See, e.g.*, *Toronto-Dominion*, 2019

WL 12323620, at *4 (awarding lead plaintiffs $15,000 each).

## II.    PLAINTIFFS' COUNSEL'S EFFORTS ON BEHALF OF THE CLASS

Lead Counsel is one of the oldest and most experienced plaintiff-side litigation firms in the

U.S., with extensive experience in securities class-action litigation.  Van Declaration ¶ 72; *see* ECF

No. 7-3, Exhibit B (Pomerantz Firm Resume).  Pomerantz has been appointed as lead or co-lead

counsel in many complex securities class actions and has recovered substantial monies for clients

and class members, including the three billion-dollar ($3,000,000,000) landmark settlement

obtained in a securities-class-action litigation against Brazilian oil giant, Petróleo Brasileiro S.A.

—Petrobras.  It has prosecuted hundreds of such cases to successful resolution in its 80-year

history.  *Id.*  Courts routinely acknowledge Pomerantz's securities litigation strengths.  *See, e.g.*,

*In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) ("[O]n the basis not only of [the

Firm's] prior experience but also the Court's observation of its advocacy over the many months

since it was appointed lead counsel, the Court concludes that Pomerantz, the proposed class

counsel, is qualified, experienced and able to conduct the litigation."), *aff'd in part*, *vacated in part*

*on other grounds*, 862 F.3d 250 (2d Cir. 2017).  Additional Plaintiffs' Counsel are highly respected

and skilled attorneys in securities litigation and have successfully litigated a multitude of securities

class actions, for the benefit of classes nationwide.  Van Declaration ¶ 72; *see* ECF No. 6-7 (Rosen

Firm Resume); Labaton Decl., Exhibit C (Labaton Firm Resume).

As Lead Counsel, Pomerantz was responsible for the conduct and oversight of this Action,

which it and Plaintiffs' Counsel zealously prosecuted on behalf of Plaintiffs and the Settlement

Class. Van Declaration ¶ 73. The tasks performed by Pomerantz with the valuable service of all

the additional Plaintiffs' Counsel include, *inter alia*, the following:

a. Strategic analysis and case investigation, including, without limitation, having conducted factual research, oversaw the investigator team, consulted with experts, researched applicable laws, and assessed potential claims;

b. Preparing and filing briefing in connection with motion for appointment of lead plaintiff;

c. Retaining and working with investigators to locate and interview confidential witnesses;

d. Reviewing and analyzing GSX's Class Period SEC filings, annual reports, press releases, quarterly earnings calls and industry and investment conference transcripts, and other public statements;

e. Collecting and reviewing a comprehensive compilation of analyst reports and major financial news service reports on GSX;

f. Reviewing and analyzing stock trading data relating to GSX;

g. Working with a damages expert, including retaining and consulting with the expert and analyzing and exchanging write-ups at various phases of the litigation and during the mediation and settlement process;

h. Drafting the detailed amended complaints;

i. Preparing and filing briefing in connection with oppositions to Defendants' motion to dismiss the First Amended Complaint ("FAC");

j. Conducting additional research and investigations to bolster the allegations for the Second Amended Complaint ("SAC");

k. Preparing and filing briefing in connection with the successful opposition to Defendants' motion to dismiss the SAC;

l. Engaging in initial discovery, including conducting conferences with Defendants' counsel, filing a motion for a protective order, and drafting portions of the Parties' joint letter to the Court outlining several discovery disputes;

m. Researching and drafting briefing in opposition to Defendants' motion to strike Plaintiffs' Second Amended Complaint;

6

n.  Conducting both mediation and resolution-related efforts, including, without limitation, drafting and revising a mediation statement and compilation of related exhibits, making all presentations to mediators and all offers and counter-offers within the mediation framework, engaging in numerous telephonic and resolution-oriented discussions and negotiations with Defendants' counsel, and drafting and revising all settlement-related documents and court papers;

o.  Negotiating, drafting, revising, and finalizing the MOU;

p.  Negotiating, drafting, revising, and finalizing the Stipulation and its exhibits;

q.  Preparing the motion papers and related documents necessary to provide notice of the Settlement to Settlement Class Members;

r.  Obtaining preliminary approval of the Settlement, and thereafter, worked with the Claims Administrator to effectuate notice and oversee the administration process; and

s.  Preparing the motion papers and related documents necessary to obtain final approval of the Settlement.  *Id.*

Lead Counsel will also prepare for and appear at the final approval hearing on the Settlement and will continue to oversee administration of the Settlement.  *Id.*

**III.    ARGUMENT**

    **a.    The Court Should Award the Reasonable Percentage of the Common Fund Proposed Here for Attorneys' Fees to Plaintiffs' Counsel**

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  This ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation."  *See Gunter*, 223 F.3d at 198.  The Supreme Court has repeatedly underscored the importance of this purpose, noting that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).  "The awarding of fees is within the discretion

of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous." *Hegab v. Fam. Dollar Stores, Inc.*, 2015 WL 1021130, at *10 (D.N.J. Mar. 9, 2015) (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001)).

Where counsel has created a common fund, attorneys' fees should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ."). The Third Circuit has similarly held that "[t]he percentage-of-recovery method is favored in class action settlements involving a common fund, allowing the court to award attorneys' fees 'in a manner that rewards counsel for success and penalizes it for failure.'" *See In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454, at *2 (E.D. Pa. July 17, 2018) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)). The theory underlying the use of the percentage-of-recovery method is that "the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class." *Id*. (quoting *GMC*, 55 F.3d at 821); *see also In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 193 (E.D. Pa. 2000) (noting that the percentage-of-recovery method "permits courts to reward success and penalize failure more directly" than a lodestar determination).

The determination of attorneys' fees using the percentage-of-recovery method is also supported by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method in assessing fees for securities

8

class actions. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007) (noting that the PSLRA appears to favor the percentage method because it "provides that an award of fees and expenses should constitute 'a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class'").

The lodestar method, which involves multiplying the number of hours reasonably expended by a reasonable hourly rate and then applying a multiplier intended to "account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work," is often then used to cross-check the reasonableness of a percentage-of-recovery fee award. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305–06 (3d Cir. 2005). However, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT & T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).

Given that both the Supreme Court and the Third Circuit favor the percentage method in determining attorneys' fees in common fund cases, Lead Counsel respectfully submits that the Court should award attorneys' fees based on a reasonable and commonly awarded percentage of the fund recovered for the Settlement Class under similar circumstances.

**b.  Analysis of the Relevant Factors Confirms that the Requested Fee Is Reasonable**

The requested attorneys' fees are supported by the factors the Third Circuit has identified as relevant (the "*Gunter*/*Prudential* factors") to this Court's determination of award: "(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel

relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter*, 223 F.3d at 195 and *Prudential*, 148 F.3d at 336-40).  These factors "need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." *AT & T*, 455 F.3d at 166.  Here, consideration of these factors overwhelmingly points to the fairness and reasonableness of the requested fee.

### 1. Awards at or Above the Requested Fee Amount Are Routinely Granted in Similar Cases

When considering the amount awarded in similar actions, a court should "(1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market." *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 122 (D.N.J. 2012).

While there is no absolute rule, courts in this Circuit generally award fees approximating one-third of the settlement fund for settlements under $50 million. *See, e.g.*, *Huffman*, 2019 WL 1499475, at *7 ("Percentage fee awards in common fund cases often fall between nineteen and forty-five percent of the settlement fund.  Class Counsel request one-third of the settlement fund, which is the 'benchmark' percentage for an award to counsel.  Courts within the Third Circuit routinely award fees at similar percentages."); *Schuler v. Med. Co.*, 2016 WL 3457218, at *9-11 (D.N.J. June 24, 2016) (awarding 33% of $4,250,000 settlement); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 109 (D.N.J. 2001) (awarding 33.3% of $4,309,205.36 settlement fund).

Other circuits are in accord. *See Silverberg v. People's Bank*, 23 F. App'x 46, 47-49 (2d Cir. 2001) (affirming an award of approximately one-third); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at *3-4 (S.D.N.Y. Feb. 23, 2011) (awarding one third of a $6.75 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163–65 (S.D.N.Y. 2011) (awarding 33% of a $13 million settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367-74 (S.D.N.Y. 2002) (awarding one third of a $11.5 million settlement).

The fees requested here are consistent with what counsel would receive if they were bargaining in the legal marketplace outside of securities litigation as well. In non-class-action tort litigation, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *Ikon*, 194 F.R.D. at 194; *see also Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring); *Ins. Brokerage*, 282 F.R.D. at 122-23 (collecting cases).

### 2.    Complexity and Duration of the Litigation Favor the Requested Fee

Securities litigation is regularly acknowledged to be particularly complex and expensive, usually requiring expert testimony on issues including loss causation and damages. *See, e.g.*, *Dartell v. Tibet Pharms, Inc.*, 2017 WL 2815073, at *10 (D.N.J. June 29, 2017); (approving counsel's one-third fee request and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive due to the need for experts"); *In re Genta Sec. Litig.*, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [damages issues] would likely require extensive and conceptually

11

difficult expert economic analysis.  [. . .]  Trial on [these] issues would [be] lengthy and costly to the parties.").

This case raised difficult legal and factual issues that required a wealth of litigation experience from which to draw on to position the case for continued litigation or favorable settlement.  Van Declaration ¶¶ 50-59.  At the outset, this case presented complex issues regarding conducting investigations of Chinese nationals with relevant information given the language barrier and working with counsel and investigators in China. *Id.* ¶ 10.  Moreover, because of the restrictive environment in China, some individuals were reluctant to speak with investigators about the facts alleged in the complaints.  *Id.* ¶ 51

Plaintiffs faced a substantial hurdle in alleging falsity, which is, in part, evidenced by the Court's dismissal of the FAC on falsity grounds.  ECF Nos. 95-96.  The Court again dismissed some statements in its Order on Defendants' motion to dismiss the SAC, while allowing others to go forward, and expressed some doubt that Plaintiffs would be able to later prove falsity and support their claims. *See Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 545, 546 n.20, 548 (D.N.J. June 25, 2024).

Establishing scienter also remained a challenge throughout this litigation and would have remained so had the Action not settled.  *See AT & T*, 455 F.3d at 170 (emphasizing that "the difficulty of proving actual knowledge under §10(b) of the Securities Exchange Act . . . weighed in favor of approval of the fee request").  Indeed, the Court signaled that the inference of scienter is "not the strongest one" for certain statements.  *Wu*, 738 F. Supp. 3d at 562.

Discovery presented additional hurdles.  Plaintiffs' Counsel had to navigate the complexity of obtaining discovery in China.  Chinese law makes the taking of depositions of Chinese citizens effectively impossible in China and extremely burdensome outside China. Van Declaration ¶ 35.

12

Indeed, numerous courts have found that while taking depositions is theoretically possible in the PRC under the Hague Convention, in reality permission for such depositions is highly unlikely to be obtained. Van Declaration ¶ 38; *see. e.g.*, *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 498 (N.D. Ill. 2021) ("[I]n more than 30 years under the Consular Convention and 13 years under the Hague Convention, China has granted permission for a deposition on only one occasion."). At best, Plaintiffs may hope to take depositions outside of China of Defendants and current GSX employees, but such current employees might well not include the individuals with key information about the events at issue, which took place seven years ago. Van Declaration ¶ 39. While Plaintiffs' Counsel would have worked diligently to overcome those obstacles, Plaintiffs may not have been able to establish liability at trial nor prove damages if they were not able to obtain the necessary discovery. *See, In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27-28 (S.D.N.Y. Nov. 8, 2010) (evidentiary burden of proving damages weighed in favor of approving fee request).

The Settlement is the product of an extraordinarily hard-fought securities class action litigation, accomplished after nearly six years of hotly-contested litigation, entailing hundreds of total pages of dispositive motion briefing, and including, right up until mediation and the subsequent Settlement, the Parties' filing a joint letter outlining several discovery disputes. These disputes included whether Defendants should be compelled to respond to certain of Plaintiffs' discovery requests. The complexity and duration of the litigation favor the requested fee.

### 3.    Skill and Efficiency of Attorneys Support the Requested Fee

The result achieved and the quality of the services provided are important factors to be considered in determining the amount of reasonable attorneys' fees. *See Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010). "Plaintiffs' Counsel's efforts in bringing

13

this action to such a successful conclusion are the best indicator of the experience and ability of the attorneys involved." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *27 (D.N.J. Nov. 15, 2016) (citing *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("'[T]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained.'")).

In the face of formidable challenges, including those described in Section III.b.2, *supra*, Plaintiffs' Counsel's hard work, persistence, and skill resulted in the efficient recovery of $9,500,000 for the Settlement Class. This excellent result is consistent with Plaintiffs' Counsel's well-earned national reputation for the successful representation of clients in complex class action matters. *See* ECF No. 7-3, Exbibit B (Pomerantz Firm Resume); ECF No. 6-7 (Rosen Firm Resume); Labaton Decl., Ex. C (Labaton Firm Resume).

From the outset, Lead counsel hired experts on cross-border discovery to prepare for the case. Lead Counsel worked diligently with investigators to overcome language barriers and the reluctance of some people to cooperate given the restrictions in China in order to support the claims in the FAC with confidential witness statements. Though Lead Counsel unsuccessfully litigated the motion to dismiss the FAC, they continued their investigative work to uncover additional information and witnesses to support the claims in the SAC. These efforts were instrumental in Plaintiffs' success on Defendants' motion to dismiss the SAC. This was an outstanding victory, especially because Defendants' motion to dismiss the FAC was granted in full and there was a risk that the Court would enter judgment on the motion to dismiss. *See, In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

14

Defendants were vigorously represented by experienced and qualified attorneys at Skadden, Arps, Slate, Meagher & Flom LLP and Robinson Miller LLC. Thus, Plaintiffs' Counsel achieving this Settlement for the Class "in the face of formidable legal opposition further evidences the quality of their work." *Corel*, 293 F. Supp. 2d at 496.

Accordingly, the quality Plaintiffs' Counsel's representation in such a highly complex, risky case strongly supports the requested fee.

### 4.  Risk of Non-Payment Favors the Requested Fee Here

"Courts routinely recognize that the risks created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012). "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The need for a contingency adjustment "is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992); *see also In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation").

Securities class actions are notoriously unpredictable. Even where ultimately successful, they can last many years longer than anyone anticipated, during which time plaintiffs' counsel must devote thousands of attorney hours, pay overhead, and advance litigation costs (including for experts). Thus, "the financial burden on contingent-fee counsel is far greater than on a firm that

15

is paid on an ongoing basis." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*14 (S.D.N.Y. May 9, 2014) (describing the ways in which the burden of a contingent-fee arraignment is greater than a firm that is being paid hourly rates), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  Even a successful jury verdict can take years to collect.  *See, e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) (two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

Counsel in securities class actions accepting a contingency arrangement face a very real risk of no recovery at all.  "Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc.*, *Sec.*, *Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at \*18 (S.D.N.Y. Dec. 23, 2009) (collecting cases).  Even plaintiffs who obtain substantial jury verdicts at trial may find their judgment overturned on appeal or on a post-trial motion.  *See, e.g.*, *Robbins v. Koger Props*., *Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (overturning an $81 million jury verdict for plaintiffs and rendering judgment for defendant); *Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning a $40 million jury verdict for plaintiffs, in a case filed in 1973 and tried in 1988, on the basis of a 1994 Supreme Court opinion).  Similarly, even the most promising cases can be eviscerated by a sudden change in the law after years of litigation.  *See, e.g.*, *In re Alstom S.A. Sec. Litig.*, 741 F. Supp. 2d. 469, 473 (S.D.N.Y. 2010) (after extensive foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit-court precedents in *Morrison v. Nat'l Bank of Austl.*, 561 U.S. 247 (2010)).

16

Plaintiffs' Counsel undertook this Action on a contingent basis—they fully assumed the risk that the case might yield no or very little recovery and leave Plaintiffs' Counsel uncompensated for their time and expenses. Plaintiffs' Counsel have not been compensated for any of their time or expenses since the case began in 2020, nearly six years. Unlike defense counsel, who typically receive payment on a timely and regular basis throughout a case, win or lose, Plaintiffs' Counsel bore the significant risk of not only funding the expenses of this Action, but also that they would receive no compensation whatsoever. Plaintiffs' Counsel bore the ultimate risk of receiving no compensation after several years of litigation by continuing to pursue the case after receiving the unfavorable opinion on the first motion to dismiss. This factor strongly favors approval of the requested fee.

### 5.    The Size of the Fund Also Weighs in Favor of the Requested Fee

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *See Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained"). Here, the Settlement provides $9,500,0000 for the benefit of thousands of investors, amounting to a recovery of approximately 6.86% of the $138.5 million total maximum damages potentially available in this Action under the two loss causation dates sustained by the Court. It is all cash, with no reversion to Defendants, and it provides Settlement Class Members with meaningful compensation that was otherwise uncertain when the case began. Indeed, this recovery is within the range of reasonableness for securities class action settlements in cases of this size. *See* Laarni Bulan & Eric Tam, Securities Class Action Settlements – 2025 Review and Analysis (Cornerstone Research 2026), at 7 (finding a median

17

settlement recovery of 6.5% in securities class actions asserting Section 10(b) claims in 2025)[7]; Edward Flores, et al., Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review, at 28 (Fig. 24) (NERA Jan. 21, 2026) (showing the median settlement value in securities class actions in 2025 was 1.5% of estimated damages, and for cases between 2016–2025, the median settlement value ranged between 1.2% and 2.5% of estimated damages).[8]

Moreover, the size of the Settlement Fund and Settlement Class does not weigh against an award of 33.3%. "As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 337 (D.N.J. 2002). The basis for this is that "the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *Payton-Fernandez v. Burlington Stores, Inc.*, 2024 WL 5202421, at *9 (D.N.J. Dec. 23, 2024) (quoting *Prudential*, 148 F.3d at 339). Here, the $9,500,000 Settlement Amount is substantially smaller than the mega fund settlements for which courts decrease the percentage awarded. *See, e.g. In re Aetna Inc.,* 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001) (finding $81 million net costs to be smaller than the large settlements for which courts decrease the percentage awarded). Furthermore, the Settlement benefits a large class of shareholders. *See* Declaration of Luiggy Segura Regarding (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections Received, dated April 30, 2026 ("Segura Decl."), ¶¶ 17-18 (32,951 Notice Packets mailed).

---

7    https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf.

8    https://www.nera.com/insights/publications/2026/recent-trends-in-securities-class-action-litigation--2025-full-y.html?lang=en.

Given the risks of further litigation, including the substantial discovery challenges in this Action, the significantly higher than average percentage of recovery, and the smaller size of the Settlement vis-à-vis the number of potential Settlement Class Members, this is an excellent result that strongly supports the requested fee.

**6.      The Lodestar Cross-Check and the Time Devoted to the Litigation and Support the Fee Application**

Throughout the litigation, Lead Counsel and Additional Counsel have focused on seeking the most successful outcome for the Settlement Class, whether through settlement or trial, as efficiently as possible.  Indeed, early settlements are encouraged by courts and are consistent with the Federal Rules of Civil Procedure, which emphasize the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Plaintiffs' Counsel and their professionals have spent, in the aggregate, 3,164.74 hours litigating this case against Defendants, with a lodestar of $2,958,310.55.  Van Declaration ¶ 14. The requested fee would therefore result in a multiplier of 1.07.  *Id.*  This minimal multiple is consistent with multipliers typically applied in common fund cases—indeed, it is far on the low end of multipliers.  *See Prudential*, 148 F.3d at 341; *see also AT & T*, 455 F.3d at 172 (noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] 'was neither legally nor factually complex.'"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (multiplier of 6.96); *AremisSoft*, 210 F.R.D. at 135 (multiplier of 4.3); *Ikon,* 194 F.R.D. at 195 (noting a multiplier of 2.7 was "well within the range of those awarded in similar cases").

Moreover, Lead Counsel's legal work will not end with the Court's approval of the Settlement.  Significant additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proofs of Claim, shepherding the claims process, and

19

responding to Settlement Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."). Accordingly, the time and effort devoted to this case by Plaintiffs' Counsel to obtain the $9,500,000 recovery confirms that the requested fee is thus manifestly reasonable, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

### 7.    The Lack of Objections or Requests for Exclusion Also Strongly Supports the Fee Application

The positive reaction from Settlement Class members confirms the quality of Plaintiffs' Counsel's representation and strongly supports approval of the fee request. As of April 28, 2026, JND Legal Administration ("Claims Administrator") has mailed 32,951 Notice Packets advising Settlement Class Members, brokers, and nominee holders of the Settlement and directing them to a settlement website that provides the Notice and all other relevant documents. *See* Segura Decl. ¶¶ 17-18. The Claims Administrator also published over *PR Newswire* the Summary Notice, also advising about the details of the Settlement and directing Settlement Class Members to the website for additional details. *See id.* ¶13. The Notice amply describes the terms of the Settlement, including (a) the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process to opt-in or opt-out of, or object to, the Settlement; (e) a description of the Plan of Allocation; (f) that Class Counsel intended to seek fees of up to 33.3%, reimbursement of expenses of up to $500,000, and awards for Lead Plaintiff and Additional Plaintiffs of up to $10,000 each; and (g) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so. *See* Long Notice (ECF No. 165-6).

20

While the exclusion and objection deadline is not until May 28, 2026, no Settlement Class Members have objected to the Settlement or the fee and expense request, and no exclusion requests have been received.[9]  Segura Decl. Ex. 1 ¶¶ 17-18.  The lack of any negative feedback after such extensive notice suggests that the Settlement Class generally and overwhelmingly approves of the Settlement.  *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 237-38 (D.N.J. 2005) (finding exclusion and objection requests of 0.06% and 0.003%, respectively, "extremely low" and indicative of class approval of the settlement).

### 8.  Innovative Terms of the Settlement

The Settlement Agreement does not contain any innovative terms.  This factor is neutral as it neither weighs in favor of nor against approval.

### 9.  Analysis of the Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing, which can indicate how much credit counsel should be given for obtaining the value of the settlement fund for the class.

Lead Counsel was aware of the SEC investigation into GSX as it was disclosed by GSX in its SEC filings. ECF No. 97 (Second Amended Complaint) ¶ 193.  However, the SEC decided *not* to proceed with a case against GSX.  Thus, Lead Counsel did not rely on any government investigations or enforcement actions.  Lead Counsel also was unable to obtain documents from SEC's investigation during the period for discovery prior to settlement.  Instead, the value of the Settlement achieved is directly attributable solely to the efforts undertaken by Plaintiffs' Counsel

---

[9]  If additional objections are filed, Lead Counsel will address them in the reply brief.

in this Action, which is a "significant factor" supporting the fee award. *See AT&T*, 455 F.3d at 173 (*citing Prudential*, 148 F.3d at 338); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-49 (E.D. Pa. 2013).

> **c.      Plaintiffs' Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of This Litigation**

Lead Counsel also respectfully requests $248,681.70 in expenses Plaintiffs' Counsel and additional counsel incurred while prosecuting this litigation. *See* Pomerantz Decl. ¶ 6 and Ex. B; Rosen Decl." ¶ 5; Labaton Decl. ¶ 6 and Ex. B; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class). Most of Plaintiffs' Counsel's modest expenses are the costs of the investigation in Plaintiffs' claims, experts to assess damages, market efficiency, and loss causation, as well as other smaller expenses such as filing fees, electronic research, and reasonably necessary travel. These expenses were necessary to Plaintiffs' success in achieving the Settlement. It is well-established that these kinds of expenses are "reasonably incurred in the prosecution of such litigation." *Varacallo*, 226 F.R.D. at 256. To date, while the deadline has not passed, no objections to the expense request have been filed. Accordingly, Lead Counsel respectfully requests payment for Plaintiffs' Counsel's expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

> **d.      The Proposed Compensatory Award to Plaintiffs Should Be Granted**

The PSLRA permits Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). In accordance with the PSLRA, and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See, e.g.*, *Toronto-Dominion*, 2019 WL 12323620, at *4 (awarding lead plaintiffs $15,000); *In re Silvercorp Metals,*

22

*Inc. Sec. Litig.*, No. 12-cv-9456, ECF No. 81 at 9 (S.D.N.Y. Feb. 13, 2015) (awarding $12,500 to each lead plaintiff).

Here, all Plaintiffs at all times adequately represented the Settlement Class.  They devoted substantial time and effort to prosecuting this litigation, including time spent reviewing pleadings, motions, and other documents; communicating with counsel concerning the status of the case, discussing settlement authority with counsel, and staying apprised of developments, including settlement discussions.  *See* Van Declaration Exhibit 5 (Yang Decl.); Exhibit 6 (Angeline Decl.); Exhibit 7 (Hays Decl.); Exhibit 8 (Tazi Decl.).

The foregoing efforts are precisely the types of activities courts have found to support reimbursement to class representatives based on the value of the time expended by their employees.  *See, e.g.*, *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 2012 WL 6184269, at *2 (D.Mass. 2012); *Marsh & McLennan*, 2009 WL 5178546, at *21 (awarding over $200,000 to lead plaintiffs to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives").

Lead Counsel respectfully submits that the relatively modest requests of $10,000 per Plaintiff ($40,000 total) for their time and service to the Settlement Class are reasonable and should be granted.

## IV.    CONCLUSION

Lead Counsel's and additional counsel's efforts have resulted in a very favorable result for the Settlement Class under the circumstances.  Therefore, Lead Counsel respectfully requests that the Court award attorneys' fees of 33.3% of the total recovery of $9,500,000 (a fee of $3,163,500), plus accrued interest, plus reimbursement of expenses to Plaintiffs' Counsel in the amount of

23

$248,681.70, and awards to the Lead Plaintiff and three Additional Plaintiffs in the amount of $10,000, each. A proposed order will be submitted with reply papers after the deadline for objections has passed.

Dated:  April 30, 2026

Respectfully submitted,

**POMERANTZ LLP**
/s/ *Austin P. Van*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

*Lead Counsel for Lead Plaintiff Yang
Renbin, and Additional Plaintiffs Corey
Hays and Alexandre Tazi*

**THE ROSEN LAW FIRM, P.A**
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Telephone:  (973) 313-1887
Facsimile:  (973) 833-0399
Email:  lrosen@rosenlegal.com

Jing Chen
Jonathan Horne
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827
Email:  jchen@rosenlegal.com
Email: jhorne@rosenlegal.com

Junbo Hao
**HAO LAW FIRM**
**BEIJING HAO JUNBO LAW FIRM**
Room 3-401 No. 2 Building,
No. 1 Shuangliubei Street
100024  Beijing
People's Republic of China
Telephone:  +86 137-1805-2888
Email:  jhao@haolaw.cn

*Additional Counsel for Lead Plaintiff and
Additional Plaintiff Robert Angeline*

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Austin P. Van
Austin P. Van

26